UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE SUTHERLAND, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ERNST & YOUNG LLP,<br><br>Defendant. | Civ. Action No. 10-CV-3332 (KMW) |

# MEMORANDUM OF LAW IN SUPPORT OF ERNST & YOUNG LLP'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS AND COMPEL ARBITRATION

AKIN GUMP STRAUSS HAUER & FELD LLP

Daniel L. Nash
Joel M. Cohn
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564
Telephone: 202-887-4000
Facsimile: 202-887-4288
jcohn@akingump.com
dnash@akingump.com

Estela Díaz
One Bryant Park
New York, NY 10036
Telephone: 212-872-1000
Facsimile: 212-872-1002
ediaz@akingump.com

*Attorneys for Defendant Ernst & Young LLP*

# TABLE OF CONTENTS


Page

PRELIMINARY STATEMENT ... 1

BACKGROUND ... 2

I. SUTHERLAND'S AGREEMENT TO ARBITRATE HER CLAIMS ... 2

II. ERNST & YOUNG'S COMMON GROUND DISPUTE RESOLUTION PROGRAM ... 3

III. THE INSTANT LITIGATION ... 4

ARGUMENT ... 5

I. PLAINTIFF'S CLAIMS ARE REQUIRED TO BE ARBITRATED AND SHOULD BE DISMISSED. ... 5

II. THE FAA, AND FEDERAL AUTHORITY, MANDATES ARBITRATION IN THIS CASE. ... 5

A. Sutherland Agreed To Arbitrate Her Claims. ... 6

B. The Program Encompasses All Claims Asserted By Sutherland. ... 7

C. Sutherland's FLSA Claim Is Arbitrable. ... 7

III. SUTHERLAND'S PREVIEW OF HER OPPOSITION CONFIRMS THAT ARBITRATION IS WARRANTED. ... 8

A. Sutherland's Agreement To Arbitrate Is Valid. ... 8

B. The Collective Or Class Action Waiver Is Not Unconscionable. ... 10

C. Arbitration Of Sutherland's Claims Is Not Prohibitively Costly. ... 10

D. Ernst & Young Has Not Waived Its Right To Arbitrate. ... 12

CONCLUSION ... 13

## TABLE OF AUTHORITIES

Page(s)

CASES

*Anglin v. Tower Loan of Mississippi, Inc.*,
635 F. Supp. 2d 523 (S.D. Miss. 2009)....................12

*Arakawa v. Japan Network Grp.*,
56 F. Supp. 2d 349 (S.D.N.Y. 1999)....................6, 7

*Arrigo v. Blue Fish Commodities, Inc.*,
No. 09 Civ. 7518 (VM), 2010 WL 391813 (S.D.N.Y. Feb. 4, 2010)....................5, 7, 8

*Bar-Ayal v. Time Warner Cable Inc.*,
No. 03 Civ. 9905 (KMW), 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006)....................10

*Barrentine v. Arkansas-Best Freight Sys.*,
450 U.S. 728 (1981)....................9

*Chao v. Gotham Registry, Inc.*,
514 F.3d 280 (2d Cir. 2008)....................8

*Ciago v. Ameriquest Mortg. Co.*,
295 F. Supp. 2d 324 (S.D.N.Y. 2003)....................9

*Coca-Cola Bottling Co. of New York, Inc. v. Soft Drink and Brewery Workers Union Local 812*,
242 F.3d 52 (2d Cir. 2001)....................12, 13

*Collins v. Aikman Prods. Co. v. Building Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995)....................7

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....................6

*Duraku v. Tishman Speyer Props., Inc.*,
No. 09 Civ. 9351 (DLC), 2010 WL 2142581 (S.D.N.Y. May 27, 2010)....................5

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)....................9

*Green Tree Fin. Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000)....................10

*Italian Colors Restaurant v. American Express Travel Related Services Co. (In re American Express Merchants' Litigation)*,
554 F.3d 300 (2d Cir. 2009)....................10

*Jock v. Sterling Jewelers, Inc.*,
No. 08 Civ. 2875 (JSR), 2010 WL 2898294 (S.D.N.Y. Jul. 26, 2010) ....................13

*Kowalewski v. Samandarov*,
590 F. Supp. 2d 477 (S.D.N.Y. 2008)....................5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....................7

*Nayal v. HIP Network Servs. IPA, Inc.*,
620 F. Supp. 2d 566 (S.D.N.Y. 2009)....................10

*Oldroyd v. Elmira Sav. Bank, FSB*,
134 F.3d 72 (2d Cir. 1998)....................5

*Ornelas v. Sonic-Denver T, Inc.*,
06 Civ. 0253 (PSF), 2007 WL 274738 (D. Colo. Jan. 29, 2007)....................12

*Pomposi v. Gamestop, Inc.*,
No. 309 Civ. 0340 (VLB), 2010 WL 147196 (D. Conn. Jan. 11, 2010) ....................9, 10

*Ranieri v. Bell Atl. Mobile*,
304 A.D.2d 353, 759 N.Y.S. 2d 448 (1st Dep't 2003) ....................10

*Reid v. Supershuttle Int'l, Inc.*,
No. 08 Civ. 4854 (JG), 2010 WL 1049613 (E.D.N.Y. Mar. 22, 2010)....................9

*Rush v. Oppenheimer & Co.*,
779 F.2d 885 (2d Cir. 1985)....................12

*Sinnett v. Friendly Ice Cream Corp.*,
319 F. Supp. 2d 439 (S.D.N.Y. 2004)....................9

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*,
130 S.Ct. 1758 (2010)....................11

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
310 F.3d 102 (2d Cir. 2002)....................12

*Tran v. Tran*,
54 F.3d 115 (2d Cir. 1995)....................9

**STATUTES**

9 U.S.C.
§§ 1-16 ....................1
§ 3....................5
§ 4....................5

29 U.S.C.
§ 207 .... 4

**OTHER AUTHORITIES**

12 N.Y.C.R.R. § 142-2.2 .... 4

Defendant Ernst & Young LLP respectfully submits this memorandum of law in support of its motion to dismiss, or in the alternative, stay proceedings and compel arbitration. As detailed below, the Court should dismiss plaintiff Stephanie Sutherland's complaint and compel the arbitration of plaintiff's individual claims asserted therein in accordance with the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, because plaintiff is required to assert her claims in arbitration. In the alternative, the Court should stay the proceedings pending the arbitration of plaintiff's claims.

## PRELIMINARY STATEMENT

This case involves claims subject to binding arbitration. Plaintiff Stephanie Sutherland is a former employee of Ernst & Young who claims that she and other allegedly similarly situated individuals were improperly classified as exempt from federal and state overtime laws. The lawsuit cannot go forward, however, because plaintiff expressly agreed to arbitrate the precise claims asserted in her complaint. Plaintiff's effort to bypass the dispute resolution procedures that she agreed to should be rejected. Ernst & Young, therefore, respectfully requests an order dismissing plaintiff's claims and compelling her to utilize the dispute resolution procedures to which she agreed to arbitrate her individual claims.[1]

[1] In *Mansberger v. Ernst & Young LLP, et al.* (No. 10-CV-3883 (KMW), which is also before the Court, plaintiff also agreed to Ernst & Young's dispute resolution program. Sutherland, however, has raised a question regarding the Court's subject matter jurisdiction over *Mansberger*. If the Court determines that it has jurisdiction, Ernst & Young intends to move to compel arbitration of Mansberger's claims as well.

## BACKGROUND

I. Sutherland's Agreement To Arbitrate Her Claims

Plaintiff commenced her employment at Ernst & Young as a staff on September 17, 2008. Declaration of Dea Reece ¶ 4 ("Reece Decl."). Ernst & Young terminated Sutherland's employment effective December 8, 2009. *Id.*

On or about August 14, 2007, Ernst & Young mailed Sutherland a letter offering her employment, and enclosing various documents for her to review and sign. *Id.*, Ex. A.[2] Three weeks later, on or about September 5, 2007, Sutherland signed and accepted her offer in a letter, which set out the terms of her employment, and, in bold language, informed Sutherland that all employment-related disputes would be subject to mandatory mediation or arbitration pursuant to Ernst & Young's dispute resolution program (the Common Ground Dispute Resolution Program or the "Program"), a copy of which was enclosed with her offer letter. *Id.* The offer letter states:

> **You understand that if an employment related dispute arises between you and the firm, it will be subject to mandatory mediation/arbitration under the terms of the firm's alternative dispute resolution program, known as the Common Ground Program, a copy of which is attached.**

*Id.* (emphasis in original).

On or about September 5, 2007, Sutherland also signed a Confidentiality Agreement, which expressly incorporates the Program and requires that certain disputes be submitted to arbitration in accordance with the Program. *Id.*, Ex. B. The Confidentiality Agreement states:

> I further agree that any dispute, controversy or claim (as defined in the E&Y Common Ground Dispute Resolution Program (AA7521) attached) arising between

---

[2] The Court may consider extrinsic evidence, such as the arbitration agreement or affidavits, in deciding whether Sutherland's claims are subject to an enforceable agreement to arbitrate under the FAA. *See Banus v. Citigroup Global Mkts., Inc.*, No. 09 Civ. 7128 (LAK), 2010 WL 1643780, at *3 (S.D.N.Y. Apr. 23, 2010); *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06 Civ. 839 (HB), 2006 WL 2265041, at *3, n. 6 (S.D.N.Y. Aug. 2006) (noting that it is "proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration.")

> myself and the Firm will be submitted first to mediation and, if mediation is unsuccessful, then to binding arbitration in accordance with the terms and conditions set forth in AA7521, which describes the Firm's Common Ground Dispute Resolution Program. I acknowledge that I have read and understand the E&Y Common Ground Dispute Resolution Program (AA7521) and that I shall abide by it.

*Id.* The Confidentiality Agreement is governed by New York law. *Id.*

II. Ernst & Young's Common Ground Dispute Resolution Program

Ernst & Young's Common Ground Program applies to current and former employees of Ernst & Young. *Id.*, Ex. C ¶ II.A.2.

The Program is the "sole method for resolving disputes within its coverage." *Id.*¶ I. It applies to "all claims, controversies or other disputes" between Ernst & Young and the employee that could otherwise be resolved by a court, with very limited exceptions that do not apply here. *Id.* ¶ II.B.1. The Program lists examples of disputes that are covered, including, among others, claims: (1) "based on federal statutes such as . . . the Fair Labor Standards Act"; (2) "based on state statutes"; and (3) "concerning wages, salary, and incentive compensation programs" (the "Covered Disputes"). *Id.* ¶ II.C. The Program clearly provides that it is the exclusive means for resolving such Covered Disputes:

> Both the Firm and the Employee give up any right to resolve any Covered Dispute through any other means. ***Neither the Firm nor an Employee will be able to sue in court in connection with a Covered Dispute.***

*Id.* ¶ II.B.1 (emphasis in original).

In addition, the Program explicitly informs employees that if they file a lawsuit against Ernst & Young, Ernst & Young may proceed directly to arbitration or seek an order to compel compliance with the Program:

> If a party files a lawsuit relating to a Covered Dispute in court in violation of the terms of the Program, the other party may choose to proceed directly to Phase II [arbitration] or to seek an order requiring the party who filed the lawsuit to satisfy the requirements of the Program.

*Id.* ¶ IV.B. Covered Disputes pertaining to different employees must be brought in separate arbitration proceedings. *Id.* ¶ IV.K.

The Program, among other things, authorizes the arbitrator to "provide for reimbursement of the Employee's attorney's fees, in whole or part, in accordance with applicable law or in the interest of justice." *Id.* ¶ IV.P.3.

Finally, the Program is expressly governed by the FAA:

> The Program, these procedures, and any arbitration award that may result from them shall be governed by the Federal Arbitration Act and, to the extent, if any, that such Act is held not to apply, to the state law, including judicial interpretations, applicable in the State of New York, provided that principles of conflicts of laws shall not be applied.

*Id.* ¶ V.G.

III. The Instant Litigation

On or around April 20, 2010, plaintiff filed this action in the Southern District of New York, alleging two causes of action based on Ernst & Young's alleged misclassification of her and other similarly situated individuals under the Fair Labor Standards Act ("FLSA") (29 U.S.C. § 207) and New York Labor laws (12 N.Y.C.R.R. § 142-2.2). Plaintiff did not attempt to resolve her dispute through the Program before filing suit.

Neither party has served discovery nor filed any substantive motions.

## ARGUMENT

I. Plaintiff's Claims Are Required To Be Arbitrated And Should Be Dismissed.

Plaintiff's complaint should be dismissed under the FAA because her claims are subject to binding arbitration. *See Buchman v. Weiss*, Nos. 08 Civ. 5453 (RJS), 08 Civ. 5456 (RJS), 2009 WL 2044615, at *1 (S.D.N.Y. July 15, 2009) (granting motion to dismiss and compel arbitration); *Duraku v. Tishman Speyer Props., Inc.*, No. 09 Civ. 9351 (DLC), 2010 WL 2142581, at *1 (S.D.N.Y. May 27, 2010). Under section 4 of the FAA, a party to an arbitration agreement may petition a court for an order that arbitration proceed in the manner provided for in such agreement. *See* 9 U.S.C. § 4.

The FAA provides for a stay of the proceedings pending arbitration; however, courts have discretion to dismiss rather than stay an action where, as here, all of the claims in the complaint must be submitted to arbitration, and have done so in this district where defendants have sought dismissal. *See* 9 U.S.C. § 3; *Kowalewski v. Samandarov*, 590 F. Supp. 2d 477, 490 (S.D.N.Y. 2008) (citations omitted). Here, plaintiff agreed to resolve her asserted claims solely through the procedures set forth in the Program. She should be compelled to do so and her complaint should be dismissed.

II. The FAA, And Federal Authority, Mandates Arbitration In This Case.

Federal courts have long recognized a "strong federal policy favoring arbitration as an alternative means of dispute resolution." *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998). In the Second Circuit, to determine whether to compel arbitration, the court must resolve three issues: (1) whether the parties agreed to arbitrate; (2) whether the asserted claims fall within the scope of the arbitration agreement; and (3) if federal statutory claims are at issue, whether Congress intended those claims to be non-arbitrable. *Id.* at 75-76; *Arrigo v. Blue Fish Commodities, Inc.*, No. 09 Civ. 7518 (VM), 2010 WL 391813, at *2 (S.D.N.Y. Feb. 4, 2010)

(granting motion to dismiss and compelling arbitration of claims under the FLSA and New York law). If the district court finds that these issues are satisfied in favor of arbitration, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration . . . ." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Here, all three requirements are satisfied in favor of arbitration.

A. Sutherland Agreed To Arbitrate Her Claims.

To determine whether there is an agreement to arbitrate, courts apply generally accepted principles of contract law. *Arakawa v. Japan Network Grp.*, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999). Pursuant to New York law, which governs the Confidentiality Agreement, a person who signs a contract is presumed to know its contents and to assent to them. *See id.* (internal quotations and citation omitted). A party is bound by the agreement to arbitrate unless she can show special circumstances, such as duress or coercion, which would justify non-enforcement of the contract. *Arakawa*, 56 F. Supp. 2d at 352.

No such special circumstances exist here. Plaintiff signed both her offer letter and the Confidentiality Agreement, which specifically incorporates the Program, almost three weeks after receiving them. Reece Decl., Exs. A, B. The Confidentiality Agreement states in plain language that she agrees that "any dispute, controversy or claim" would be subject to mediation or binding arbitration. *Id.* Plaintiff also acknowledged that she read and understood the dispute resolution procedures, and that she would abide by them. *Id.*

Finally, the Program explicitly provides, in bold and italicized language, that neither Ernst & Young nor plaintiff can sue in court regarding a Covered Dispute—doing so entitles either party to proceed directly to arbitration. *Id.* ¶¶ II.B.1, IV.B. In sum, plaintiff accepted employment by Ernst & Young after expressly assenting to, and with full knowledge of, the

arbitration provision in the Confidentiality Agreement and the Program. *See Arrigo*, 2010 WL 391813, at *2; *Arakawa*, 56 F. Supp. 2d at 352.

B. The Program Encompasses All Claims Asserted By Sutherland.

Once it is determined that an agreement to arbitrate exists, interpretation of the scope of the arbitration clause is governed by the FAA. *Buchman*, 2009 WL 20446145, at *3. Courts will "compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Collins v. Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

In her complaint, plaintiff asserts that she and others similarly situated were allegedly misclassified as exempt from overtime compensation under the FLSA and New York law. The Program explicitly refers to these types of claims as examples of Covered Disputes subject to mediation or arbitration. *See* Reece Decl., Ex. C ¶ II.C. Specifically, claims (i) concerning an employee's wages or salary, (ii) based on the FLSA, and (iii) based on state law are all covered by the dispute resolution procedures outlined in the Program. *Id.* Thus, plaintiff's claims under the FLSA and New York law are clearly covered by the dispute resolution procedures to which she agreed.

C. Sutherland's FLSA Claim Is Arbitrable.

Finally, plaintiff's FLSA claim—her only federal claim—is clearly arbitrable.[3] *See, e.g.*, *Arrigo*, 2020 WL 391813, at *4 (concluding that Congress did not intend FLSA claims to be non-

[3] This inquiry concerns whether Congress intended to prevent the arbitration of *federal* statutory claims. *See Kowalewski*, 590 F. Supp. at 491. Of course, plaintiff's claim under New York law is also arbitrable, since it falls under the scope of the Program, it arises under a state statute, and concerns plaintiff's wages or salary.

arbitrable) (*citing Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 332 (S.D.N.Y. 2003) ("Congress has not evinced an intention to preclude arbitration of FLSA claims.") (other citation omitted).

III. Sutherland's Preview Of Her Opposition Confirms That Arbitration Is Warranted.

Before Ernst & Young filed its present motion, but after the Court set a briefing schedule on the motion, plaintiff submitted a substantive letter to the Court on August 16, 2010 detailing the reasons why she thought Ernst & Young's motion should be denied. Plaintiff's premature letter attempts, but fails, to obfuscate the clear result mandated by the case law. As explained below, there is no bar to dismissal or an order compelling arbitration in this case.

A. Sutherland's Agreement To Arbitrate Is Valid.

Plaintiff appears to argue that by requiring her to arbitrate her FLSA claim, her rights under the FLSA would somehow be waived. *See* Pl. Ltr at 2-3. But Ernst & Young does not contend that plaintiff has waived her right to assert an FLSA claim. Nor do the cases plaintiff cites preclude arbitration of FLSA claims. Rather, they stand for the irrelevant point that an employee cannot voluntarily waive her FLSA rights by, for example, failing to complain about the lack of overtime pay. *Id.*; *see, e.g.*, *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 290 (2d Cir. 2008) (noting that employer liability under the FLSA does not turn on whether the employee agreed to work overtime voluntarily). Plaintiff cites no authority for the proposition that an agreement to arbitrate an FLSA claim is invalid. In fact, courts in this Circuit have upheld such agreements. *See, e.g.*, *Sinnett v. Friendly Ice Cream Corp.*, 319 F. Supp. 2d 439, 445 (S.D.N.Y. 2004) (granting motion to dismiss where plaintiff agreed to arbitrate FLSA claims, and noting that plaintiff had not "waived any of his rights under the FLSA," but "rather . . . agreed to have those rights adjudicated in an alternative forum . . . ."); *Ciago*, 295 F. Supp. 2d at 331-32 (same).

Not only have courts upheld agreements to arbitrate individual FLSA claims, they have also upheld the waiver of FLSA collective actions. *See Pomposi v. Gamestop, Inc.*, No. 309 Civ. 0340 (VLB), 2010 WL 147196, at *7-8, 11 (D. Conn. Jan. 11, 2010) (dismissing complaint and compelling arbitration, despite FLSA collective action waiver in arbitration agreement); *Reid v. Supershuttle Int'l, Inc.*, No. 08 Civ. 4854 (JG), 2010 WL 1049613, at *2-4 (E.D.N.Y. Mar. 22, 2010) (same).

The cases cited by plaintiff to support the proposition that a collective action may be brought in court despite an agreement to arbitrate individual claims—*Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728 (1981) and *Tran v. Tran*, 54 F.3d 115 (2d Cir. 1995)—are inapposite. *Barrentine* and *Tran* both examined whether an arbitration provision in a collective bargaining agreement precluded an individual union member from bringing an FLSA claim in court. *See Barrentine*, 450 U.S. at 745; *Tran*, 54 F.3d at 118. The arbitration of FLSA claims in the collective bargaining context can be distinguished from individual arbitration agreements because "different prudential considerations apply to collective bargaining," mainly that a labor "union might not pursue the individual member's FLSA claims through the arbitration process for strategic reasons." *See Ciago*, 295 F. Supp. 2d at 332; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (distinguishing *Barrentine* in the context of an individual agreement to arbitrate because *Barrentine* did not involve the issue of the enforceability of an agreement to arbitrate statutory claims, concerned the potential disparity in interests between a union and an employee, and was not decided under the FAA).

Here, the Program expressly provides that FLSA claims such as those asserted must be submitted to arbitration, and that disputes pertaining to other employees must be brought in

separate proceedings. Reece Decl., Ex. C ¶¶ II.C., IV.K. Plaintiff's agreement to this effect should be enforced.

B. The Collective Or Class Action Waiver Is Not Unconscionable.

The arbitration agreement that Sutherland signed does not permit class arbitration. This is not unconscionable. Under New York law, a "contractual proscription against class actions . . . is neither unconscionable nor violative of public policy." *Ranieri v. Bell Atl. Mobile*, 304 A.D.2d 353, 354, 759 N.Y.S. 2d 448, 449 (1st Dep't 2003); *see Bar-Ayal v. Time Warner Cable Inc.*, No. 03 Civ. 9905 (KMW), 2006 WL 2990032, at *16 (S.D.N.Y. Oct. 16, 2006) (Wood, J.) (rejecting claim that arbitration clause barring class action was unconscionable under New York law); *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) (rejecting similar argument that arbitration provision which effectively barred class actions was unconscionable under New York law).[4]

C. Arbitration Of Sutherland's Claims Is Not Prohibitively Costly.

Plaintiff's claims are not prohibitively expensive to litigate on an individual basis. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000) ("a party seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs"); *Pomposi*, 2010 WL 147196, at *7. In her August 16, 2010 letter, plaintiff cites *Italian Colors Restaurant v. American Express Travel Related Services Co. (In re American Express Merchants' Litigation)*, 554 F.3d 300 (2d Cir. 2009), in arguing that the class waiver here is unenforceable because the costs of pursuing an individual arbitration are prohibitive. *See* Pl. Ltr at 3-4.

---

[4] Plaintiff cites cases applying California and Massachusetts law, not New York law, to argue that class action waivers are unconscionable. *See* Pl. Ltr 5.

This argument is meritless. First, *American Express* has been vacated and remanded to the Second Circuit by the Supreme Court in light of *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 130 S.Ct. 1758 (2010), and thus is not citable authority. Second, the facts in *American Express* are distinguishable in any event. In *American Express*, plaintiffs in an antitrust action introduced evidence from an expert quantifying the costs of litigation and the expected recovery for each plaintiff. 554. F.3d at 317. The median plaintiff was expected to receive four-year damages of $1,751, while an economic antitrust study for an individual plaintiff would cost at least several hundred thousand dollars. *Id.*

Plaintiff's claims in this case, however, are akin to the claims in *Pomposi*, which was decided after *American Express*, where the district court granted defendant's motion to compel arbitration of plaintiff's FLSA and state law claims despite the fact that the lawsuit had been brought as a collective action in court. *Id.* at *1. In *Pomposi*, the court found that the plaintiff failed to meet his burden of showing that the disparity between potential recovery and potential costs was so great that the action could not be effectively prosecuted on an individual basis. *Id.* at *7 (plaintiff's potential recovery was $11,000 and potential attorney's fees were $45,000 to $60,000). As in *Pomposi*, the claims at issue are traditional misclassification claims under the FLSA and state law, and there is no justifiable need for extensive expert analysis. In addition to her claim for overtime compensation, plaintiff also seeks liquidated damages and interest. Further, under the FLSA, a prevailing plaintiff is entitled to reasonable attorney's fees and costs, and the Program permits an arbitrator to award attorney's fees in accordance with applicable law or in the interest of justice. *See* Reece Decl., Ex. C ¶ IV.P.3. In sum, ordering plaintiff to arbitrate her individual claims would not bar her from obtaining the same relief available in court, nor would it be so expensive as to insulate Ernst & Young from potential liability. *See*

*Ornelas v. Sonic-Denver T, Inc.*, 06 Civ. 0253 (PSF), 2007 WL 274738, at *7 (D. Colo. Jan. 29, 2007) (compelling arbitration would not preclude plaintiff from pursuing his claims where damages were at least $3500); *Anglin v. Tower Loan of Mississippi, Inc.*, 635 F. Supp. 2d 523, 529 (S.D. Miss. 2009) (compelling arbitration where damages, attorney's fees and punitive damages would result in recovery of over $5,000).

D. Ernst & Young Has Not Waived Its Right To Arbitrate.

Finally, Ernst & Young has not waived its right to arbitrate plaintiff's claims. Whether the right to compel arbitration has been waived must be decided in light of the strong federal policy favoring arbitration. *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985). Factors to consider include: "(1) the time elapsed from the commencement of litigation to the request for arbitration; (2) the amount of litigation [that has occurred] (including exchanges of pleadings, substantive motions and discovery); and (3) proof of prejudice, including taking advantage of pre-trial discovery not available in arbitration, delay and expense." *Coca-Cola Bottling Co. of New York, Inc. v. Soft Drink and Brewery Workers Union Local 812*, 242 F.3d 52, 57 (2d Cir. 2001) (internal quotation omitted) (finding no waiver where defendant waited four months after action filed to compel arbitration, answered the complaint, entered into a protective order and stipulation for discovery, and obtained discovery); *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002) (no waiver where defendant waited more than eight months after filing answer to raise the arbitration defense and did not include the defense in its answer); *Rush*, 779 F.2d at 887 (no waiver where eight month delay in raising arbitration, and arbitration not included as a defense in the answer).

Plaintiff cannot show any prejudice if Ernst & Young's motion to compel arbitration is granted. Ernst & Young requested a pre-motion conference on its motion to compel within three months after the answer was filed, and a few days after a decision interpreting *Stolt-Nielsen* was

decided in this district. *See Jock v. Sterling Jewelers, Inc.*, No. 08 Civ. 2875 (JSR), 2010 WL 2898294 (S.D.N.Y. Jul. 26, 2010). Neither party has filed any substantive motions nor conducted discovery. In her letter, plaintiff points to stipulations or scheduling orders regarding how this action might proceed if the Court retains jurisdiction, but no substantive litigation has taken place. Indeed, during the three months since the answer was filed, the parties have focused on threshold jurisdiction and venue issues. The cases in which a waiver has been found have involved substantially more protracted litigation. *See Coca-Cola*, 242 F.3d at 57 (citing cases). Accordingly, under the circumstances, Ernst & Young has not waived its right to arbitrate plaintiff's claims.

CONCLUSION

The requirements that mandate an order compelling arbitration are fully satisfied in this case. The Court should dismiss plaintiff's complaint, including her class claims, and compel the arbitration of her individual federal and state law claims under the FAA. In the alternative, the Court should stay proceedings while plaintiff's claims are arbitrated.

Dated: August 20, 2010

Respectfully submitted,
AKIN GUMP STRAUSS HAUER & FELD LLP

By: /s/ Daniel L. Nash
Daniel L. Nash
Joel M. Cohn
Estela Díaz

Attorneys for defendant Ernst & Young LLP