UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEPHANIE SUTHERLAND, on behalf of herself and all others similarly situated,

                       Plaintiff,

- against -

ERNST & YOUNG LLP,

                       Defendant.

Index No. 10 CV 3332 (KMW)

DECLARATION OF
MAX FOLKENFLIK
IN OPPOSITION TO
ARBITRATION

---

MAX FOLKENFLIK, declares the following to be true under penalties of perjury:

1. I am counsel for Stephanie L. Sutherland ("Ms. Sutherland"), Plaintiff in this action and I make this declaration in opposition to Defendant's Motion to Compel Arbitration.

2. The arbitration Defendants seek is pursuant to the Arbitration Agreement denominated, the "EY Common Ground Dispute Resolution Program" (the "EY Arbitration Agreement"). A copy of the EY Arbitration Agreement is annexed hereto as Exhibit A. Pursuant to that agreement, the parties must engage in mediation (referred to as Phase I) and arbitration, (referred to as Phase II) before JAMS or the American Arbitration Association ("AAA"). The JAMS mediation and employment arbitration rules are annexed hereto as Exhibit B, the AAA employment rules and mediation rules are annexed hereto as Exhibit C. Annexed as Exhibit D is the transcript of the hearing before the Court on June 17, 2010. Annexed as Exhibit E is the transcript of the hearing before the Court on June 29, 2010.

3. Defendant attempts to characterize that this case as a simple case of alleged misclassification of an employee as exempt from relevant overtime laws. Plaintiff's Mem at 11. However nothing could be further from the truth. Whether non-licensed accountants working on audit engagements would qualify for various exemption from overtime rules under the FLSA

or under New York law is newly addressed by the case law and currently developing. The characteristics of the work performed by junior accounts assisting licensed professional in providing audit services is certainly less familiar to most arbitrators or courts than the work of a delivery man or manager at a franchised fast food restaurant, and requires more analysis and explanation of those duties to evaluate the applicability of the relevant exemptions.

4.  The existence of an exemption from relevant overtime laws depends on a determination of the "primary duties" of the employee, see, e.g., 29 C.F.R. § 541.202(a) (administrative exemption), 29 C.F.R. § 541.301(a) (learned professional exemption) a factual determination requiring the consideration of a number of factors. See, e.g., *Donovan v. Burger King Corp.*, 675 F.2d 516, 521 (2d. Cir. 1982), as well as an evaluation of whether the employee's activities involve "discretion and independent judgment." *See*, 29 C.F.R. § 541.202(a) (administrative exemption) or whether the employee's duties required "advanced knowledge" 29 C.F.R. § 541.301(a) (learned professional exemption).

<u>My Experience</u>

5.  Over the last 35 years, I have had extensive and continuance experience in conducting mediations and arbitrations before the American Arbitration Association, the NASD (now FINRA), the International Center of Dispute Resolution ("ICDR") as well as mediations and arbitrations under party administered rules, and mediations under court administered rules. I have engaged in multiple mediations and multiple arbitrations over the last year, including an ICDR arbitration in London which proceeded through a hearing and award at the end of June.

6.  The cases I have handled have gone from fairly simple, straight forward and short, to lengthy and complex. I have mediated an arbitration before some of the most well known and creative mediators/arbitrators including former Third Circuit Chief Judge John Gibbons, the Honorable Nicholas J. Politan, former District Judge for the District of New Jersey, the Honorable Elizabeth S. Stong (bankruptcy judge in the Eastern District of New York), the Honorable Edward A. Infante, former Magistrate Judge for the Central District of

California, Eric Green of Resolutions LLC and Kenneth Feinberg, Special Master of the September 11 Victim Compensation Fund and currently the Independent Administrator of the Gulf Claims Facility Compensation Fund, as well as many others.

Ms. Sutherland's Overtime Claim

7. My firm has computed the overtime claim of Ms. Sutherland based on an excel spreadsheet of her actual hours worked provided to me by the Defendants. A copy of that excel spreadsheet is annexed as Exhibit F and a copy of our computations are annexed as Exhibit G. There are some uncertainties in the figures provided to me, such as the entry of "negative hours," which were not explained.

8. Our computations show that Ms. Sutherland's overtime hours for 2008 and 2009 are 151.5 hours. This translates into an actual overtime loss of approximately $1,867.02, with potentially liquidated damages of an equal amount under the FLSA. This computation, however, does not include additional overtime hours which Ms. Sutherland will testify she worked, but did not document, either because she was instructed not to, or for other reasons.

The Costs of Mediation and Arbitration

9. Based on my experience, and as set forth in greater detail below, proceeding with Ms. Sutherland's claims in arbitration would be prohibitably expensive. This would be so even if Ms. Sutherland were allowed to use all of the discovery generated in the *Ho* litigation. In *Ho* document production included more than 52,000 pages, and Plaintiffs took approximately 15 depositions. My conclusion about prohibitive expense be unchanged even if we could use declarations available in the *Ho* litigation rather than live testimony. It is questionable as to whether the arbitrator will allow us to use the discovery material and declarations.

10. It is, however, unquestionable that the discovery which could be available to Ms. Sutherland in her case, *will not* be available to any other Ernst & Young employee who wishes to sue for unpaid overtime to which they were entitled. The following estimates are, therefore, far less than the costs which would be incurred by other class members.

Phase I Costs and Fees

11.     The first step is the mediation which requires legal time and attention to selection of an appropriate mediator as well as the mediation process itself (both preparation and attendance). Selection of the mediator and working with the case administrator at JAMS or the AAA is a time consuming process. Certainly 4-6 hours is substantially less than I would expect to spend for any client would engage me for the process. The preparation for the mediation would take, at least, a general review of the evidence available to us (which in this case would be extensive), a review of the relevant case law, and several hours meeting with the client. I would also consider it appropriate to consult, at least generally, with our expert in preparation for the meditation. These activities will take in excess of 16 hours in advance of the mediation.

12.     My experience with JAMS and AAA mediation is that the process is likely to take most of an entire day and frequently extends to multiple sessions or at least the mediation session followed by bi-lateral discussions between the parties. The mediation session itself would be expected to take 4-6 hours at a minimum.

13.     Most mediations are proceeded by pre-mediation briefs which explain the party's position to the mediator. They are not absolutely required, so I will include no time in connection with preparation of such a brief, although I presume that would put us at a disadvantage because it is likely that Ernst & Young will provide one. At the conclusion of the mediation, even if successful, we will have spent in excess of 24 hours of attorney time or more (4 hours for a mediator selection and preliminary proceedings, 16 hours in preparation, and 4 hours in mediation).

14.     As a result, attorney's fees at the close of the mediation would be in excess of $15,000 and that is not including any additional amounts for costs for paralegal assistance, copies, Lexis research or other expenses, all of which would add up at a minimum to several thousand dollars, and all of which would be incurred in proceeding to mediate the case in a professional manner. In pursuing Phase I of the EY arbitration program, Ms. Sutherland would

incur fees and costs far in excess of the amount of her overtime claims with no chance of recovery of those costs and expenses. Under the terms of the EY Arbitration Agreement none of those fees or costs could be shifted to the employer. That is only Phase I.

Phase II Costs and Fees

15. Arbitrations before JAMS or the AAA are invariably proceeded by one or more conference calls with the case administrators and a preliminary hearing (frequently telephonic) to discuss scheduling, trial length, and to address and resolve preliminary matters, including scope of discovery, issues of privilege and the like. While these preliminary procedures typically take far longer to prepare for and conduct, for the purpose of this declaration I will conservatively project 4 hours of time with respect to those activities. That projection is clearly far lower than the actual cost likely to be incurred.

16. In connection with discovery, the EY Arbitration Agreement provides a minimum number of depositions as of right: three depositions for each side of fact witnesses and one depositions for each side of expert witnesses. I would anticipate taking all 4 depositions allowed. A conservative estimate of preparation time would be 1 day for each deposition taken for a total of 4 days (32 hours). I assume that the Defendant will at least take the deposition of Ms. Sutherland and our expert, Dr. Douglas Carmichael. Preparation time for those 2 depositions would conservatively be 1 ½ days (12 hours). Attendance time at the 6 depositions themselves would add another 48 hours: 7 hours are allowed per deposition and I conservatively estimate a combined 1 hour before and after each deposition for miscellaneous preparation, note taking, meeting with my witness or post-deposition organization.

17. Additional document production and review in this case, where many documents have already been produced in *Ho*, will undoubtedly consume an additional 2 days (16 hours). In any other case, by an EY employee without the *Ho* documents, document production and review would surely take weeks of attorney time.

18.     Preparation for the arbitration hearing will take at least a week and drafting a pre-arbitration, brief would add another 4 days for a total of 72 hours.  Responding to a summary judgment motion by Defendants, which the EY Arbitration Agreement provides for, and based on Defendant's litigation approach to date is a virtual certainty, is likely to add another 4 days of time, or 32 hours.

19.     I would anticipate that the arbitration hearing itself could take no less than 2 days and more likely 3 days, but adding an additional 2 days would still result in approximately 14 hours of hearing time and certainly another 3 or 4 hours of preparation in the evening prior to the second day of the hearing.

20.     As a result, I would estimate that the total time required to litigate Ms. Sutherland's arbitration individually would be in excess of 257 hours which at my regular billing rate of $625 translates into over $160,000.

21.     It is true that Ms. Sutherland could potentially find a cheaper attorney, but even at one-half my billing rate the legal fees would still be $80,000.  Nor do I believe that it would be appropriate to require Ms. Sutherland to find counsel who does not have sufficient familiarity with an accounting practice, or with labor law issues to properly litigation this claim.

22.     In addition to legal fees, as Defendant's memorandum itself recognizes, some expert testimony would be required.  See Def. Mem. at 11.  I submit herewith the Declaration of Dr. Douglas R. Carmichael indicating that the minimum expense for providing expert testimony in this case would be more than $33,500 and that his standard retainer payment is $25.000.00.  Dr. Carmichael has been identified by us as our expert witness .

23.     It is of course true, that Ms. Sutherland can retain an expert who is less expensive per hour than Dr. Carmichael, although in my experience his speed at dealing with the various necessary issues and extensive familiarity with AICPA, and PCOB rules, which in some cases he authored, more than compensates for his hourly rate and makes him a very cost effective expert witness in a case of this type.

24. Additional costs which would necessarily be incurred including the costs of the deposition transcripts (4 days as the examiner, and 2 days obtaining a copy only), which we estimate to be approximately $6,375. Under the Arbitration Agreement Plaintiff is required to pay a "Court Equivalent Fee" which in the United States District Court is $350.00. I would expect the arbitrator's fee to be $600 per hour and that he would spend no less than 4 days in "study time," the hearing and preparation of his award, amounting to $24,000 in arbitrator fees.

25. While my co-counsel and I are happy to represent Ms. Sutherland in a class and collective action, to advance all costs, and to rely on the Court to award legal fees and costs, we certainly would not represent Ms. Sutherland without charge, and advance the required costs in an individual mediation/arbitration under the Arbitration Agreement where mediation fees are uncompensated, expert fees are uncompensated, attorney's fees are left to the discretion of the arbitrator and there is a risk of adverse cost shifting in the event of loss.

26. As to cost shifting, in my experience, and the experience of arbitrators and attorneys with whom I have discussed the matter, arbitrators in New York are extremely reluctant to shift attorneys fees and arbitrator fees to the losing party even when the rules and the agreement of the parties allow cost shifting. Given the clear expression of intent to have each party bear its own costs and expenses and to divide the arbitrator's fees equally set out in the EY Arbitration Agreement, even in light of the language of the FLSA, based on my experience I consider it highly unlikely that an arbitrator would award a successful plaintiff her attorney's fees and shift the cost of the arbitration fees to the defendant. Given the language of the EY Arbitration Agreement, I think an arbitrator would not consider it permissible to shift to defendant the cost of plaintiff's expert.

27. I do not know any attorney who would agree to represent a client under such circumstances and do not believe that anyone would be found to do so. Because of the expense and risks, I would never recommend to a client that such an action should be pursued.

Executed: New York, New York
September 3, 2010

_____
Max Folkenflik