UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHANIE SUTHERLAND, on behalf of herself
and all others similarly situated,

Index No. 10 CV 3332 (KMW)

Plaintiff,

- against -

ERNST & YOUNG LLP,

Defendant.


# PLAINTIFF'S MEMORANDUM OF LAW
# IN OPPOSITION TO MOTION
# <u>TO COMPEL ARBITRATION</u>


FOLKENFLIK & McGERITY
1500 BROADWAY
21ST FLOOR
NEW YORK, NEW YORK  10036

ATTORNEYS FOR PLAINTIFF,
STEPHANIE SUTHERLAND

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITY ................................................................................................ ii

INTRODUCTION AND SUMMARY ............................................................................. 1

FACTUAL BACKGROUND ........................................................................................... 5

    A.    The Employment of Plaintiff by Defendants .......................................... 5

    B.    The EY Arbitration Agreement ................................................................ 7

    C.    The Procedural Background ...................................................................... 11

    D.    The Prohibitive Expense of Proceeding Individually
          in Arbitration to Recover Plaintiff's Statutorily
          Entitled Overtime Payments .................................................................... 11

ARGUMENT .................................................................................................................... 12

Point I     The FLSA Creates Legal Rights Which Would be
          Impermissibly Compromised by Compelling Arbitration ...................... 12

    A.    The FLSA and its Legislative History .................................................... 14

Point II    Arbitration Under the EY Arbitration Agreement Is
          Prohibitively Expensive And Will Therefore Render
          It Impossible For Plaintiff To Vindicate Her Statutory Rights ............... 23

Point III   The EY Arbitration Agreement Is Unconscionable
          As A Matter of New York Law ............................................................... 28

Point IV   Defendant Has Waived The Right To Demand
          Arbitration By Proceeding In Litigation ................................................. 30

CONCLUSION................................................................................................................. 32

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

Cases

*14 Penn Plaza, LLC v. Pyett,*
    ___ US ____, 129 S.Ct. 1456 (2009).................................................................4, 19, 21

*Alexander v. Gardner-Denver,*
    415 U.S. 36 (1974)..........................................................................................20

*Allied-Bruce Terminix Cos. v. Dobson,*
    513 U.S. 265 (U.S. 1995)................................................................................13

*Barrentine v. Arkansas-Best Freight Sys.,*
    450 U.S. 728 (1981).......................................................................................22

*Brady v. Williams Capital Group, L.P.,*
    14 N.Y.3d 459 (2010) ...........................................................................25, 26, 28, 29

*Brewer v. Mo. Title Loans, Inc.,*
    2009 Mo. App. LEXIS 1714 (Mo. Ct. App. 2009).........................................28

*Brooklyn Sav. Bk. v. O'Neil,*
    324 U.s. 697 (1945) .......................................................................................19

*Cabintree of Winscon v. Kraftmaid Cabinetry,*
    50 F.3d 388 (7th Cir. 1995) .....................................................................2, 30

*Carlson v. Xerox Corp.,*
    355 Fed. Appx. 523 (2d Cir. 2009).................................................................24

*Carnegie v. Household Int'l, Inc.,*
    376 F.3d 656 (7th Cir. 2004) .........................................................................26

*Carter v. Countrywide Credit Ind. West, Inc.,*
    362 F3d 294 (Fed. Cir. 2004).........................................................................22

*Chao v. Barbeque Ventures, LLC,*
    547 F.3d 938 (8th Cir. 2008) .........................................................................2

*Chao v. Gotham Registry, Inc.,*
    514 F.3d 280 (2d Cir. 2008)...........................................................................2

*Circuit City Stores v. Adams,*
    532 U.S. 105 (2001)........................................................................................13

*Coady v. Cross Country Bank, Inc.,*
    2007 WI App 26 (Wis. Ct. App. 2007).............................................................28

*Coca-Cola Bottling Co. v. Soft Drink & Brewery*
  *Workers Union Local 812, Int'l Bhd. of Teamsters,*
  242 F.3d 52 (2d Cir. N.Y. 2001)................................................................30

*Creighton v. Blockbuster, Inc.,*
  321 Fed. Appx. 637 (9th Cir. 2009)...........................................................28

*De Sapio vs. Kohlmeyer,*
  35 N.Y. 2d 402, 405 (1974)..........................................................................1

*EEOC v. Rappaport, Hertz, Cherson & Rosenthal, P.C.,*
  448 F. Supp. 2d 458 (E.D.N.Y. 2006)........................................................26

*Fensterstock v. Educ. Fin. Partners,*
  2010 U.S. App. LEXIS 14172 (2d Cir. 2010)..................................5, 26, 27

*Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.,*
  7 N.Y.3d 96 (N.Y. 2006).............................................................................29

*Gentry v. Superior Court,*
  42 Cal. 4th 443 (Cal. 2007)....................................................................27, 28

*Georgia, Jones v. DirecTV, Inc.,*
  2010 U.S. App. LEXIS 11352 (11th Cir. 2010)..........................................28

*Gilmer v. Interstate/Johnson Lane Corp.,*
  500 U.S. 20 (1991)............................................................18, 19, 21, 22, 25

*Green Tree Fin. Corporation-Alabama v. Randolph,*
  531 U.S. 79 (2000)......................................................................................25

*Hoffmann-La Roche v. Sperling,*
  *493 U.S. 165 (1989)*...............................................................................3, 19

*Italian Colors Rest. v. Am. Express Travel Related Servs. Co. (In re Am. Express*
  *Merchants' Litig.),*
  554 F.3d 300 (2d Cir. 2009)................................................................ *passim*

*Johnson v. West Suburban Bank,*
  225 F.3d (3d Cir. 2000)...............................................................................22

*Kinkel v. Cingular Wireless, LLC,*
  223 Ill. 2d 1 (Ill. 2006)...............................................................................28

*Kinkel v. Cingular Wireless, LLC,*
  357 Ill. App. 3d 556 (Ill. App. Ct. 5th Dist. 2005) ...................................14

*Litman v. Cellco P'ship,*
  2010 U.S. App. LEXIS 10405 (3d Cir. 2010) ............................................28

*Macdonald vs. West Branch,*
    466 US 284 (1984) ............................................................................................20

*Mansberger v. Ernst & Young LLP, et. al.*
    (No. 10-CV-3883 (KMW)) .........................................................................1, 11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,*
    473 U.S. 614 (1985) ..........................................................................18, 19, 25

*Muhammad v. County Bank of Rehoboth Beach, Delaware,*
    189 N.J. 1 (N.J. 2006) ......................................................................................28

*Nassau Trust Co. v Montrose Concrete Prods. Corp.,*
    56 NY2d 175, 436 NE2d 1265, 451 NYS2d 663 [1982] ................................29

*Pomposi v. Gamestock, Inc.,*
    No. 309 Civ. 0340 (VLB), 159 Lav. Cas (CCH)
    P, 17, 157 (D. Conn. Jan. 11, 2010) ..............................................................27

*Ried v. Suppershuttle, Int'l, Inc.,*
    No. 08 Civ. 4854 (JG), 2010
    WL 1049613 (E.D.N.Y. Mar. 22, 2010) .........................................................27

*Rock v. Ray Anthony Int'l, LLC,*
    2010 U.S. App. LEXIS 10775 (11th Cir. Fla. May 26, 2010) ..........................2

*SEC v. Colonial Inv. Mgmt. LLC,*
    2010 U.S. App. LEXIS 12394 (2d Cir. June 17, 2010) ....................................5

*Skirchak v. Dynamics Research Corp.,*
    508 F.3d 49 (1st Cir. Mass. 2007) ...............................................................5, 27

*Stark v. Molod Spitz DeSantis & Stark, P.C.,*
    9 N.Y.3d 59 (N.Y. 2007) .................................................................................29

*Stolt-Nielsen S. A. v. Animal Feeds Int'l Corp.,*
    130 S. Ct. 1758 (2010) ......................................................................................5

*Tillman v. Commer. Credit Loans, Inc.,*
    362 N.C. 93 (N.C. 2008) .................................................................................28

**STATUTES**

9 U.S.C. § 2 ............................................................................................................13

9 U.S.C. § 256 ........................................................................................................18

29 U.S.C. § 216(b) ..........................................................................................*passim*

29 U.S.C. § 216(c) ........................................................................................2, 15, 20

42 USC § 1983 .................................................................................................................20

ADEA .........................................................................................................3, 21, 22

Age Discrimination Employment Act of 1967 ("ADEA") ..........................................21

Fair Labor Standards Act of 1938 (the "FLSA") ............................................... *passim*

Federal Arbitration Act of 1925 (the "FAA") ..............................................................12

Title VII of the Civil Rights Act of 42 USC § 2000 *et. seq* ........................................20

**OTHER AUTHORITIES**

*FLSA Collective Actions Rule 23 Class Actions and the*
    *Ruling Enabling Act*, 69 .............................................................................................16

Forsythe, *The Legislative History of the Fair Labor Standards Act* ,
    6 Law and Contemporary Problem 464, 464-67 (1939) ...........................................16

*Lopez, Collective Confusion:  FLSA Collective Actions*
    *Rule 23 Class Actions and the Rules Enabling Act*,
    69 Hastings Law Journal 215, 279-281 (2006) ........................................................16

Fed. R. Civ. P. Rule 23 ...............................................................................17, 18, 24

*Pomposi v. Gamestock*, 159 ........................................................................................27

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEPHANIE SUTHERLAND, on behalf of herself
and all others similarly situated,

                   Plaintiff,

  - against -

ERNST & YOUNG LLP,

                  Defendant.

Index No. 10 CV 3332 (KMW)

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

Plaintiff, Stephanie Sutherland by her attorneys Folkenflik & McGerity, submit this Memorandum of Law in Opposition to the Motion by Defendant, Ernst & Young to stay or dismiss this case and compel arbitration.

### INTRODUCTION AND SUMMARY

This action was commenced on April 20, 2010. Belatedly, on August 3, 2010, Defendant first raised the possibility of asserting its "right" to compel arbitration under an arbitration agreement imposed by Ernst & Young in connection with its employment of the Plaintiff. The decision to arbitrate followed extensive procedural maneuvering designed to transfer this action and the related case of *Mansberger v. Ernst & Young LLP, et al.*("*Mansberger"*) to California, maneuvering which is, as yet, unsuccessful.

Defendant's conduct quite clearly demonstrates that it initially was happy with the choice of resolution in judicial proceedings and only later turned to arbitration when rulings which it sought from this Court were not readily obtained. Such an approach clearly "manifests an affirmative acceptance of the judicial forum" and amounts to waiver under New York law.

*De Sapio vs. Kohlmeyer,* 35 N.Y. 2d 402, 405 (1974). It is unacceptable for Defendant to have waited to "see how the case was going on in federal district court before deciding whether it would be better off there or in arbitration." *Cabintree of Winscon v. Kraftmaid Cabinetry*, 50 F.3d 388, 390-91 (7th Cir. 1995).

Whether Defendant's blatant forum shopping, is a sufficient basis to deny the motion to dismiss is discussed below. It certainly is enough, as to the pendent state law claim, but Plaintiff is well aware of the need to show "prejudice" under existing Second Circuit precedent to dismiss the Federal claim. Whether Defendant's conduct standing alone created sufficient "prejudice" to deny the motion is, we freely admit, a difficult argument under the existing Second Circuit cases. But the thrust of our opposition is elsewhere.

The most compelling reason to deny the motion is that dismissing this action would effectively deny the Plaintiff, and the other Ernst & Young "similarly situated" employees whom she seeks to represent, their statutory rights to overtime payments and the accompanying rights to liquidated damages and guaranteed "reasonable attorney's fees" and costs if they prevail. Compare, Section 16(b) of the FLSA, 29 U.S.C. § 216(b). Waivers or compromises and supervised by the Secretary of Labor 29 U.S.C. § 216(c).

A long line of authority reaching to the United States Supreme Court has recognized, the non-waivable nature of the substantive rights granted by the FLSA. [1] It is true, as Defendant argues in its Memorandum, that these cases do not address the collective action, mandatory

---

[1] *Rock v. Ray Anthony Int'l, LLC*, 2010 U.S. App. LEXIS 10775 (11th Cir. Fla. May 26, 2010)( "FLSA rights cannot be waived"); *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 290 (2d Cir. 2008). "[T]he Supreme Court instructs that employees cannot waive the overtime protections granted them in the FLSA without nullifying the Act's purposes and setting aside the legislative goals it wanted effectuated."); *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008)(employee "cannot waive his entitlement to FLSA benefits.").

2

penalties, mandatory attorney fee and cost shifting, or Secretary of Labor oversight which are the rights we claim are barred or compromised by Defendant's arbitration program. Defendant's Mem. at 8. That does not mean that these cases are "irrelevant," as Defendant argues, *id.*, but instead those decisions raise clearly the question of whether the statutory rights which are at issue here are substantive, an important part of the statutory scheme, which cannot be "waived," just as the rights to minimum wage and payment for overtime , which these remedies and penalties were designed to protect, cannot be waived.

The statutory enforcement and remedial *rights* are substantive and were guaranteed by Congress under the Fair Labors Standards Act ("FLSA"), as the text of the statute and the legislative history of the FLSA demonstrate.   As Congressman Kent Keller of Illinois, one of the managers on the part of the House on the  Conference Committee made clear, these provisions for enforcement were designed to "*put[] directly into the hands of the employees who are affected by violation the means and ability to assert and enforce their own rights.*" Sloan, 4 American Landmark Legislation, at 465, Congressional Debates (House), June 14, 1938.

The substantive importance of the statutorily granted right to proceed as a collective action is evident as well from Supreme Court precedent which recognized the right granted in Section 16(b) of the FLSA as an "explicit statutory direction of a single … action for multiple … plaintiffs." *Hoffmann-La Roche v. Sperling, 493 U.S. 165, 173* (1989).[2]  As the Supreme Court has held: "Congress has stated its policy that … plaintiffs [in actions where Section 216(b) applies] should have the opportunity to proceed collectively. A collective action allows … plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources."

---

[2]  While *Hoffman-LaRoche* involved an action under the ADEA, that statute incorporated the provisions of Section 216(b) of the FLSA which applies in this case.

*Id.* at 170.  Indeed, as *Hoffman-LaRoche* recognizes, and the proof on this motion demonstrates, the members of the collective group may not even be aware of their rights absent the notice sent as a result of a conditionally certified collective action.

The same statutory language and legislative history (as well as common sense) establish the right to guaranteed liquidated damages and mandatory attorney fee shifting are also substantive, important and unwaivable.  It is long settled that arbitration of statutory rights is allowed only so long as "a party does not forego the substantive rights afforded by statute; it only submits their resolution in an arbitral rather than a traditional forum."  *14 Penn Plaza, LLC v. Pyett*, ___ US ____, 129 S.Ct. 1456, 1469 (2009).  The EY Arbitration Agreement in this case impermissibly waives the rights to collective actions, guaranteed liquidated damages and mandatory attorney's fees shifting.

Further, as the showing in this opposition demonstrates, it is simply not practical to try Plaintiff's case or those of her colleagues who are "similarly situated" on an individual basis and without guarantees of mandatory fee shifting.  The EY Arbitration Agreement also imposes prohibitively expensive mandatory mediation (not only arbitration) where no fee shifting is allowed.  Any such proceeding is prohibitively expensive in general, as illustrated here where the Plaintiff's unpaid overtime claim is approximately $1,867, and the (unrecoverable) costs and fees associated with mediation alone are likely to approach or exceed ten times that amount. Arbitration costs and fees under the EY Arbitration Agreement are likely to exceed 100 times Plaintiff's loss.

It is well established law in the United States Supreme Court, in the Second Circuit, and in the New York Court of Appeals that if the plaintiffs are disabled or deterred from effectively vindicating statutory rights by the costs due to a contractual requirement of individual

arbitrations, an arbitration clause containing a class action waiver cannot stand. *Italian Colors Rest. v. Am. Express Travel Related Servs. Co. (In re Am. Express Merchants' Litig.),* 554 F.3d 300 (2d Cir. 2009) ), *vacated and remanded on other grounds sub nom. Am. Express Co. v. Italian Colors Rest.,* 176 L. Ed. 2d 920, 2010 WL 1740528 (U.S. 2010).[3]  In those cases, such as here, where the employer made clear his opposition to class arbitration, the remedy requires denial of the motion to compel arbitration altogether. *Fensterstock v. Educ. Fin. Partners,* 2010 U.S. App. LEXIS 14172, 40-41 (2d Cir. 2010)(resolving the issue left open by the *Italian Colors* remand)

Whether the Court bases its ruling on the impermissibility of compelling arbitration which requires employees to waive statutorily guaranteed rights, or upon the "prohibitive cost" analysis as in *Italian Colors,* or upon the closely related concept of unconscionability, as a matter of state law, *see, Skirchak v. Dynamics Research Corp.,* 508 F.3d 49 (1st Cir. Mass. 2007) (in case asserting FLSA claims, finding arbitration clause with class action waiver unconscionable under Massachusetts law), the EY Arbitration Agreement cannot stand and Defendant's motion to compel arbitration must be denied.

## FACTUAL BACKGROUND

A.    The Employment of Plaintiff by Defendants

On about September 5, 2007 Plaintiff, Stephanie L. Sutherland ("Sutherland") received an employment offer from Ernst & Young to be employed with the title of Staff/Assistant. *See,*

---

[3] Defendant inexplicably claims that the Second Circuit decision which was vacated and remanded for reconsideration in light of *Stolt-Nielsen S. A. v. Animal Feeds Int'l Corp.,* 130 S. Ct. 1758 (2010) "is not citable authority." Defendant's Mem. at 11. The issue in *Stolt-Nielsen* went solely to the question of whether a class action waiver in an arbitration clause could be stricken and class arbitration ordered, which the Second Circuit had done. That is not the proposition for which Plaintiff cites *International Colors*. The case properly can be cited as "*vacated and remanded on other grounds,*" as the Second Circuit itself has done recently. *See, SEC v. Colonial Inv. Mgmt. LLC,* 2010 U.S. App. LEXIS 12394, *3 (2d Cir. June 17, 2010)

Exhibit A to Declaration of Dea Reece (hereinafter "Reece Dec." at Reece Dec.), submitted in support of the Motion at 3. The offer of employment was expressly conditioned upon the agreement that Sutherland submit all employment-related disputes, including disputes under the Fair Labor Standards Act ("FLSA") to mandatory  mediation and arbitration pursuant to the EY Arbitration Agreement which was enclosed with her offer of employment. *Id*. at 4. The salary was $55,000 per year. *Id*. at 3.

Thereafter she commenced employment and worked substantial overtime, but was never given any additional payments for overtime. *See*, Declaration of Stephanie L. Sutherland, dated September 3, 2010, submitted herewith ("Sutherland Dec."), submitted herewith at ¶ 3. During the course of her work at Ernst & Young, Ms. Sutherland worked approximately 151 1/2 hours of overtime. The regular hourly rate would have entitled her overtime payments of approximately $1,867.02. *See*, Declaration of Max Folkenflik dated September 3, 2010 ("Folkenflik Dec."), submitted herewith at ¶ 8. Ms. Sutherland was terminated in December 2009 because she was missing work due to illness. Sutherland Dec. ¶ 3.

Since losing her job at Ernst & Young, Ms. Sutherland has been, and continues to be, unemployed. She has no savings and has approximately $35,000 of student loans to pay off. Sutherland Dec. ¶ 5.

Ms. Sutherland learned about the existence of her right to receive overtime payments after stumbling upon the website maintained by one of Plaintiff's counsel in this action, Leon Greenberg, while surfing the web. Sutherland Dec. ¶ 6. Prior to that time Ms. Sutherland was unaware that she might have any legal right under federal or state law to receive overtime payments for the overtime work she performed. *Id*.

Ms. Sutherland agreed to be a Plaintiff in this case, not just to obtain money for herself

6

for overtime but to obtain recoveries for her friends and others at Ernst & Young who are

entitled to, but did not receive, overtime payments. *Id.* at ¶ 6.

B.    The EY Arbitration Agreement

The EY Arbitration Agreement imposed upon Plaintiff as a condition of her employment

with Ernst & Young is dated July 18, 2007, and titled "EY Common Group Dispute Resolution

Program". The EY Arbitration Agreement does provide within its coverage are "claims based on

federal statutes such as … the Fair Labor Standards Act." EY Arbitration Agreement Section

II.C.(1). It does not contain, as some such agreements do, any explicit language referring to

class actions. Nonetheless, the bar to proceeding in arbitration as a class or collective action is

clear.

Section IV.K. provides:

K. Separate Proceedings. If there is more than one Covered Dispute between the
Firm and an Employee, all such Covered Disputes may be heard in a single
proceeding. Covered Disputes pertaining to different Employees will be heard in
separate proceedings.

The parties agree, this provision effectively bars any class or collective proceedings in the

arbitration. *See*, Defendant's Mem. at 4.

The Dispute Resolution process mandated by the EY Arbitration Agreement is lengthy,

complex and multi-phased. For Phase I, EY Arbitration Agreement requires mediation before

either the American Arbitration Association ("AAA") or JAMS, at the employee's choice. EY

Arbitration Agreement Section III.B. Mediation is conducted in accordance with the rules of the

selected mediation provider. *Id.* at III.B.

Section III.H. of the EY Arbitration Agreement provides that there is no "cost" shifting for Phase I: "Each party shall be responsible for the party's own attorney's fees and related expenses.

*Id.*

However, the fees and expenses charged by the provider or the mediator are borne by the EY. The Plaintiff pays either the costs for commencing a law suit, referred to as the "Court Equivalent Fee," or the administrative cost of the provider, whichever is less. EY Arbitration Agreement Section III.G.

Absent agreement between the parties, the mediation ends after 90 days. *Id.* at III.I. Phase II is arbitration, either before the AAA or JAMS as the employee chooses. EY Arbitration Agreement IV.A. and B. In the event that the employee has commenced a lawsuit, EY can either commence an arbitration or seek an order requiring compliance with the full EY Arbitration Agreement program.[4] Defendant in this case has chosen to seek an order requiring compliance with the full program.

The provider chosen must agree to comply by the terms of the EY Arbitration Agreement. *Id.*, at IV.E.(2). If there is any conflict between the provider's arbitration rules and terms provided by the EY Arbitration Agreement, the EY Arbitration Agreement "will take precedence." EY Arbitration Agreement IV.D. Further, the arbitrator must also be bound by the EY Arbitration Agreement. "No person may serve as an arbitrator unless the person has

---

[4] Section IV.B. of the Arbitration Agreement provides:

> B.      Phase I Default. If a party files a lawsuit relating to a Covered Dispute in court in violation of the terms of the Program, the other party may choose to proceed directly to Phase II or to seek an order requiring the party who filed the lawsuit to satisfy the requirements of the Program.

8

confirmed in writing that he or she (a) is bound by and will follow the requirements of the program..." *Id.* at IV.G.(4).

Discovery in the arbitration is atypically expansive.  In addition to the ability to "obtain reasonable discovery of documentary evidence," EY Arbitration Agreement IV.L.(1), which is commonly allowed, the parties have a right to take multiple depositions including experts.  The EY Arbitration Agreement provides:

> 2. Each party may also take the deposition of (i) three individuals of the party's choosing for no more than seven hours each, and (ii) the deposition of any expert witness designated by the other party.

*Id.* at IV.L.(2).  Compare JAMS Employment Arbitration Rules and Procedures.  , Exhibit B to Folkenflik Dec. Rule 17.(b) (One deposition of opposing party.)  AAA Employment Arbitration Rules and Mediation Procedures, Exhibit C to Folkenflik Dec., Rule 9.  (Deposition only if "necessary").

The substantive law which will be applied is the same as a court in that venue would apply.  EY Arbitration Agreement IV.L-J.  The law governing the EY Arbitration Agreement and procedures, is the Federal Arbitration Act, and to the extent State law applies, the Law of New York.  *Id.* V.G.  The EY Arbitration Agreement expressly provides for application the availability of summary judgment.  EY Arbitration Agreement IV.M.

As to cost and fees, unlike the FLSA which provides mandatory fee shifting, the EY Arbitration Agreement provides generally for the sharing of the arbitrator's fee and all other arbitrator cost "equally" to the extent "*permitted* by law and the Arbitration Rules".[5]  Section IV.

---

[5] Section IV.P.(3) gives the arbitrator the *discretion* under to make a different sharing arrangement.  Section IVP(3) provides:

9

P.(2) provides:

"The parties' intent is for Arbitrator fees and other costs of the arbitration, other than filing and administrative fees, to be shared equally to the extent permitted by law and the Arbitration Rules. However, the portion of the cost to be paid by an Employee will be adjusted to the extent, if any, necessary for the parties' agreement to arbitrate to be enforced."

The JAMS rules provide that where the arbitration is based on a agreement that is a condition of employment, "the only fee the employee may be required to pay is the initial JAMS Case Management Fees." "JAMS does not preclude an employee from contributing to administrative and arbitrator fees and expenses." JAMS Employment Arbitration Rules and Procedures, Rule 3.1(c), Exhibit B to Folkenflik Dec. Those rules allow the arbitrator to allocate Arbitrator Fees "unless such an allocation is expressly prohibited by the parties agreement or by applicable law". Id. Rule 24(b).

The AAA rules provide that in arbitration under an employer promulgated plan, such as this, the employer must pay all AAA and arbitrator costs and expenses, unless the arbitrator determines that the employee's claim is frivolous. AAA rules, Cost of Arbitration, Exhibit C to Folkenflik Dec. The arbitrator is given *discretion* to shift attorneys fees and costs "in accordance with applicable law." Id. Rule 39(d).

The result of the provisions of the EY Arbitration Agreement, and relevant rules (to the extent not overridden by the terms of the EY Arbitration Agreement) is that the arbitrator has no authority to shift the parties attorney related costs or expert witness fees, the arbitrator has full

---

3. Party attorney fees and other expenses. Each party will be responsible for the party's own attorney's fees and related expenses, but the Arbitrator will have authority to provide for reimbursement of the Employee's attorney's fees, in whole or part, in accordance with applicable law or in the interest of justice.

10

11

authority to *deny* fee shifting of the employee's attorney's fees.   A JAMS Arbitrator (but not an

AAA Arbitrator) may require the employee to pay arbitrator fees and costs, and the arbitrator

under either set of rules may well find that the employee expressly waived her right to attorney

fee shifting which is mandatory in court under the FLSA.

Finally, the EY Arbitration Agreement provides confidentiality of "all aspects of the

proceeding."[6]

C.     The Procedural Background

Although Defendants served their answer on May 19, 2010 asserting multiple affirmative

defenses, sought and obtained the referral of another action, *Mansberger v. Ernst & Young LLP,*

*et. al.* (No. 10-CV-3883 (KMW)) to this court as a related action, sought consolidation between

*Mansberger* and this case, advised the Court of its intent to move to transfer this action to

California pursuant to Section 1404(a), started the process of letter briefing in connection with

that transfer, sought scheduling of trial and other discovery, and orders compelling certain

discovery from Plaintiff's experts on an expedited basis.

D.     The Prohibitive Expense of Proceeding Individually
       in Arbitration to Recover Plaintiff's Statutorily
       Entitled Overtime Payments

While Ms. Sutherland's overtime claims is approximately $2,000, the costs of complying

with the EY Arbitration Agreement as means of settling her dispute over that amount would be

in excess of $160,000 in attorney's fees, and $33,500 in expert witness fees, *see,* Declaration of

---
[6] Section V(A) provides:

   A. Confidentiality. All aspects of Phase I and Phase II, including any award made,
   shall be confidential, except to the extent disclosure is required by law or
   applicable professional standards, or is necessary in a later proceeding between
   the parties.

Douglas R. Carmichael ("Carmichael Dec."), submitted herewith and well over $16,000 of additional costs and potentially ½ of the arbitrator's estimated $24,000 fee. *See* Folkenflik Dec. at ¶ 24. The aggregate in attorney's fees and expenses are more than 100 times Ms. Sutherland's loss. *Id.* Under the terms of EY Arbitration Agreement, expert witness fees are not compensated even if the party wins, the arbitrator may, but may not, award attorney's fees, and the agreement provides for each party to bear its own costs. The EY Arbitration Agreement does not provide the arbitrator with the authority to shift the cost of mediation.

Ms. Sutherland cannot afford to and would not proceed to vindicate her rights if she had bear the costs of any attorney's fees, even if there was a chance of reimbursement of those fees. She cannot afford to and would not incur the costs of mediation with the other non-reimbursable costs, she cannot afford to, and would not run the risk of an order imposing costs of the arbitration or attorney's fees on her. *See* Sutherland Dec. ¶¶ 4-5.

Counsel for the Plaintiffs would not represent Ms. Sutherland based on fee arrangement set forth in the EY Arbitration Agreement, and are unaware of an attorney who would accept such an engagement and do not believe that one can be found to do so. Folkenflik Dec. at ¶ 27.

## ARGUMENT

Defendant seems to find the issue of whether the EY Arbitration Agreement in question is enforceable is a simple question, hardly requiring any analysis. But, the issue is far from simple and the unavoidable conclusion, contrary to what Defendant argues, is that the agreement cannot be enforced.

## POINT I

## THE FLSA CREATES LEGAL RIGHTS WHICH WOULD BE IMPERMISSIBLY COMPROMISED BY COMPELLING ARBITRATION

This case involves the relationship between two federal statutes, the Federal Arbitration

12

Act of 1925 (the "FAA") and the Fair Labor Standards Act of 1938 (the "FLSA"). Contrary to

Defendant's argument at Page 7 of its Memorandum, it is not "clear" that Plaintiff's FLSA claim

is arbitrable. It is clear that it is not.

It has not been determined, either by the Second Circuit or by the United States Supreme

Court, that arbitration agreements which contain collective and class action waivers are always

enforceable under the FAA. *See, Italian Colors Rest. v. Am. Express Travel Related Servs. Co.*

*(In re Am. Express Merchants' Litig.)*, 554 F.3d at 313 (2d Cir. N.Y. 2009) ("the Supreme Court

has yet to squarely face the question of whether or not there are conditions under which a class

action ban would be incompatible with the FAA.")

Indeed, the application of the FAA to employment disputes such as this one has only

relatively recently become settled law. Section 2 of the FAA provides for the enforceability of a

written arbitration clause in "any maritime transaction or a contract evidencing a transaction

involving commerce…" 9 U.S.C. § 2. Section 1 of the FAA exempts from the Act's coverage

"contracts of employment of seamen, railroad employees, or any other class of workers engaged

in foreign or interstate commerce." 9 U.S.C. § 1.

It took 70 years before it was determined that the definition of "commerce" in the FAA

was sufficiently broad to know that it could apply to a New York employee's agreement with a

New York employer. *See, Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (U.S. 1995). It

was not until 2001 that the Supreme Court finally decided that the Federal Arbitration Act

Section 1 did not exclude all labor contracts, rather than only excluding agreements of

employees actually engaged in interstate commerce. *Circuit City Stores v. Adams*, 532 U.S. 105

(2001). The Court reached that conclusion in a 5-4 vote over strong dissent based on contrary

legislative history which the Court majority had declined to address. *Id.* at 133-140 (Souter,

13

dissenting).

The question of whether the collective action provisions of the FLSA always can be avoided by an arbitration agreement has also never been decided. Yet in this case, the issue is not whether arbitration in general is inherently incompatible with the remedies contemplated by the FLSA, but whether the EY Arbitration Agreement is: "It is one thing to say that a particular arbitration clause or portion thereof is unconscionable; it is another thing to say that arbitration is inconsistent with the purposes of an entire statutory scheme." *Kinkel v. Cingular Wireless, LLC,* 357 Ill. App. 3d 556, 566-567 (Ill. App. Ct. 5th Dist. 2005). The EY Arbitration Agreement undermines a substantial portion of the FLSA's remedial and enforcement scheme, including but not limited to the right to proceed in a collective action. The EY Arbitration Agreement is therefore invalid as an impermissible interference with statutorily granted rights.

A.   The FLSA and its Legislative History

Section 16(b) of the Fair Labor Standards Act, provides in relevant part:

(b) Damages; right of action; attorney's fees and costs; termination of right of action. Any employer who violates the provisions of section 6 or section 7 of this Act [29 USCS § 206 or 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 15(a)(3) of this Act [29 USCS § 215(a)(3)] shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 15(a)(3) [29 USCS § 215(a)(3)], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. …

14

29 USC § 216(b).

This Section contains several remedial and enforcement provisions. First, it provides a *right* to proceed in Court in a collective action. "An action to recover the liability [for unpaid minimum wages, liquidated damages and other appropriate relief] *may be maintained* against any employer … in any Federal or State Court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves or other employees in similarly situated."

Second, it provides the *right* to a penalty of "liquidated damages" in an amount equal to the amount of overtime pay withheld. Third, it provides in addition to any judgment awarded to the plaintiff, a *right* to the award of "a reasonable attorney's fee to be paid by the Defendant and costs of the action …"

Further, Section 16(c) of the Act provides that the employee may settle such an action and waive his rights to liquidated damages, only upon "payment in full" of any unpaid overtime, and supervision and agreement to the waiver by the Secretary of Labor. [7]

The Arbitration at issue in this dispute interferes with each of those remedial measures. It provides an absolute bar to proceeding as a collective claim in arbitration and since Defendant

---

[7] 29 U.S.C. § 216(c) provides in relevant part:

(c) Payment of wages and compensation; waiver of claims; actions by the Secretary; limitation of actions. The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 6 or 7 of this Act [29 USCS § 206 or 207], and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages. The Secretary may bring an action in any court of competent jurisdiction to recover the amount of the unpaid minimum wages or overtime compensation and an equal amount as liquidated damages.

15

16

argues that the action should be dismissed, Defendant argues that it bars, as well, the independent right to proceed as a representative plaintiff on behalf of others "similarly situated" in Court. It imposes a mediation obligation and waives the right to attorney's fees in connection with that obligation. It contains a recitation of the parties intent to divide equally all arbitration expenses and to bear their own costs and attorneys fees in the arbitration and it gives the arbitrator the discretion to award those fees or not rather than a command that they must be awarded. It apparently gives the arbitrator the discretion, but not the obligation, to award liquidated damages. It appears to allow resolution of claims in the mediation or the arbitration, without the required oversight of the Secretary of Labor.

The question therefore, is whether these statutorily granted remedies and penalties are substantive rights which cannot be compromised or waived by an arbitration agreement. The legislative history of the FLSA shows that they are.

The Fair Labor Standards Act was a signature, perhaps the signature issue, of the New Deal legislative program. It followed the Supreme Court's rejection of New Deal wage and hour legislation regulating child labor, minimum wages and maximum hours. President Roosevelt campaigned for re-election on these labor law reforms and because of them proposed what is generally known as the "Court Packing Plan" to overturn what he considered to be inappropriate Supreme Court rulings. Roosevelt's landslide victory led to substantial congressional support for these reforms. There can be little doubt of the strong congressional intent to ensure that the minimum wage and overtime provisions of the FLSA were fully enforced for all employees. *See*, e.g., Forsythe, *The Legislative History of the Fair Labor Standards Act*, 6 Law and Contemporary Problem 464, 464-67 (1939)(hereinafter "*Forsythe*"); Lopez, *Collective Confusion: FLSA Collective Actions Rule 23 Class Actions and the Rules Enabling Act*, 69

Hastings Law Journal 215, 279-281 (2006)(hereinafter "*Lopez*").

The statutory rights and remedies, penalties and enforcement mechanism incorporated to the FLSA were significant congressionally mandated aspects of the legislation.  Indeed, as originally drafted, Section 16(b) was substantially stronger.  The original section provided:

(b) Any employer who violates the provisions of section G or section 7 of this Act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any anyone or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

In commenting on this important enforcement provisions during the House debates on

June 14, 1938, Congressman Kent Keller of Illinois, one of the managers on the part of the

House on the  Conference Committee which reported out the Act in final form, stated:

Among the provisions for the enforcement of the act an old principle has been adopted and will be applied to new uses. If there shall occur violations of either the wages or hours, the employees can themselves, or by designated agent or representatives, maintain an action in any court to recover the wages due them and in such a case the court shall allow liquidated damages in addition to the wages due equal to such deficient payment  and shall also allow a reasonable attorney's fees and assess the court costs against the violator of the act so that employees will not suffer the burden of an expensive lawsuit. The provision has the further virtue of minimizing the cost of enforcement by the Government.  It is both a common-sense and economical method of regulation. The bill has other penalties for violations and other judicial remedies, but the provision which I have mentioned puts directly into the hands of the employees who are affected by violation the means and ability to assert and enforce their own rights, thus avoiding the assumption by Government of the sole responsibility to enforce the act.

Sloan, 4 American Landmark Legislation (1984), at 465, Congressional Debates (House), June 14, 1938.  (emphasis supplied).

81

Almost simultaneously with the passage of these statutory rights for employees to enforce the FLSA, the original version of Rule 23 regarding federal class actions was passed. Rule 23 allowed class actions to proceed as either true class actions, hybrid class actions or "spurious" class actions. True and hybrid class actions involve plaintiffs who shared interests in the same property, or who sought to collect from a common fund, spurious class actions involved related claims against the same defendant or defendants where there are common issues of fact or law. *Lopez* of 284-85.

The representative actions incorporated into Section 16(b) of the FLSA, include actions by employees on behalf of others "similarly situated" and actions by named agents or representatives. The Federal rules were clearly greater than procedural remedies then available under the Original Rule 23.

The Fair Labor Standards Act enforcement provisions were modified by the Portal to Portal Act. That Act eliminated the "representative action" by an agent or other person and required members being represented in a collective action to file a "consent to sue" in order to have the action proceed on their behalf. In addition, Section 256 was added to FLSA to define the commencement of a collective action as the filing of individual "consents to sue" 9 U.S.C. § 256. *See, Lopez* of 281-84.

Had Congress chosen not to provide any special procedural rights to plaintiffs in a collective action, the language concerning the collection action *right* could have simply been eliminated. At the time, under *then* existing class action law, in the absence of any congressional right, plaintiffs would have been allowed to proceed in a spurious class action under Rule 23. However, that was not what Congress determined to do. Although the collective action right *was limited*, it was not *eliminated* on a statutory right, nor were there any limitations or restrictions to

19

attorney's fees and liquidated damages or the *right* of the Secretary of Labor to supervise any waiver of these remedies.

The Supreme Court has long recognized that congressional intent as expressed in statutory language and legislative history, may well preclude arbitration of certain controversies. As the Court said in *Mitsubishi Motors Corp. v. Solar Chrysler-Plymouth*, 473 US 614, 627-28, "it is the congressional intention expressed in [a] statute in which the Courts must rely to identify any categorical claims as to which agreements to arbitrate will be held unenforceable." "Congress itself [may] [e]vidence an intention to preclude a waiver of judicial remedies with the statutory rights at issue." *See, Gilmer v. Interstate/Johnson Lane Corp*, 500 US at 26, quoting *Mitsubishi Motors Corp.*, 473 US at 628. The congressional intention "to include a protection against waiver of [a statutory right] will be deducible from text or legislative history." *Id.* at 29, *accord 14 Penn Plaza, LLC v. Pyett*, ___ US ___, 129 S.Ct. at 1465.

Moreover, judicial acceptance of arbitration of statutory rights is premised upon the guiding principal that, "by agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by statute; it only submits their resolution in an arbitral rather than a traditional forum." *14 Penn Plaza, LLC v. Pyett*, ___ U.S. ___, 129 S.Ct. at 1469 quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 US at 29, and *Mitsubishi Motors Corp.*, 500 US at 26, and *Mitsubishi Motors Corp. v. Solar/Chrysler Plymouth*, 473 US at 628. Here, however, even if the FLSA legislative history can read so as not to require the use of a judicial forum, it must be read as guaranteeing a substantive right to collective actions as well as an absolute right to liquidated damages, fee sharing and the protection of the Secretary of Labor's oversight of any compromise or waiver. Put differently, the EY Arbitration Agreement simply precludes, compromises, or leaves to arbitral discretion rather than compelling, rights that are guaranteed by

the FLSA.

As the Supreme Court held in *Hoffman v. LaRouche v. Sperling*, 493 US 165 (1989), Congress had stated its policy that … plaintiff's [in actions where Section 216(b) applies], should have the opportunity to proceed collective. A collective action allows … plaintiff's the advantage of lower individual costs to vindicate rights by the pooling of resources." *Id.* at 170. The Supreme Court characterized this as, again, "a explicit statutory direction of a single … action for a multiple … plaintiffs." *Id.* at 173.

Similarly, the legislative history of the 1938 Act clearly shows a congressional intention not to allow the waiver of liquidated damages. *Brooklyn Sav. Bk. v. O'Neil*, 324 U.S. 697, 705-06 (1945). Since amendments in 1949, waiver is allowed but only subject to the supervision of the Secretary of Labor. 9 U.S.C. § 216(c). Allowing an arbitrator the discretion to award or not award liquidated damages is, effectively, the waiver of a non-waivable right.

Supreme Court jurisprudence has evolved to allow arbitration of rights, but only when no statutorily granted rights are compromised. In *Alexander v. Gardner-Denver*, 415 U.S. 36 (1974), the plaintiff brought an individual claim for race discrimination under Title VII of the Civil Rights Act of 42 USC § 2000 *et. seq.* pursuant to a union negotiated collective bargaining agreement. The employee's claim was subject to grievance/arbitration procedure which concluded in a finding that the employee was discharged for cause. He thereafter, commenced an action in Federal Court and his employer defended on the grounds that the decision of the arbitrator was not preclusive. A unanimous Supreme Court ruled that "the federal policy favoring arbitration does not establish that an arbitrator's resolution of a contractual claim is not dispositive of the statutory claim under Title VII." *Id.* at 47. Despite the arbitration award, the judicial action for Title VII relief remained intact.

20

In *Barrentine v. Arkansas-Best Freight Systems*, 450 US 728, an individual sought to bring a minimum wage claim in court after having unsuccessfully presented the same claim to a joint grievance committee according to this Union's collective bargaining agreement. The Supreme Court held that he could do so ruling "because Congress intended to give individual employees the right to bring and bear minimum-wage claims under the FLSA in court, and because these congressionally granted FLSA rights are best protected in a judicial rather than arbitral form, we hold that petitioner's claim is not barred by this prior submission of their grievance to the contractual dispute-resolution proceeders." *Id.* at 745.

Thereafter, *Macdonald vs. West Branch*, 466 US 284 (1984), the Supreme Court held that arbitration awards denying a claim under 42 USC § 1983 would not have preclusive affect in a case brought in District Court under that statute.

In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 US 20 (1991) the Court shifted. Plaintiff a securities broker filed a claim for age discrimination under the Age Discrimination Employment Act of 1967 ("ADEA"). The Court held that plaintiff's claim could be compelled to be arbitrated pursuant to the New York Exchange Rule 347 which required arbitration between a registered representative and his employer on claims involving his employment and termination. The Supreme Court held that the employee could be compelled to arbitrate his individual claim.

In *14 Penn Plaza, LLC v. Pyett*, _____ US _____, 129 S.Ct. 1456 (2009), the Supreme Court held that collective bargaining agreements that clearly and unmistakably requires the arbitration of claims under the ADEA would require a plaintiff to have his individual claim of age discrimination arbitrated rather than proceeding in Court.

Several points should be noted about this line of case law. First, none of these cases

involve an individual seeking to bring a "collective action" in Federal Court on behalf of themselves or others "similarly situated." None of these cases holds that FLSA does not guarantee the right to a federal forum. Finally, and most importantly for this case, each of these cases was decided on a narrow proposition as to whether certain statutes guaranteed federal forum rights in all cases. Accordingly none of them decided or even addressed the question of whether arbitration can be compelled when it denies, compromises or makes uncertain rights which are guaranteed as a matter of law.

As pointed out above, FLSA guarantees the right of collective action. *Gilmer* may stand for the proposition that collective action may be held in arbitration, but where collective arbitration is barred, *Gilmer* cannot be properly read to support compelling individual action and denying the FLSA collective remedy. Several Circuit Courts have held otherwise, concluding that based on certain Supreme Court *dicta* in *Gilmer* the Supreme Court rejected the notion that the unavailability of a collective or class action remedy would preclude arbitration of individual ADEA claims. *see, e.g., Johnson v. West Suburban Bank*, 225 F.3d, 366, 377 (3d Cir. 2000) ; *Carter v. Countrywide Credit Ind. West, Inc.*, 362 F3d 294, 298 (Fed. Cir. 2004). Those cases cannot apply to the collective action remedy in FLSA whose legislative history is different from that of the ADEA, and clear.

As the Supreme Court held in *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728 (1981).

The statutory enforcement scheme grants individual employees broad access to the courts. Section 16 (b) of the Act, 29 U. S. C. § 216 (b), which contains the principal enforcement provisions, permits an aggrieved employee to bring his statutory wage and hour claim "in any Federal or State court of competent jurisdiction." No exhaustion requirement or other procedural barriers are set up, and no other forum for enforcement of statutory rights is referred to or created by the statute. ... we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would "nullify" the

purposes" of the statute and thwart the legislative policies it was designed to effectuate.

*Id.* at 740. While the *holding* of *Barrentine* may have been narrowed by subsequent case law, its reading of the congressional intent in passing the FLSA, re-confirmed by *Hoffman-LaRoche*, has never been questioned or rejected by the Court.

In all events, that interpretation of *Gilmer* has been rejected by the Second Circuit in *Italian Colors Rest. v. American Express Travel Related Servs., Co.*, 554 F3d 454 at 314, "We cannot agree with this view of *Gilmer* because a collective, and perhaps a class action in fact, was available in that case. … The statement in *Gilmer* that the arbitration clause would be available "even if" class action" remedies were available [*sic*:unavailable] evidence that the Court, itself was uncertain, but acknowledged the probability that class action were feasible under the NYSE's Rules."

It is equally clear, the right to mandatory, cost shifting, liquidated damages and Secretary of Labor supervision of waivers are also substantive rights and none of these rights are protected by the EY Arbitration Agreement. Because arbitration under the EY Arbitration Agreement does not protect these substantive statutory rights, the motion to compel arbitration must be denied.

## POINT II

**ARBITRATION UNDER THE EY ARBITRATION AGREEMENT IS PROHIBITIVELY EXPENSIVE AND WILL THEREFORE RENDER IT IMPOSSIBLE FOR PLAINTIFF TO VINDICATE HER STATUTORY RIGHTS**

Given Plaintiff's detailed showing in opposition concerning the costs and expenses of a proceeding under the EY Arbitration Program, there is little doubt that the expense of pursuing an individual arbitration is prohibitive. No rational person would incur the expense and incur the financial risk to vindicate their statutory right to overtime pay under the terms of that agreement.

23

Plaintiff's expert witness fees in this case will exceed $33,500, *see*, Dr. Carmichael, Dec. at ¶ 5. The Plaintiff would have to advance those expenses and it is clear under the EY Arbitration Agreement that those fees cannot be "shifted" to the losing party. *See*, EY Arbitration Agreement, Exhibit A to Folkenflik Dec., at Section V.P.E. Mediation costs and attorney's fees and expenses will exceed $15,000. *See*, Folkenflik Dec., ¶ 14. It is clear under the EY Arbitration Agreement that those costs and expenses cannot be "shifted" to the losing party. *See*, EY Arbitration Agreement, Exhibit A to Folkenflik Dec., at Section III H. Deposition transcript fees are likely to exceed $6,375. Folkenflik Dec., ¶ 24. Legal fees will exceed $160,000. *See*, Folkenflik Dec., ¶ 20. The EY Arbitration Agreement states "[t]he parties' intent is for Arbitrator fees and other costs of the arbitration, other than filing and administrative fees, to be shared equally," EY Arbitration Agreement, Exhibit A to Folkenflik Dec., at Section IV.P.(2), and that "[e]ach party will be responsible for the party's own attorney's fees and related expenses." Give this statement, even though the arbitrator has discretion to shift attorney's fees and the arbitrator's fees to the losing defendant, it is "highly unlikely" that any arbitrator will shift attorneys fees or arbitrator fees. *See*, Folkenflik Dec., ¶ 26.

No rational attorney would take the case based on a hope, far from a certainty, that if he wins he could recover at portion of his legal fees related to arbitration (and a certainty he will not recover the potion related to mediation), and where tens of thousands of dollars of costs will be unrecoverable, in a case where the actual damages are merely $1,867.02, or perhaps a bit more. *See*, Folkenflik Dec., ¶ 27.

Class and Collective litigation presents an entirely different economic picture for the client and for counsel. Damages are recoverable for the entire class on the New York Labor Law ("NYLL") claims and for all collect group "opt ins" for the FLSA claims. As a matter of law, on

24

the FLSA claim the attorneys are entitled to reasonable attorney's fees and costs. 9 U.S.C.

§ 216(b). The class claims for NYLL violations under Rule 23 would pay the attorney's fees and

costs based on the common fund doctrine. *Carlson v. Xerox Corp.*, 355 Fed. Appx. 523, (2d Cir.

2009). Since there are in excess of 5,000 class members, even with damages as low as those

shown by Ms. Sutherland, the case would be worth $10,000,000 instead of $1867.02.

Faced with a similar record of minimal damages, potentially large costs and

unrecoverable witness fees, the Second Circuit held in *Italian Colors Rest. v. Am. Express Travel

Related Servs. Co. (In re Am. Express Merchants' Litig.)*, 554 F.3d 300 (2d Cir. 2009):

> [W]e do not decide whether class action provisions are either
> void or enforceable *per se.* Rather, we are concerned solely with the class
> action waiver contained in the contract between the parties before us on this
> appeal. We conclude that, on the record before us, the plaintiffs have
> adequately demonstrated that the class action waiver provision at issue should
> not be enforced because enforcement of the clause would effectively preclude
> any action seeking to vindicate the statutory rights asserted by the plaintiffs.

*Id.* at 304 (2d Cir. N.Y. 2009).

The Second Circuit was not creating new law. The holding that an arbitration of statutory

claims cannot be allowed if arbitration would not, as a practical matter, allow a party to

vindicate statutory rights, has long been recognized in Supreme Court jurisprudence. *Mitsubishi

Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 637 (1985) (arbitration of statutory

claims allowed "so long as the prospective litigant effectively may vindicate its statutory cause

of action in the arbitral forum") (*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28

(1991)(same).

In *Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79 (2000), the Supreme

Court recognized the principle that prohibitive costs could be a bar to the effective vindication of

statutory rights. The Court then held: "we believe that where, as here, a party seeks to invalidate

25

26

an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92.

The New York Court of Appeals also has recently held that arbitration of statutory claims may be precluded if it is concluded that prohibitive costs will deter plaintiffs from vindicating statutory rights. *Brady v. Williams Capital Group, L.P.*, 14 N.Y.3d 459 (2010). In reaching its conclusion, the Court of Appeal held that "we are mindful of the strong State policy favoring arbitration agreements and the equally strong policy requiring the invalidation of such agreements when they contain terms that could preclude a litigant from vindicating his/her statutory rights in the arbitral forum." *Id.* at 467. The rule adopted by the Court of Appeal requires a case by case analysis and at a minimum requires the court to "consider the following questions: (1) whether the litigant can pay the arbitration fees and costs; (2) what is the expected cost differential between arbitration and litigation in court; and (3) whether the cost differential is so substantial as to deter the bringing of claims in the arbitral forum." *Id.*

As Judge Spatt pointed out some years ago, and it still remains true," "[n]either the Supreme Court nor the Second Circuit have elaborated on how detailed the showing of prohibitive expense need be to invalidate an agreement to arbitrate." *EEOC v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 2d 458, 462 (E.D.N.Y. 2006). But as *Italian Colors* demonstrates, there are cases where the cost of arbitration is so large and the potential individual recovery is so small, there can be no claim that any additional showing can or should be required.

The showing on this motion demonstrates that this is one of those cases. Plaintiff has submitted detailed estimates of costs, attorney's fees and expenses, and a detailed showing which of those cost can be shifted should plaintiff win, and that it is highly unlikely that even those

costs which can be shifted to defendant will be shifted. Plaintiff has shown her inability to bear the costs and expenses on even the most optimistic view of her recovery of arbitration costs, and that it would be irrational for her or any of her fellow employees to do so even under the most optimistic recovery scenario. The likely result of arbitration would cause class members to incur $200,000 in individual expenses and fees in pursuit of a $2,000 damage award. To use the words of the Seventh Circuit, "only a lunatic or a fanatic" would take that risk for the limited potential recovery. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

It is, of course true, that costs which might be prohibitive individually can be effectively rendered manageable by the use of class or collective litigation, as was the case in Italian Colors, and as is the case here. Under either the Federal or the state standard, Plaintiff has demonstrated that she cannot possibly afford an individual litigation, but could afford to proceed in Court. As pointed out above, under the Second Circuit rule established by the decisions in *Italian Colors*, and *Fensterstock v. Educ. Fin. Partners*, and the New York rule established in *Brady*, the motion to compel arbitration must be denied and the case must be allowed to proceed in court.

The few contrary cases cited by Defendant are readily distinguishable. In *Ried v. Supershuttle, Int'l, Inc.*, No. 08 Civ. 4854 (JG), 2010 WL 1049613 (E.D.N.Y. Mar. 22, 2010) the Court found plaintiff's claims to be so large that he could have found an attorney to take his case on a contingency. In *Pomposi v. Gamestock, Inc.*, No. 309 Civ. 0340 (VLB), 159 Lav. Cas (CCH) P. 17, 157 (D. Conn. Jan. 11, 2010), plaintiff's recovery in that case was $11,000.00 but the potential expenses of bringing the action were only $1,000 to $2,000. The Court found that although attorneys fees were $45,000 to $60,000, they could be recovered in the event plaintiff prevailed by law.

## POINT III

## THE EY ARBITRATION AGREEMENT IS
## UNCONSCIONABLE AS A MATTER
## OF NEW YORK LAW

A large and growing number of courts have found arbitration clauses unconscionable as a matter of law because of either bars on class and collective action or other terms which could impede the vindication of statutory rights. In *Skirchak v. Dynamics Research Corp.*, 508 F.3d 49 (1st Cir. Mass. 2007), a case asserting FLSA claims, the First Circuit found an arbitration clause with class action waiver unconscionable under Massachusetts law. The First Circuit found that the "statutorily created interest in class actions [in the FLSA], even assuming it is waivable, was sufficiently strong that Massachusetts law would, on these facts, find the waiver would result in oppression and unfair surprise to the disadvantaged party. The waiver was not due to mere allocation of risk because of [Defendant's] superior bargaining power." *Id.* at 60.

Similarly, in *Gentry v. Superior Court*, 42 Cal. 4th 443 (Cal. 2007) the California Supreme Court held if "class arbitration would be a significantly more effective means than individual arbitration actions of vindicating the right to overtime pay of the group of employees whose rights to such pay have been allegedly violated," than class action waiver is against public policy. *Id.* at 466. *See, also, Feinsterstock v. Educ. Fin. Partners*, 2010 U.S. App. LEXIS 14172, 40-41 (2d Cir. 2010)(finding class action waiver unconscionable as a matter of California law). The *Gentry* court noted that employees might not be aware of their rights or the nances of overtime law without a class action device, that the cost of proceeding individually is substantial relative to the individual modest losses , and that the fear of retaliation, particularly among those still employed by that employer, will discourage claims. *Gentry v. Superior Court,*

42 Cal. 4th at 457-60.

Similar finding of unconscionability have been found based on arbitration class action waivers under the law of New Jersey, see, e.g., *Litman v. Cellco P'ship*, 2010 U.S. App. LEXIS 10405, 6-7 (3d Cir. 2010); *Muhammad v. County Bank of Rehoboth Beach, Delaware*, 189 N.J. 1, 22 (N.J. 2006); the law of Georgia, *Jones v. DirecTV, Inc.*, 2010 U.S. App. LEXIS 11352, 5-6 (11th Cir. 2010)(waiver of a class action in arbitration agreement unconscionable "because the costs of arbitration would significantly deter" statutory rights); the law of Oregon, see, *Creighton v. Blockbuster, Inc.*, 321 Fed. Appx. 637 (9th Cir. 2009), the law of Illinois, see, *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 47-48 (Ill. 2006), the law of Missouri, see, *Brewer v. Mo. Title Loans, Inc.*, 2009 Mo. App. LEXIS 1714, 10-11 (Mo. Ct. App. 2009), and the law of North Carolina, see, *Tillman v. Commer. Credit Loans, Inc.*, 362 N.C. 93, 108 (N.C. 2008), and the law of Wisconsin, see, *Coady v. Cross Country Bank, Inc.*, 2007 WI App 26, P53 (Wis. Ct. App. 2007).

We believe that in light of the recent recognition in *Brady v. Williams Capital Group, L.P.*, 14 N.Y.3d 459 (N.Y. 2010) of the "strong policy requiring the invalidation of [arbitration] agreements when they contain terms that could preclude a litigant from vindicating his/her statutory rights in the arbitral forum." *Id.* at 467, and the undeniable evidence that the EY Arbitration Agreement practically preclude individual action, New York would find that the EY Arbitration Agreement is unconscionable and unenforceable.

## POINT IV

### DEFENDANT HAS WAIVED THE RIGHT TO DEMAND
### ARBITRATION BY PROCEEDING IN LITIGATION

As was pointed out in the Introduction and Summary, Defendant's proceeding with

litigation in this action amounts to waiver of their right to proceed with arbitration on the state

law claims. The leading authority in New York is *De Sapio vs. Kohlmeyer*, 35 N.Y. 2d 402

(1974). There defendant asserted a cross claim and procured a deposition of the plaintiff. In

finding each of these actions sufficient to result in waiver, the Court held:

> However, where the defendant's participation in the lawsuit manifests
> an affirmative acceptance of the judicial forum, with whatever advantages it
> may offer in the particular case, his actions are then inconsistent with a later
> claim that only the arbitral forum is satisfactory.

*Id.*, at 405 (N.Y. 1974).

More recent cases continue to apply the same rule, although these create exceptions where

there are needs for judicial intervention not inconsistent with the arbitration right. *See*, *Stark v.*

*Molod Spitz DeSantis & Stark, P.C.*, 9 N.Y.3d 59 (N.Y. 2007).

These cases focus, as they should, on the defendant's voluntary relinquishment of an

arbitration "right" in favor of proceeding in court. That approach is consistent with generally

applicable law regarding the waiver of contract rights. "Contractual rights may be waived if they

are knowingly, voluntarily and intentionally abandoned (*see*, *Nassau Trust Co. v Montrose*

*Concrete Prods. Corp.*, 56 NY2d 175, 184, 436 NE2d 1265, 451 NYS2d 663 [1982]). Such

abandonment, may be established by affirmative conduct or by failure to act so as to evince an

intent not to claim a purported advantage.'" *Fundamental Portfolio Advisors, Inc. v. Tocqueville*

*Asset Mgmt., L.P.*, 7 N.Y.3d 96, 104 (N.Y. 2006)(citations omitted).  No showing of prejudice is

required.

30

It is equally true that a party can show a willingness to take advantage of the judicial process where, as here, it comes into court and attempts to determine if the court will produce the results it seeks. In *Cabinetree of Wisconsin v. Kraftmaid Cabinetry*, 50 F.3d 388, 391 (7th Cir. Wis. 1995), like here, the defendant delayed in seeking arbitration and, like here, the only excuse was they were (secretly) "weighing their options." Judge Posner's strong opinion made clear the Seventh Circuit's condemnation of that approach.

> Neither in its briefs nor at oral argument did *Kraftmaid* give any reason for its delay in filing the stay besides needing time "to weigh its options." That is the worst possible reason for delay. It amounts to saying that *Kraftmaid* wanted to see how the case was going in federal district court before deciding whether it would be better off there or in arbitration. It wanted to play heads I win, tails you lose.
>
> Selection of a forum in which to resolve a legal dispute should be made at the earliest possible opportunity in order to economize on the resources, both public and private, consumed in dispute resolution. This policy is reflected in the thirty-day deadline for removing a suit from state to federal court. Parties know how important it is to settle on a forum at the earliest possible opportunity, and the failure of either of them to move promptly for arbitration is powerful evidence that they made their election-- against arbitration. Except in extraordinary circumstances not here presented, they should be bound by their election.

*Id.*, at 391. (7th Cir.1995).

As to the Federal FLSA claims, different law applies. The Second Circuit rule requires a showing of prejudice. *Coca-Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812, Int'l Bhd. of Teamsters*, 242 F.3d 52 (2d Cir. N.Y. 2001). Other than the not inconsiderable costs of addressing the myriad procedural applications, the early revelation in the name of our expert, and the prejudice entailed in having one's adversary blatantly forum shop, there is not any other prejudice. Under existing case law, that may well be insufficient. However, in light of the somewhat more critical view of arbitration recently expressed by the Second Circuit, we wish to preserve this point for appellate review.

# CONCLUSION

For all of the above reasons, each of which is independently sufficient, the motion to compel arbitration should be denied.

Dated: September 3, 2010
New York, New York

Respectfully submitted,

FOLKENFLIK & McGERITY

Max Folkenflik (MF-2943)
1500 Broadway, 21st Floor
New York, New York 10036
(212) 757-0400
*Attorneys for Plaintiff, Stephanie Sutherland*

32