EXPERT REPORT

OF

DOUGLAS R. CARMICHAEL


STEPHANIE SUTHERLAND

(on behalf of herself and all others similarly situated)

v.

ERNST & YOUNG LLP


UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT ON NEW YORK

_____  9-30-10
Douglas R. Carmichael     Date

# EXPERT REPORT
# OF
# DOUGLAS R. CARMICHAEL

I have been engaged on behalf of plaintiffs by their attorneys in *Stephanie Sutherland (on behalf of herself and all others similarly situated) v. Ernst & Young LLP (E&Y)* now pending in United States District Court, Southern District of New York.

**Introduction -- Nature of Assignment, Qualifications and Related Matters**

**Nature of Assignment.** As I understand it, the issue in this case is whether the E&Y non-CPA employees classified as Staff 1 and Staff 2 working in E&Y's audit line of business are exempt from federal and New York State overtime laws. I have been asked to study and evaluate and formulate opinions on matters related to the class certification of this case. Specifically, I have been asked to focus on the extent to which questions concerning the "primary duty" of Staff 1 and 2, including the extent of discretion and independent judgment they exercise and the extent of supervision and review of their work, can be evaluated commonly for all Staff 1 and 2 non-CPA employees in E&Y's audit line of business.

In studying and evaluating the commonality of the major issues related to class certification, I have focused on the following matters that are discussed in subsequent sections of this expert report:

- The regulatory framework of what nonlicensed accountants can and cannot do in an audit, including the ability to be involved in the running of the business of E&Y's audit clients.

1

- The nature of the audit work generally performed by non-licensed accountants in their first two years of work, and whether the supervision and review, and the immediate direction and supervision, is generally the same for all such E&Y employees.
- Whether the scope of discretion and independent judgment allowed such E&Y employees for matters of significance, and their "primary duty," is generally the same for all E&Y Staff 1 and 2 employees in the audit line of business.

**Qualifications.** I hold the Claire and Eli Mason Professorship in Accountancy at Baruch College of the City University of New York. I teach the subject of auditing to students who are the same type of students hired by E&Y to work in its audit line of business.

I am a certified public accountant (CPA) licensed to practice public accountancy by the State of New York. I have a Ph.D. in accountancy from the University of Illinois (Urbana/Champaign).

From May 2003 to January 2006, I was on leave from Baruch College and served as the first Chief Auditor and Director of Professional Standards of the Public Company Accounting Oversight Board (PCAOB or Board). In this position, I was also the primary advisor to the Board on accounting and auditing matters. The PCAOB was created by the Sarbanes Oxley Act of 2002 (SOX) and is the regulator of auditors of public companies.

Before joining the PCAOB, from February 1983 to May 2003, I taught in the Department of Accountancy at Baruch College. During that time, from March 2001 to May 2003, I was the Director of the Center for Financial Integrity.

Before joining Baruch College, from June 1969 to January 1983, I was employed in various positions by the American Institute of Certified Public Accountants (AICPA) -- the national professional organization of CPAs in the United States. The last position I held at the AICPA was as the first Vice President, Auditing -- the head of the division responsible for establishing auditing standards. During a portion of the time I was employed by the AICPA, I

2

performed a pre-administration review of the Auditing section of the Uniform CPA Examination prepared and graded by the AICPA.

My qualifications are further described in Appendix 1.

I have previously been qualified as an expert in matters involving accounting and auditing in state and federal courts and in criminal and civil matters.  Many of these engagements involved reviewing the audit documentation (or *workpapers*) of CPA firms and reading the testimony of audit staff.  The matters in which I have testified at deposition or trial in the last four years are listed in Appendix 2.

**Terms of Engagement.**  I am performing this expert witness engagement in accordance with the AICPA's Statements on Standards for Consulting Service, *Consulting Services: Definitions and Standards.*

During this engagement, I have considered certain documents, declarations, and testimony provided by attorneys for plaintiffs.  These materials are listed in Appendix 3 and cited at relevant points in this expert report.

I am being compensated at my normal hourly rate for expert witness services of $700 per hour.  My compensation is not contingent on the outcome of this matter.

My opinions, which are expressed throughout this expert report, are my present opinions based on the information I have considered to date.  These opinions are based on my knowledge, training, and experience and the various sources of evidence produced to date.  My opinions may be amended as a result of additional information learned prior to or at trial, including but not limited to the discovery of new evidence, expert discovery, and the testimony

of any witness. At trial, I may use exhibits referenced in this report or graphics illustrating concepts discussed herein.

**The Regulatory Framework of the Practice of Public Accountancy**

Companies whose financial statements are audited are generally referred to as *audit clients*, and the public accounting firms that perform audits are generally referred to as *audit firms, CPA firms, or independent auditors*. The professional practice of auditing financial statements in the United States is regulated and controlled by a mixture of private-sector and public standard setters and governing authorities.

The primary standard setters and governing authorities relevant to my opinions are as follows:

- State laws and regulations on licensure and public accounting practice.
- AICPA standards on auditing and membership rules and requirements.
- PCAOB standards and rules.
- Securities and Exchange Commission (SEC) regulations.

**State Laws and Regulations.** Each individual state government issues CPA licenses for practice in that state and issues regulations that govern the work of accounting professionals within that state. There is a National Association of State Boards of Accountancy (NASBA) that is a voluntary association of state boards of accountancy (the common title of the state agency that regulates the practice of public accountancy in that state). NASBA has issued a Uniform Accountancy Act to be used as a model for accountancy laws in the various individual states.

All states have adopted the AICPA-administered Uniform CPA Exam. Each individual state, however, decides what else is required for an individual to be licensed and to work within

4

its borders. State laws also identify those areas of service that are restricted to licensed individuals. All states restrict the service of auditing financial statements to licensed individuals.

State laws that affect and control CPAs go beyond licensing and include various rules that govern firms and individuals practicing public accountancy including ethics, quality control, and continuing professional education. These additional rules and regulations have a high degree of similarity and are generally patterned after comparable AICPA requirements. For example, ethics requirements generally are adaptations of the AICPA Code of Professional Conduct.

New York State has adopted detailed laws, rules, and regulations that govern the practice of public accountancy. The applicable Education Law is found primarily in Article 149, *Public Accountancy.* Article 149 includes sections that define the profession of public accountancy, restrict the practice of public accountancy and use of the title CPA and similar titles, and establish the requirements for a license as a CPA. The Education Law is administered by the State Education Department (the department), the entity in New York that includes the State Board of Accountancy.

The practice of the profession of public accountancy in New York State according to Article 149 includes *attest services*. Attest services require the independence of the licensee and include "any audit to be performed in accordance with generally accepted auditing standards [GAAS] or other similar standards developed by a federal government agency, commission, or board or a recognized international or national professional accountancy

5

organization that are acceptable to the department in accordance with the Commissioner's regulations." (Section 7401-a)

"Certified public accountant" or "CPA" means "any person who has received a license from the department or any other state as a certified public accountant for the practice of public accountancy." (Section 7401-a)

Only a person licensed or otherwise authorized to practice under Article 149 shall practice public accountancy or use the title CPA or similar title. (Section 7402)

To qualify for a license as a CPA, an applicant shall fulfill a series of requirements including having received a bachelor's or higher degree in a program in accountancy recognized by the Commissioner's regulations, meeting an experience requirement, and passing a satisfactory written examination. (Section 7404)  The written examination used in New York State is the one prepared and administered by the AICPA, i.e., the Uniform CPA Exam.

The Regulations of the Commissioner define the practice of public accountancy by reference to Education Law Section 7401-a and provide further details on educational requirements and licensing examinations. (Sections 70.1, 70.2, 70.3, and 70.4, respectively.)

In summary, only a duly licensed CPA is permitted to perform an audit of financial statements in accordance with professional standards and issue a report on those financial statements.

**AICPA.**  The AICPA is a national, not-for-profit entity that exerts substantial influence on the practice of public accountancy in the United States.  Before the creation of the PCAOB by the Sarbanes Oxley Act in 2002, the SEC had delegated responsibility for setting auditing

standards (or GAAS) to the AICPA. The AICPA still sets standards that govern the audits of the financial statements of nonpublic companies in the United States.

The AICPA prepares and administers the Uniform CPA Exam that states rely on to issue licenses to practice as a CPA and be able to audit financial statements.

The AICPA issues and enforces the Code of Professional Conduct that sets ethical requirements for CPAs and that the states generally use as a point of reference in adopting their ethical requirements.

Thus, the AICPA contributes substantially to the uniformity of auditing practice across the United States by setting auditing standards, preparing and administering the CPA exam, and issuing and enforcing an ethical code.

**PCAOB.** The PCAOB is a not-for-profit entity in charge of standard setting and oversight of both the audits of public companies and the firms that perform those audits. To audit the financial statements of a public company whose securities are traded in the United States, the audit firm must be registered with the PCAOB. The registered firm's audit practice is routinely inspected by PCAOB inspectors to evaluate whether the firm is performing in accordance with professional standards. If the PCAOB becomes aware of departures from professional standards through inspections or other means, the PCAOB can investigate and, if appropriate, discipline the firm and individual auditors.

Under the structure created by SOX, the SEC oversees the professional standards set by the PCAOB. The PCAOB's standards apply to the audits of all public companies whose securities are traded in the United States.

When the PCAOB became operational in April 2003, it adopted the existing auditing standards previously issued by the AICPA.  Although the PCAOB has adopted several standards of its own since then, there is still a substantial uniformity of the standards that govern the audit of financial statements.

Together, the AICPA and PCAOB standards provide fairly specific requirements that apply to the audits of financial statements.  These professional standards govern auditing practice throughout the United States.

**SEC.**  The SEC is a government agency that regulates publicly traded companies and exercises authority over the reports the companies file with it and over the stock exchanges.  As previously explained, the SEC must authorize all PCAOB rules and standards before they become effective.

**Independence.**  The AICPA, PCAOB, and SEC all have rules that require the auditor of financial statements to be *independent* and that spell out in detail actions that impair independence of the audit firm, including prohibited activities by firm personnel.  All the authorities state that performing management functions of a client impairs independence.  Thus, no one working on an audit team, including Staff 1 and 2, can be involved in running the business of audit clients.

**The Nature of the First Two Years of Audit Work
and Its Supervision and Review by E&Y**

The plaintiffs in this case are nonlicensed accountants in the Staff 1 and 2 positions in the audit line of business of E&Y, which would typically be the first and second year of work.  In his deposition in this case on July 14, 2010, Richard S. Greco, the director of total rewards for the Americas for E&Y described several matters relevant to the issues in this case.  (Hereinafter

8

references to his testimony are cited simply as "Greco.") Mr. Greco is responsible for compensation benefits and HR [human resources] policies for E&Y employees below the level of partner, which includes Staff 1 and 2. (Greco, pp. 5-9)

Staff 1 is the entry level for professional accountants and Staff 2 is the level employees obtain typically after one year of practice. Typically an employee is at Staff 2 for one year before being advanced to Senior 1. (Greco, p. 29) In general, the hierarchy of positions at E&Y and other CPA firms in the audit line of business, in descending order of seniority, are as follows:

>   Partner
>   Senior Manager (or Principal)
>   Manager
>   Senior (Levels 1 to 3)
>   Staff (Levels 1 and 2)

At E&Y, the audit line of business is often referred to as Assurance and Advisory Business Services (or the AABS group).

Under the laws and regulations for the practice of public accountancy throughout the United States, including New York State, nonlicensed accountants, such as Staff 1 and 2, are not permitted to audit and express an opinion on financial statements. This prohibition would preclude nonlicensed accountants from making the decisions required to audit and express an opinion on financial statements, such as: whether the scope of audit work performed conformed with professional standards, whether it provided a reasonable basis for expressing an opinion, and whether the financial statements conformed with accounting standards and were free of material misstatement.

9

Partners have ultimate responsibility for the audit at E&Y as well as at virtually all other audit firms. In AICPA and PCAOB auditing standards, the person with this authority is referred to as "the auditor with final responsibility for the audit." (See, e.g., AU 311, *Planning and Supervision*) The first standard of field work of GAAS states, "The auditor must adequately plan the work and must properly supervise assistants." (AU311.01) The other members of the audit team below the auditor with final responsibility, or partner, are referred to in the standards collectively as assistants.

The auditing standards of the PCAOB and the AICPA state as follows with respect to junior assistants, which would include Staff 1 and 2:

> The junior assistant just entering upon an auditing career must obtain his [or her] professional experience with the proper supervision and review of his [or her] work by a more experienced superior. The nature and extent of supervision and review must necessarily reflect wide variances in practice. The auditor charged with final responsibility for the engagement must exercise a seasoned judgment in the varying degrees of his [or her] supervision and review of the work done and judgment exercised by his [or her] subordinates, who in turn must meet the responsibility attaching to the varying gradations and functions of their work. (AU 210.03, *Training and Proficiency of the Independent Auditor*)

The auditing standards note that "Supervision involves directing the efforts of assistants who are involved in accomplishing the objectives of the audit and determining whether those objectives were accomplished." (AU 311.28) These standards also specify the need for review of that work as follows:

> The work performed by each assistant, including the audit documentation, should be reviewed to determine whether it was adequately performed and documented and to evaluate the results, relative to the conclusions to be presented in the auditor's report. The person with final responsibility for the audit may delegate parts of the review responsibility to other assistants, in accordance with the firm's quality control system. (AU 311.31)

E&Y has adopted the *Ernst & Young Global Audit Methodology (EY GAM)* which deals with such matters as the *levels of review responsibility.* The EY GAM's objectives include achieving uniformity across E&Y's practice, e.g., the EY GAM states that it --

> . . . provides a global framework for the application of a consistent thought process to all audits.

and

> . . . to help achieve increased global consistency in the way our audits are planned and executed. (EY 033897)

The EY GAM includes the following description of the overall principles of E&Y review policies:

> Partners, principals, senior managers, and managers participate directly on a timely basis in the performance of certain audit procedures and the supervision of our staff in the audit planning process, tests of controls, substantive audit procedures for certain significant account balances, disclosures, and other sensitive audit areas as appropriate.
>
> ***All of the audit work, including all of the working papers, is reviewed in detail.***
>
> A manager, senior manager, principal or partner performs sufficient review procedures to be satisfied that the detailed review was adequate and that appropriate audit recognition was given to the area and to the important financial amounts and disclosures pertaining to it. (EY 039261; emphasis added.)

The review of the detailed review is referred to on the GAM as the second-level review. The EY GAM makes clear that the detailed reviewer for high-risk and sensitive audit areas should be a manager or senior manager and that the second-level reviewer for such areas should be the partner. For audit areas with less than high-risk, the detailed reviewer can be a senior or manager and the second-level reviewer a manager or senior manager. Staff 1 and 2 are not identified as eligible to do any kind of review in any audit area. (EY 039263)

The EY GAM makes clear that only a partner can make the ultimate critical decisions as follows:

> The partner in charge of the audit also concludes whether, in his opinion, the financial statements are free of material misstatements, have been prepared in conformity with

11

>GAAP (or other basis of accounting where applicable), and whether our report is appropriate. (EY 039261)

Generally Staff 1 and 2 do not perform audit work in sensitive or high risk audit areas, e.g., the EY GAM with respect to testing journal entries and other adjustments states as follows:

>Our procedures for testing journal entries and other adjustments should be performed or closely supervised by at least a senior, or depending on the nature and complexity of the financial statement close process a manager. (EY 041879)

As a general matter, the nature of the audit work that can be performed by Staff 1 and 2 in the first two years of employment at E&Y is governed by auditing standards and E&Y policies that require close supervision and detailed review to achieve the objectives established by professional standards. The E&Y policies apply globally to its entire audit practice.

Mark Borowski, the partner in charge of E&Y's audit practice in the Pacific Northwest, testified in his deposition on July 19, 2010, that a detailed review and a general [second-level] review is required to be performed of every audit workpaper. In the detailed review, the reviewer reaches the reviewer's own judgment as to whether every conclusion that might have a material effect on the financial statements is supported. Then a general [second-level] review of every workpaper has to be performed after the detailed review is complete. If the reviewer is not satisfied with respect to every conclusion reached that could have a material effect on the financial statements, the assistants below the reviewer do whatever is necessary to satisfy the reviewer's questions or concerns. (Mark E. Borowski, Deposition, July 19, 2010, pp. 261-266)

**The Commonality of the "Primary Duty" and Scope of
Discretion and Judgment of Staff 1 and 2 at E&Y**

The commonality of the "primary duty" of Staff 1 and 2 and the extent of their exercise of discretion and independent judgment at E&Y on significant matters are illuminated by testimony of E&Y personnel and declarations of former E&Y Staff 1 and 2 employees.

Mr. Greco testified that the Staff 1 and 2 engaged in E&Y's audit practice would be doing substantially the same activities across the United States. (Greco, pp. 38 and 39) He also testified that he was not aware of evidence that the discretion exercised by Staff 1 and 2 varied from state to state. (Greco, p. 55)

Mr. Greco stated that from a job expectation perspective, the amount of discretion and independent judgment exercised by Staff 1 and 2 was consistent across the United States. (Greco, pp. 56-58)

Mr. Greco also stated that from a job expectation perspective within the audit service line, the primary duties of Staff 1 and 2 are consistent throughout the United States. (Greco, pp. 59-60)

I have also reviewed the declarations of the following individuals, all of whom were formerly employed by E&Y at the Staff 1, or Staff 2, or both positions:

> Sarah Fernandez
> Zahariah Stout
> Stephen Morris
> Peter Rothacker
> Mohamad Alsheleh
> Joe Landon
> Emily Dancer
> Colm Driscoll

All of them exhibited a substantial similarity in their description of the duties they performed as E&Y staff. They indicated that their work did not involve making determinations about the scope of the audit, proper audit sample sizes, determinations about the proper accounting treatment of client financial information, decisions about whether errors in client financial information were material or formulating audit conclusions. Rather, their work involved similar routine tasks such as tying and footing client financial information, gathering client data and inputting it into spreadsheets, and routine supporting tasks such as copying and organizing documents.

Based on the testimony of Mr. Greco, the declarations of former E&Y Staff 1 and 2, my own understanding of the work commonly performed by my former students in the first two years of work, and my own understanding of usual practices in the auditing profession, I believe that there is a significant commonality to the primary duty and scope of discretion and judgment on matters of significance exercised by E&Y Staff 1 and 2.

Further, I believe that the close supervision and the detailed and extensive nature of the review of all work performed by Staff 1 and 2, as discussed in the previous section of this expert report, limits the exercise of discretion and judgment exercised by Staff 1 and 2. It also contributes to the significant commonality of the primary duty and scope of discretion and judgment on matters of significance.

On the issue of whether the primary duty of Staff 1 and 2 involved the exercise of discretion and judgment related to *matters of significance*, I have considered the issue from the perspective of the auditor's judgment about materiality as it relates to audit scope. I believe

this perspective is appropriate because the audit work of Staff 1 and 2 is part of the scope of audit procedures applied by E&Y and, thus, should be viewed within that context.

Materiality or matters of significance in this context are evaluated in relation to the importance of the audit work to the auditor's ability to form an opinion on the financial statements being audited. (See, e.g., AU 508.23, *Reports on Audited Financial Statements*.)

**Conclusion**

The practice of public accountancy in the United States is closely regulated and monitored by standard setters and governing authorities, including state laws and regulations on licensure, the AICPA, the PCAOB, and the SEC. Nonlicensed accountants are prohibited from auditing and expressing opinions on financial statements and can work on audits only under close supervision and review of licensed superiors. All personnel working on an audit of financial statements are precluded by the independence rules of the AICPA, PCAOB, and SEC from being involved in running the business of audit clients. At E&Y, the audit work of Staff 1 and 2 is circumscribed by E&Y international policies and procedures that limit the duties of work performed by Staff 1 and 2 through prescribed levels of review. All work performed by Staff 1 and 2, as documented in the workpapers prepared by them, is subjected to both a detailed review and a general review with respect to all matters that could have a material effect. This work is subject to change as required by the superior performing the review. Thus, there is a clear commonality to the primary duty of Staff 1 and 2 nonlicensed accountants working in the audit line of business at E&Y, as well as to the extent of their exercise of discretion and independent judgment on matters of significance.