# EXHIBIT A

H. TIM HOFFMAN, (State Bar No. 49141)
ARTHUR W. LAZEAR, (State Bar No. 83603)
ROSS L. LIBENSON, (State Bar No. 181912)
HOFFMAN & LAZEAR
180 Grand Avenue, Suite 1550
Oakland, CA  94612
Telephone:  (510) 763-5700
Facsimile:  (510) 835-1311

MARK R. THIERMAN, (State Bar No. 72913)
LEON GREENBERG, (State Bar No. 226253)
THIERMAN LAW FIRM
7287 Lakeside Drive, Suite 101
Reno, NV 89511
Telephone: (775) 284-1500
Facsimile: (775) 703-5027

MAX FOLKENFLIK
FOLKENFLIK & MCGERITY
1500 Broadway, 21St Floor
New York, NY 10036
Telephone:  (212)757-0400
Facsimile:  (212)757-2010

Attorneys for Plaintiffs David Ho,
Sarah Fernandez and Michelle Richards
and Interim Lead Counsel

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA
(San Jose Division)

| | |
|---|---|
| DAVID HO, on behalf of himself and all others similarly situated and on behalf of the general public and DOES #1-20 )<br><br>Plaintiff, )<br><br>v. )<br><br>ERNST & YOUNG, LLP )<br><br>Defendants. ) | Case No. C 05 04867-JF (HRL) (Consolidated for Class Certification Purposes with Case Nos. C-08-4988-JF and C-08-2853-JF)<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23**<br><br>Date: December 17, 2010<br>Time: 9:00 a.m.<br>Dept.: 3<br>Judge: Hon. Jeremy Fogel |

# TABLE OF CONTENTS

**Page(s)**

Table Of Authorities ................................................................................................... iii

Memorandum Of Points and Authorities .................................................................... 1

    I.       Introduction ........................................................................................... 1

    II.      Statement Of The Case ......................................................................... 2

           A.      Procedural Background .................................................................. 2

           B.      The Five Job Categories For Which Certificate is Sought ........... 3

           C.      The Legal and Professional Framework ....................................... 4

                 1.      Statutory, Regulatory and Professional Requirements ....... 4

           D.      EY's Internal Policies and Practices ............................................. 6

                 1.      Additional Restrictions Imposed on Staff and Seniors in Audit ............................................................... 6

                 2.      Restriction Imposed on Tax Staff and Seniors ................... 8

           E.      Tasks and Responsibilities of Staff and Seniors .......................... 8

                 1.      Staff and Seniors in Audit .................................................. 9

                 2.      Staff and Seniors in Tax ...................................................... 11

                 3.      FMAs .................................................................................. 13

    III.     Legal Argument - The Requirements Of Rule 23 Are Satisfied Here ................................................................................... 14

           A.      Satisfaction Of Rule 23(a) ........................................................... 14

           B.      This Matter Satisfies The Certification Requirements of Rule 23(b)(3) ................................................... 17

                 1.      Common Proof Establishes EY Uniformily Classifies Staff and Senior As Exempt ........................... 18

                 2.      Common Proof Demonstrates Employer Expectations ....... 19

                 3.      Common Proof Demonstrates that None of the Statutory Exemptions Apply ...................................... 19

                      (a)    None of the Class Members Customarily and Regularly Exercise Discretion and Independent Judgment ................................................. 19

i

        (b)    Common Proof Demonstrates The Other
Requirements of Professional Exemption
Cannot Be Satisfied.....................................................................21

        (c)    Common Proof  Establishes The Other
Requirements of Administrative Exemption
Cannot Be Satisfied.....................................................................22

        4.    Common Proof Establishes The Other
Requirements of the Executive Exemption
Cannot be Satisfied .....................................................................25

        5.    Other Common Issues Predominate...............................................26

    C.    Class Resolution Is Superior ....................................................................26

IV.    Conclusion ...........................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Abron v. Black & Decker (U.S.), Inc.,*
654 F.2d 951 (4th Cir.1981) ...........................................................................................27

*Alba v. Papa John*
2007 U.S. Dist. Lexis 28079 at *38-39 ...........................................................................18

*Amchem Products, Inc., v Windsor,*
521 U.S. 591 (1997)........................................................................................................18

*Armstrong v. Davis,*
275 F.3d 849 (9th Cir. 2001) ....................................................................................15, 16

*Bates v. United Parcel Service of America, Inc.,*
204 F.R.D. 440 (N.D. Cal. 2001) ...................................................................................14

*Blackie v. Barrack,*
524 F.2d 891 (9th Cir. 1975) ..........................................................................................26

*Brady v. Deloitte & Touche LLP,*
Case No. C 08-00177 SI, 2010 U.S. Dist. Lexis 37820 (N.D. Cal. 2010) (March 23,
2010) ....................................................................................................................... *passim*

*Bratt v. City of Los Angeles,*
912 F. 2d 1066 (9th Cir. 1990) .......................................................................................23

*Brock v. On-Shore Quality Control Specialists, Inc.,*
107 Lab. Cas. ¶34, 1987 WL 31308 (W.D. Tex. 1987) ..................................................20

*Campbell v. PricewaterhouseCoopers, LLP,*
253 F.R.D. 586 (E.D. Cal. 2008) ...........................................................................1, 18, 22

*Dalheim v. KDFW -TV,*
918 F. 2d 1220 (5th Cir. 1990) .......................................................................................25

*Damassia v. Duane Reade, Inc.,*
250 F.R.D. 152 (S.D.N.Y. 2008) ....................................................................................21

*Dukes v. Wal-Mart Stores, Inc.,*
603 F.3d 571 (9th Cir. 2010) ..............................................................................14, 17, 18

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1978).........................................................................................................17

*Gen. Tel. Co. of Sw. v. Falcon,*
457 U.S.147 (1982)..........................................................................................................18

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1988) ...................................................................14, 17, 21

*Hashop v. Rockwell Space Operations Co.*,
   867 F. Supp. 1287 (SD Tex. 1994.) ...................................................................25

*Hodgson v. Penn Packaging Co.*,
   335 F.Supp. 1015 (E. D. Penn. 1971) ...................................................................23, 25

*In re Seagate Technologies II Securities Litigation*,
   843 F.Supp. 1341 (N.D. Cal. 1994) ...................................................................28

*In re Sugar Industry Antitrust Litigation*,
   73 F.R.D. 322 (E.D.Pa.1976) ...................................................................28

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir.2004) ...................................................................28

*Romero v. Producers Dairy Foods, Inc.*,
   235 F.R.D. 474 (E.D.Cal.2006) ...................................................................18

*Rothman v. Publicker Industries, Inc.*,
   201 F.2d 618 (3d Cir. 1953) ...................................................................23

*Scott v. Aetna Services, Inc.*
   210 F.R.D. 261 (D. Conn. 2002) ...................................................................27

*Shaw v. Prentice Hall*,
   977 F.Supp. 909 (S. D. Ind. 1997) ...................................................................21

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ...................................................................16

*Tierno v. Rite Aid Corp.*,
   2006 U.S. Dist. Lexis 71794 ...................................................................18

*United Steel Workers v. ConocoPhilips Co.*,
   593 F.3d 802 (9th Cir. 2010) ...................................................................17, 18

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ...................................................................27, 28

*Wamboldt v. Safety-Kleen Systems, Inc.*,
   2007 U.S. Dist. Lexis 65683 (N.D.Cal.2007) ...................................................................21

*Wang v. Chinese Daily News, Inc.*,
   231 F.R.D. 602 (C.D. Cal. 2005) ...................................................................17

*Westways World Travel, Inc. v AMR Corp.*,
   218 F.R.D. 223 (C.D. Cal. 2003) ...................................................................18

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23
Case No. C 05 04867-JF (HRL)(Consolidated with Case Nos. C-08-4988-JF and C-08-2853-JF)

*Whiteway v. Fedex Kinko,*
  2006 U.S. Dist. Lexis 69193 at *19-20........................................................................21

*Zinser v. Acccufix Research Inst., Inc.,*
  253 F.3d 1180 (9th Cir. 2001) ........................................................................14, 28

**STATE CASES**

*Bell v. Farmers Insurance Exchange,*
  115 Cal. App. 4th 715 (2004) ........................................................................23, 24

*Cicairos v. Summit Logistics, Inc.,*
  133 Cal.App.4th 949,954-955 (2005) ..........................................................................26

*Cortez v. Purolator Air Filtration Products Co.,*
  23 Cal.4th 163 (2000) ..........................................................................26

*Gentry v. Superior Court,*
  42 Cal.4th 443 (2007) ..........................................................................27

*Ghoury v. Al-Lahham,*
  209 Cal.App.3d 1487 (1989) ..........................................................................26

*Nordquist v. McGraw-Hill Broadcasting Company, Inc.,*
  32 Cal. App. 4th 555 (1995) ........................................................................20, 21, 23

*Sav-On Drug Stores, Inc., v. Sup. Ct.,*
  34 Cal.4th 319 (2004) ..........................................................................18

**STATUTES**

Fed. Rule Civ. Proc. 23 ........................................................................ *passim*

29 C.F.R. § 541.207 ..........................................................................25

Cal. Bus. & Prof. Code § 5053 ..........................................................................5

Cal. Business & Professions Code § 17200 ..........................................................................26

Cal. Business and Professions Code Section 5051 ..........................................................................4

Cal. Labor Code § 203 ........................................................................15, 26

Cal. Labor Code § 218.6 ........................................................................15, 26

Cal. Labor Code § 226 ........................................................................15, 26

Cal. Labor Code § 515 ........................................................................19, 21, 22

Cal. Code Regs., Tit. 8, § 11040(1)(A)(1)(d) ..........................................................................19

v

Cal. Code Regs., Tit. 8 § 11040 ............................................................22, 23

Cal. Code Regs., Tit. 8, § 11040(1)(A)(2)(b) .................................................19

Cal. Code Regs., Tit. 8, § 11040(1)(A)(3) ......................................................21

Cal. Code Regs., Tit. 8, § 11040(1)(A)(3)(c)..................................................19

Cal. Dept. of Labor Standards Enforcement Manual (2002 update)  §52.3.12 .....................20

**OTHER AUTHORITIES**

8 Alba Conte & Herbert B. Newberg, *Newberg on
Class Actions* at 24-149 (4th ed. 2002)...............................................16

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23
Case No. C 05 04867-JF (HRL)(Consolidated with Case Nos. C-08-4988-JF and C-08-2853-JF)

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on **December 17, 2010 at 9:00 a.m.**, in the courtroom of the Honorable Jeremy Fogel, 280 S. First Street, San Jose, CA 95113, of the above-mentioned Court, Plaintiffs Sarah Fernandez and Michelle Richards pursuant to Rule 23 of the Federal Rules of Civil Procedure will and hereby do move for an Order, as follows:

1.   Certifying a class of all persons employed by Defendant Ernst & Young, LLP in the State of California at any time from September 15, 2001 until the time when class notice may be given (the "Class Period) who:

(1)   assisted certified public accountants in the practice of accountancy, as provided for in California Business and Profession Code §§ 5051 and 5053, and (2) were not licensed by the State of California as certified public accountants or attorneys during some or all of this time period and classified as exempt from California Labor Laws, and additionally,

(2)   were employed at any time during the Class period in one or more of the  following five capacities:

(A) Staff I and  II employees in the "assurance" service line of Defendant's business;

(B)  Senior I and II employees in the "assurance" service line of Defendant's business;

(C)  Staff I and II employees in the "tax" service line of Defendant's business, but excluding persons who were licensed by any state in the United States as attorneys during all of their period of employment in this capacity during the Class Period;

(D) Senior I and II employees in the  "tax" service line of Defendant's business, but excluding persons who were licensed by any state in the United States as attorneys during all of their period of employment in this capacity during the Class Period; and

(E)  all persons employed by Defendant Ernst & Young, LLP in California from June 19, 2004 until the time when class notice may be given who worked as Finance Management Associates ("FMAs").

2.   Appointing  Hoffman & Lazear, Theirman Law Firm and Folkenflik & McGerity as class counsel; and

3.   Approving the designation of Sarah Fernandez and Michelle Richards as class representatives.  This Rule 23 motion is based upon: this Notice of Motion and Motion; the Memorandum of Points and Authorities, and accompanying declarations and exhibits; Request For Judicial Notice; all pleadings and files in the record herein; and all matters presented to the Court at hearing.

Dated: August 20, 2010                      HOFFMAN & LAZEAR

By: _____
                                                           Ross L. Libenson

Attorneys for Plaintiffs
Sarah Fernandez and Michelle Richards

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23
Case No. C 05 04867-JF (HRL)(Consolidated with Case Nos. C-08-4988-JF and C-08-2853-JF)

### Memorandum Of Points and Authorities

I. Introduction.

Defendant Ernst & Young ("EY") is one of the largest professional service firms in the world and one of the "Big Four" accounting firms in the United States[1]. In California, EY currently maintains nine offices employing hundreds in producing the services it offers its clients, including issuing opinions on financial statements and clients' internal accounting controls ("audit"), and providing advice with respect to International, Federal and Local taxation ("tax"). Significantly, and dispositively for the claims asserted here, the provisions of these audit and tax services are highly regulated by (1) federal and state law, (2) binding professional requirements and (3) EY's internal policies and practices which incorporate and expand upon those laws and regulations. The statutory, professional and EY requirements control and also limit the activities and use of discretion and independent judgment by EY employees in general, and members of the putative class in particular, who by definition are not licensed Certified public Accountants ("CPAs").

All class members are required to work substantial overtime hours each year. EY now uniformly classifies them as exempt executives, professionals and/or exempt administrators. Notably, until the mid-1990's all of these groups were classified uniformly as non-exempt. The change to exempt status was made to allow EY to offer a higher base salary (incorporating some payment for overtime) so as to meet the competition for recruiting young employees. EY supposedly justified the change based on some sort of "survey" of the various tasks performed

---

[1] The other Big Four accounting firms are Pricewaterhouse Cooper (PwC), Deloitte & Touche LLP and KPMG. On March 25, 2008, in a similar motion for class certification, the Honorable Larry Karlton of the Eastern District of California certified a class of "Attest Associates," which are comparable to the Staff in Audit service line seeking class certification herein. *Campbell v. PricewaterhouseCoopers, LLP,* 253 F.R.D. 586 (E.D. Cal. 2008). Likewise, on March 23, 2010, the Honorable Susan Illston of the Northern District of California certified a class of Deloitte's employees in the audit line of service who were not licensed accountants, or similar to those in the Staff and Senior audit line seeking class certification herein. *Brady v. Deloitte & Touche LLP,* Case No. C 08-00177 SI, 2010 U.S. Dist. Lexis 37820 (N.D. Cal. 2010) (March 23, 2010).

by these employees, a "survey" which EY now asserts it is unable to locate.  EY claims that some (but not all) of the tasks performed by class members required "judgment."  EY keeps executive records on nearly every aspect of the work performed by class members, but has no records, analysis or studies that support its claims of exemption.

Plaintiff's position is a simple one:  the unlicensed Staff and Senior titled employees who assist CPA's, are, under legal, professional and EY internal requirements, subject to multiple layers of detailed supervision.  A central issue to be resolved on a class-wide basis is whether this pervasive, invasive and detailed supervision demonstrates the absence of any "discretion or independent judgment," which Defendant must show in order to meet its burden of proving any exemption.

II.  Statement Of The Case.

A.  Procedural Background.

On September 27, 2005, Plaintiff Ho filed his complaint seeking unpaid overtime compensation in this matter on behalf of himself and other "similarly titled personnel who performed the same function..." in California. RJN, ¶ 1, Ex. A, Complaint.  On August 17, 2007, Plaintiff Fernandez, among others[1], filed the First Amended Complaint ("FAC"), seeking, *inter alia*, unpaid overtime compensation as a result of being improperly classified as exempt on behalf of herself and others in the job position of Staff and Senior in California. RJN,  ¶ 2, Ex. B, FAC, ¶ 9.  Fernandez worked in EY's audit function in the Intern, Staff 1 and 2 positions in its Irvine, California office. Fernandez Decl., ¶2.

On February 21, 2008, Plaintiff Landon filed his complaint in the Placer County Superior Court, which was removed and transferred to this Court on June 13, 2008.  Landon sought to represent a class of unlicensed "salaried exempt employees doing accounting work" in

---

[1]On March 4, 2008, the Court granted summary judgment as to the claims of David Ho, a licensed attorney. On January 15, 2009, the Court denied summary judgment as to the claims of Sarah Fernandez.  Plaintiffs Maxton and Lay were subsequently dismissed January 28, 2008 and March 4, 2008.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23
Case No. C 05 04867-JF (HRL)(Consolidated with Case Nos. C-08-4988-JF and C-08-2853-JF)

California. RJN, ¶ 3, Ex. C, Landon Complaint ¶ 20. Landon worked in EY's audit function in the Staff 1 position in its Roseville, California office. Landon Decl., ¶ 2.

On or about June 19, 2008, Plaintiff Richards filed her complaint in the Sacramento County Superior Court, which was removed and transferred to this Court on November 4, 2008. Richards' complaint sought to represent Staff 1 through Senior 2 and FMA's in California who were improperly classified as exempt from overtime[2]. RJN, ¶ 4, Ex. D Richards' Complaint, ¶ 7. Richards worked in EY's Roseville office as an FMA, a Staff 1, a Staff 2 and a Senior 1 in tax functions and worked in audit functions as a Staff 1 and Senior 1. Richards Decl., ¶¶ 2 and 8; Declaration of Ross Libenson In Support of Plaintiff's Motion For Class Certification. ("LD"), ¶ 3, Ex. A, Richards Tr. Ex. 10, EY _Richards00019 - 00020.

On April 20, 2009, the Court consolidated these three actions for class certification purposes. Dkt. No. 181. On May 7, 2010, the Court approved a stipulation assigning Hoffman & Lazear as interim lead counsel. Dkt. No. 193.

B. The Five Job Categories For Which Certification is Sought.

In California, EY's operations are organized in three practice groups: Tax[3]; Assurance and Advisory Business Services ("AABS" which is also referred to as "Audit"); and Transaction Advisory Services ("TAS"). RJN,¶5,Ex. E., Hodapp Decl.,¶ 2.

Within the practice groups, the exempt employees are organized in ascending order as follows: Staff 1, Staff 2, Senior 1, Senior 2, Senior Manager and Partners. RJN, ¶ 5, Ex. E.,

---

[2]On February 24, 2010, this Court in *Richards* denied in part Defendant's Motion For Summary Judgment as to Ms. Richards' claims regarding overtime compensation, but granted the motion as to a claim for injunctive relief, and dismissed without prejudice the claims for rest and meal break violations while the standard is addressed by the California Supreme Court. Dkt. No. 52. Subsequently, the Court, upon Defendant's administrative motions in the consolidated actions, similarly dismissed without prejudice the rest and meal break claims in*Fernandez* (Dkt. #230) and *Landon.* (This was entered as Dkt. #54 in *Richards* but not *Landon*).

Accordingly, the rest and meal break claims are not addressed in this motion, other than to note that it is illuminating that the Defendant treats the individual Plaintiffs similarly with respect to application of the law in a "one size fits all fashion" without any individualized inquiry when it suits their objectives.

[3]The Tax practice is further divided between Tax Minimization and Tax Operations. Tax Minimization contains three sub-groups: International Tax; Federal Tax; and State and Local Tax, each of which advises clients in understanding and minimizing tax exposures related to business activities outside of the United States, by the Federal government and the state and local entities respectively. Tax Operations is focused on reporting and preparing tax returns. RJN, ¶ 5, Ex. E, Hodapp Decl., ¶ 3.

Hodapp Decl., ¶4; Pham Suppl. Decl. ¶14.  Promotion from one level to the next is made annually. LD, ¶4, Ex. B, Altobello[4]Tr., 114:20-23.  The lockstep promotions are made after the Staff or Senior employee completes a "busy season."  Pham Supp. Decl., ¶¶ 16 -17; Richards' Supp. Decl.,¶¶ 22-24, 32-34.  EY's "busy season" is traditionally mid-January through April 15, annually, where it is expected the staff and seniors in both tax and audit will work a mandatory fifty-five (55) hour workweek, or eleven (11) hours a day, and they are strongly encouraged to work additional hours in the office on Saturdays. LD,¶¶5 and 6, Ex. C and D, 2006 and 2007 Busy Season Expectations, EY011473 - EY011480.  EY also recognizes that many of the Staff and Seniors were working in excess of "fifty +" (50 plus) hours or 55 hours a week both before and after the traditional "busy season."  *Id.*, at EY 011474 and EY011478.

To be promoted to manager in the audit and tax service line, EY requires the employee to be a CPA or a licensed attorney.  LD, ¶7, Ex. E, EY Policy & Practice Statement ("PPS"), Professional Certifications, EY 050968, and ¶4, Ex. B, Altobello Dep. 115:13 -23; Pham Supp. Decl. ¶¶ 18-19; Richards Supp. Decl., ¶35.

C.  The Legal and Professional Framework.

1.  Statutory, Regulatory and Professional Requirements.

An unlicensed Staff or Senior is restricted in what he or she may do in "assisting" EY's CPA's in providing public accountancy under California laws and professional rules and regulations promulgated by the American Institute of Certified Public Accountants ("AICPA"), California State Board of Accountancy, the Security and Exchange Commission ("SEC"), the PCAOB and the Internal Revenue Service ("IRS").  RJN, ¶6, Ex F, Shlonsky Decl., ¶¶ 4 -7.

California Business and Professions Code Section 5051 provides that no person shall engage in the practice of public accountancy (defined broadly and covering all the work of class members) without first obtaining a license from the state of California.  Under Section 5053 an

---

[4]Ms. Altobello is EY's former Managing Partner for the North America Audit practice and currently Audit's managing partner of the northeast Audit practice, and EY's 30(b)(6) witness on the reason that the Staff and Seniors are classified as exempt.

1    unlicensed individual may "assist" a licensed accountant, but that individual must, "work under

2    the control and supervision of a certified public accountant,...," Cal. Bus. & Prof. Code § 5053.

3        The rules and regulations of the American Institute of Certified Public Accountants

4    ("AICPA"), which are known as the Code of Professional Conduct, set minimum standards that

5    all public accounting firms must meet. RJN, ¶6, Ex. F, Shlonsky Decl., ¶¶ 8-10. Under the

6    Code, virtually any matter of significance in connection with providing audit related accountancy

7    service must be reviewed and approved by the CPA in charge of the engagement, who must *at*

8    *all times* supervise the unlicensed associates who work on the engagement. *Id.*, ¶¶ 11-15, 29

9    and 30.

10        The California State Board of Accountancy has adopted not only the AICPA Code of

11    Professional Conduct, but also requires adherence to Generally Accepted Auditing Standards

12    ("GAAS"). *Id.*, ¶16. Under GAAS unlicensed individuals may *not*, as a matter of law, plan or

13    direct any audit. *Id.*, ¶ 17. Any work performed by an unlicensed employee must be supervised,

14    which includes being instructed to follow specific audit steps and then having the work

15    reviewed. *Id.*, ¶ 18. If a problem of any significance is encountered, the unlicensed employee

16    may not resolve it. *Id.*, ¶ 19.

17        For public companies, which includes many EY clients, additional rules apply. The SEC

18    refuses to accept a "certification" from an unlicensed accountant, and requires any accountancy

19    partnership to adhere to the AICPA's Code of Professional Conduct and GAAS. *Id.*, ¶ 20 and

20    21.

21        Under the Sarbanes-Oxley Act of 2002, the regulatory body established for oversight of

22    accounting for public companies, the Public Company Accounting Oversight Board or

23    "PCAOB"), has passed rules which require any unlicensed assistant to follow audit plans, and

24    imposes a "concurring partner" level of review. In addition to review by the Partner in Charge of

25    the audit, *Id.*, ¶¶ 23 -26, IRS rules prohibit a non-licensed individual from practicing before it -

26    and requires adherence to the AICPA's Code of Professional Conduct and GAAS. *Id.*, ¶¶ 27

27    and 28.

28

D. EY's Internal Policies and Practices.

Under EY internal standards (which incorporate and expand upon the legal and professional standards), an unlicensed EY employee *cannot*:

- commit EY to an audit engagement, (LD,¶10, Ex. H, Borowski Tr. 29:4 - 13, 31:5 - 10), or a tax engagement *Id.*,¶16, Ex. N, DiNicola Tr.: 36:13-23;

- approve preliminary engagement activities, including the exercise of judgment to assess the potential risk of a potential audit engagement, (*Id.*,¶10, Ex. H, Borowoski Tr., 32:22 - 33:21);

- approve and sign engagement letters, (*Id.*, 18:25 - 19:9);

- work without control and supervision of the licensed CPA, (*Id.*, 20:10 - 14);

- approve or depart from the audit plan/program, (*Id.*, 43:18 - 22, 44:22 - 24, 46:15 - 47:24);

- approve and sign any document containing a substantive opinion, conclusion or determination, including audit opinions, audit reports, internal control opinions on public companies (SOX 404 reviews), or certify financial statements, (*Id.*, 18:15 - 24, 20:24 - 21:2, 21:17 - 25, 23:19 - 24:19, 25:12 - 19); or

- advise client management on matters of significance (*Id.*, 24:22 - 25:11, 26:11 - 14).

Likewise, it is EY's policy that neither a staff nor a senior titled employee is permitted to deviate from firm policies and procedures. *Id.*, ¶16, Ex. N, DiNicola Tr., 30:15 - 31:6, 94:21 - 95:9); ¶21, Ex. S, Garcia Tr., 94:1-9.

EY is unable to identify any particular work of the Staff or Senior that reflects authority to make independent choices free from immediate supervision. *Id.*, ¶12, Ex. J, Bryant Tr. 134:8-13; ¶21, Ex. S, Garcia Tr., 96:10 - 97:10.

1. Additional Restrictions Imposed on Staff and Seniors in Audit

EY utilizes a Global Audit Methodology ("GAM") which establishes guidelines and procedures applied consistently on each audit. LD, ¶10, Ex. H, Borowski[5] Tr., Vol. I, 27:3 - 13. The GAM requires that:

"All of the audit work, including all of the work papers, is reviewed in detail and a manager, senior manager, principal, or partner performs *sufficient review*

---

[5]EY's Partner in charge of the Audit practice in the Pacific Southwest region, and Rule 30(b)(6) witness on the duties and tasks of Staff and Seniors in Audit.

*procedures* to be satisfied that the detailed review was adequate and that appropriate audit recognition was given to the area and to the important financial statement amounts and disclosures pertaining to it."

*Id.*, ¶11, Ex. I, GAM Supp. Guidance, §1.2.4, at EY 039261 -EY039262.

The second level review is, in fact a "detailed review" as to all matters determined to be "material" or "significant." *Id.*, ¶10, Ex. H, Borowski Tr., Vol. II, 262:16 - 264:1. Further, both levels of review effectively are not merely "reviews," but instead result in the substitution of the "reviewer's" judgment for that of the staff or senior who performed and documented his work. *Id.*, 264:2 - 266:22.

Significantly, the EY second level review referred to in the GAM can only be performed by licensed CPAs, manager level and higher. That means that the work of class members on matters which are material is all done under "detailed" supervision.

On "accounts," (elements in the client financial statements or records such as accounts payable or accounts receivable or cash), which are deemed significant, or matters deemed sensitive or clients presenting high risk, the audit work cannot be performed by Staff and must be performed initially by a Senior level employee and subject to close supervision. "Direct participation means involvement in the actual performance of the work, which may range from *effective direction and supervision*, usually on-site, of team members performing audit procedures to actual performance of some or all procedures. That work, by Seniors is also, subject to a "detailed review" by a CPA, and a second level review, also by a CPA. *Id.*, ¶11, Ex. I, *GAM* at EY039263-64 and *GAM*, "Exhibit 1 - Summary of Timely, Direct Executive Participation By Accounting and Auditing Specialist in the Audit", §1.2.9 at EY039283.

The detailed review and second level review are not the only levels of review. On each engagement, the Partner in charge of the engagement must review every material or significant decision, and his decision on such matters substitutes for the judgments of any lower employee who did or reviewed the work. The Partner's decision is subject to a Second Partner review and often a tax partner review, which are more like actual reviews, where differences of opinion are discussed and resolved. *Id.*, ¶10, Ex. H, Borowski Tr., Vol. II, 256:17 - 260:20.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23
Case No. C 05 04867-JF (HRL)(Consolidated with Case Nos. C-08-4988-JF and C-08-2853-JF)

2. <u>Restriction Imposed on Tax Staff and Seniors</u>.

In the Tax service line, EY is "essentially" in the business of giving tax advice and serving their clients' tax advice needs. *Id.*, ¶12, Ex. J, Bryant[6] Tr. 21:25 - 22:4. With respect to providing advice, the policies are determined at the national level, incorporating the professional and other standards, including the IRS's Circular 230. *Id.*, 25:1-6, 27:6 – 12; see also, IRS Circular 230.

EY's national policy requires all tax advice to be reviewed. LD, ¶¶13 and 14, Exs, K, EY's PPS "Reviews Of Tax Advice" and appendices A and B (policy for engagements prior to December 31, 2004) and Ex. L, EY's PPS Reviews of Tax Advice (for engagements after January 1, 2005) at EY51033-EY51036 and EY052097-EY052099 and EY051037 - EY051046[7]. Any "significant" advice can only be provided with review by at least a Senior Manager (a licensed CPA). *Id.*, at EY052099, EY051039 and EY051043-EY051044.

In rare instances a Staff or Senior may provide "not significant" advice. "Not Significant" advice "...is reserved for the most basic and routine type of advice the firm provides." *Id.*, at EY051041-42. It is the type of advice that does *not* require, "subject matter professional or industry professional involvement...." *Id.* Even not significant advice must be documented and reviewed by a CPA. *Id.,* at EY052099, EY051039 and EY051042-44.

E. <u>Tasks and Responsibilities of Staff and Seniors</u>.

It is Plaintiff's position that the pervasive and comprehensive supervision and review required by the law, professional standards and EY internal policies, preclude a finding that any of the Staff or Seniors exercised discretion or independent judgment required for an exemption to apply. Certification of a class in this case does not require the Court to make findings about the specific tasks engaged in by Staff and Seniors. It is, nonetheless, quite clear that the great majority of Staff and Seniors in the tax and audit areas have been performing clerical tasks,

---

[6]Mr. Bryant is EY's Federal Tax leader in EY's Pacific Southwest and F.R.C.P. 30(b)(6) witness on duties and tasks performed by the Staff and Senior in Federal Tax.

[7]While the policy and practice statement was updated for engagements commenced after January 1, 2005, those modification only "enhanced existing policies." *Id.*, at EY051037.

ministerial activities, and simple activities such as comparing two numbers (e.g., one number on an invoice and another number on the client's records) to make sure they are the same, adding up columns of figures, and other activities which, standing alone (even without supervision and review) would not qualify for exemption.[8]

1. Staff and Seniors in Audit.

At EY the Staff and Senior employees' primary responsibility is to assist CPA's in the performance of audits. Morris Decl. ¶ 5; Pham Supp. Decl., ¶ 20. Each audit is engaged in a similar fashion, consistent with the GAM, where the Staff are told which accounts to audit and which steps to take to do so. Pham Supp. Decl., ¶¶ 23- 24. The Staff are primarily involved in performing the audit by "testing," either the internal controls or substantive testing. *Id.*, ¶¶ 25 - 27.

The tasks involved in "testing" include looking at underlying financial documents, such as invoices, comparing the numbers on the documents to be sure they match the numbers on the company's financial records, and adding up the numbers to be sure that the "totals" on the company's books have been accurately added up. Each of these types of testing is simplistic and predictable with no discretion in matters of significance. Indeed many of these are basically comparing of numbers and simple mathematical operations requiring no special or advanced training.[9]

Training for this work is focused on the methods and procedures used for an audit, which is primarily EY's computer-based audit program called AWS. Pham Supp. Decl. ¶ 11, Fernandez Decl. ¶7. AWS provides the staff and seniors step-by-step instructions on how to audit particular accounts and a checklist of everything that needs to be done to complete an audit. Pham Supp. Decl.., ¶12. The audit plan generates AWS worksheets and directives to be

---

[8]   Indeed, Plaintiff believes that Defendant does not have records that would allow it to prove its case that any exemption applied, and to the extent that it had previously conducted a survey on that issue, the "survey" has been lost, raising the possibility of an adverse evidentiary presumption.

[9]   See Altobello, Tr. 60: 23 to 61:21, 62:7-19; 63:2 to 64:10; 64:21 to 65:19, 66:2-25, 91:4 to 93:5. Greco Tr. 89:10 to 91:18 (witness admits his children could add a column of numbers at age 12)Tr. 92:21 to 93:14 (comparing two numbers does not require accounting training).

completed by each of the Staff and Seniors, often in checklist format, with detailed instructions on how each portion of the audit is to be completed, sometimes referred to as "work papers." *Id.*, ¶¶ 28 - 31. Often this simply requires reviewing the prior year's' work papers. *Id.*

Interns, who are college students who have not completed their studies, are given this training over a short period and do the same type of work Staff do. Interestingly, EY treats the Interns as not exempt from overtime laws and pays them for overtime. Pham Supp. Decl.., ¶¶ 3-9; Richards Supp. Decl. ¶¶ 26-28; Buckingham Decl., ¶ 3, Estrada Decl. ¶ 3; Fernandez Decl. ¶ 2; LD ¶17, Ex. O, Fernandez Tr. 25:5-13; 243:21-244:13, and Dep. Ex. A. Offer Letter at EY031155.

Staff and Seniors are never permitted to vary the steps dictated to be performed by AWS. Nor do they have discretion to refuse to follow the audit plan or AWS work paper. Pham Sup. Decl. ¶ 32. Staff and Seniors do not have discretion to decide which audit tests to perform, which accounts to examine, or how many balances or entries to sample as part of the audit. *Id.* Rather, the daily activities of the Staff and Seniors is prescribed by the AWS work paper assigned by a superior. *Id.*

The Staff and Senior are *not permitted* to communicate with the engagement client on matters of significance, including the appropriateness of their management policies or general business operations. To ask a question beyond seeking documents or information previously authorized and instructed to obtain, the Staff and Seniors are required to inform the superior of what they want, and the superior then tells them what to ask. *Id.*, ¶ 34.

The Staff "rolls" on and off of audit engagements. In doing so, EY treats the staff as fungible production line workers. *Id.*, ¶ 21. The Staff provides no input in planning an audit or which accounts will be audited, and make no decisions regarding the conduct of the audit. *Id.*, ¶ 22; Fernandez Decl., ¶¶ 2, 6; Dancer Decl., ¶ 5; Driscoll Decl. ¶ 5; Stout Decl. ¶ 5; LD, ¶19, Ex. Q, Landon Tr. 127:10 -25; 175:12-17.

1    Seniors are also effectively fungible production line workers who are told where to go,

2    when to go, what to do and how to do it. Pham Supp. Decl.. ¶35. Senior 1 employees may

3    perform the same tasks as Staff 1. Richards Supp. Decl. ¶¶ 29-51.

4        To a small extent the Seniors may be involved in "planning" an audit but that

5    involvement does not involve any discretion or independent judgment. That task, unless

6    performed by Seniors is either merely copying the plan from the prior year or generating a plan

7    by entering data into a computer program that generates the plan. The plan always is subject to

8    review by a CPA. Rothacker Decl., ¶ 5 at p. 6-7; Morris Decl. ¶5; and Alsehleh Decl., ¶ 5.

9        GAM's *Supplemental Guidance* expressly sets forth the roles and responsibilities of the

10   personnel in an audit. Staff titled employees *are not even provided formal roles or*

11   *responsibilities in the GAM.* LD, ¶11, Ex. I, GAM Supp. Guidance, § 1.2.6, at EY039268 -

12   EY039279.

13       The GAM makes only limited references to the roles and responsibilities of Seniors. *Id.*,

14   at EY039268. All of the duties performed by a Senior are subject to *effective detailed direction*

15   *and supervision* by a CPA on any matter of significance. *Id.*, GAM Supp. 1.2.9 Exhibit 1,

16   Summary of Timely, Direct Executive Participation by Accounting and Auditing Specialist in

17   the Audit, at EY039283. EY's GAM treats Staff and Seniors uniformly within each category

18   negating any need for individualized inquiry.

19                    2. Staff and Seniors in Tax.

20       Like audit, the role of the Staff and Seniors in the tax service line is that of a fungible

21   production worker. Prior to 2007 or 2006 the Staff and Seniors were only "labeled" in a

22   particular sub-service line for categorization purposes. In reality, before being promoted to

23   manager, the Staff and Seniors were in a pool of other primarily unlicensed Staff and Seniors

24   where they were pulled on or off of engagements to gain a "diversified" experience in tax and

25   audit. LD, ¶16, Ex. N, DiNicola Tr. 143:14-144:21. Since that time, rather than categorizing

26   the Staff and Seniors as being in a particular sub-service line, EY more accurately categorizes the

27   Staff and Seniors as being in its Diversified Staff Group. *Id.*

28

1    From this pool of Staff and Seniors, EY uses the Staff and Seniors as inter-changeable

2    production line workers.  When not assigned to a particular engagement, the Staff and Seniors in

3    the pool put their names on an "unassigned availability list" from which they would be called for

4    their next assignment.  *Id.*,¶18, Ex. P, Matoza Tr. 89:3-10.  As current Senior 2 EY employee

5    Jacqueline Matoza explained:

6        Staff are plug and play, and anyone tells you otherwise, they're lying to you.  I have been
         told numerous times, grab any staff.
7        It doesn't matter.  We don't care. Staff do very basic tasks they are told
         to do.  Seniors simply relay the task from the manager, senior manager,
8        or partner to a staff.  Very often seniors are doing very similar tasks to a staff…
9        Every staff does the same thing, similarly.

10   *Id.*, at 236:19 - 237:14, referencing Depos. Ex. 5, Matoza Decl. Much of the work is clerical

11   work, both for staff and seniors.  Matoza Decl., ¶5; LD, ¶18, Ex. P, Matoza Tr. at 231:9 -

12   233:15.

13       In tax, the training focused on EY's computerized tax preparation software, GoSystem,

14   and the program for importing data from its electronic work papers, Analyze Workbook ("AW"),

15   into the GoSystem. ( *Id.*, ¶18, Ex.P, Matoza Tr., 32:6 - 32:24).

16       Because of the standardized clerical manner in which they perform, Staff and Senior

17   employees in tax describe their roles as consisting almost entirely of providing support, clerical

18   and data entry tasks that require neither the exercise of independent judgment, discretion,

19   analysis or intellectual exertion. Taylor Decl., ¶5; DeMille Decl., ¶ 5; Richards Decl., ¶¶ 4, 7-

20   9; Estrada Decl., ¶ 5; Buckingham Decl., ¶¶ 5-6.  It is for this reason, that throughout EY's

21   offices in California the work is described as "monkey work," meaning it is data entry clerical

22   work that anybody can do without requiring thought process or, in other words, brainless tasks.

23   LD, ¶18, Ex. P, Matoza Tr. 217:5 - 218:17; and ¶17, Ex. O, Fernandez Tr. 90:13 - 17.

24       Similar to audit, the Staff and Senior in the Diversified Service Group are told where to

25   go, what to do and how to do it.  The Staff and Seniors receive instructions from their manager

26   as to the tasks they needed to complete.  LD, ¶18, Ex. P Matoza Tr. 50:4-7; 76:9 - 22. Richards

27   Supp. Decl. ¶52 -57.   From there, the Staff and Seniors complete the tasks assigned by

28

primarily collecting information, entering it into spread sheets, referencing the source documents or simply printing materials and creating binders. *Id.*, 42:14 -44:18 (printing and creating binders); 79:1 - 11 (data entry for tax returns); LD, ¶3,Ex. A, Richards Tr. 273:12 - 25 and 325:24 -327:4; Richards Supp. Decl. ¶¶ 58 - 61 (locate information, "ticking and tying," -- checking off all numbers and adding them up -- data entry into either AW or GoSystem, previously called FastTax); Estrada Decl., ¶ 5(i - vi); DeMille Decl., ¶¶ 5(i -ii), 6-8 (referencing); Buckingham Decl., ¶5(i, ii, v ) (data entry, ticking and tying, office clerical work); Taylor Decl., ¶5(i, ii, iii) (data entry and ticking and tying, preparing binders). All of the work was then reviewed by a senior manager or higher. LD, ¶18, Ex. P, Matoza Tr. 83:7-84:7. Richards Supp. Decl. ¶62-63. The members of the Diversified Staff Group were rarely given authority to speak directly to a client, and usually only to ask for information they are authorized and told to obtain. Richards Supp. Decl. ¶65.

Remarkably those supervising the "exempt" Staff and Seniors in Tax Compliance or performing the equivalent alternatives in Diversified Staff Group experience receive overtime compensation for not only supervising but also doing the same work! LD, ¶21, Ex. S, Garcia Tr. 38:23 -42:8; 90:22-91:23 (Ms. Richards' counselor and EY executive director); Richards Supp. Decl. ¶56.

3. FMAs.

The partners in California use FMA's to assist primarily in generating and tracking client invoices similar to non-exempt Finance Assistants, but do not approve or determine what is to be invoiced, nor do they make any decisions of consequence on how EY operates. Richards Supp. Decl., ¶¶ 7-21; LD, ¶8, Ex. F, Tr. McGuire 62:17-23; 63:8-20; 64:13-20; 65:17-66:7; 70:7- 72:18; 90:19-25; 92:5-15; 119:9-14. The FMA is support staff (*Id.*, 151:18-20), which is different than an executive assistant. *Id.*, 129:18-23.

III. <u>Legal Argument - The Requirements Of Rule 23 Are Satisfied Here</u>.

    A. <u>Satisfaction Of Rule 23(a)</u>.

       To obtain class certification, Plaintiffs bear the burden of showing the four requirements of Rule 23(a) and one of the alternatives of Rule 23(b) are met. Fed. R. Civ. P. 23(b); *Dukes v. Wal-Mart Stores, Inc.,* 603 F.3d 571, 580, (9th Cir. 2010), citing to *Zinser v. Acccufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001). Here, the Rule 23 (a) requirements of (1) numerosity, (2) commonality, (3) typicality and (4) adequacy of representation are satisfied.

       **Numerosity**. Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." While there is no specific number required for numerosity, a putative class of hundreds satisfies this requirement. *Bates v. United Parcel Service of America, Inc.,* 204 F.R.D. 440, 444 (N.D. Cal. 2001) (460 employees). Here, EY's responses to interrogatories reflect that class members in the audit and tax lines substantially meet the numerosity requirements, as the potential is in excess of 4,000 members. LD, ¶¶22 and 23, Ex. T, EY's Responses and Supplemental Responses to Plaintiff's Third Set of Interrogatories No. 3[10]; and Ex. U, EY's Supplemental Response to Landon's Interrogatory, No. 1(b). FMAs have ranged from 30 to 36 individuals in that position per year since 2004. *Id.*, ¶24, Ex. V, EY's response to Richards' Interrogatory no. 1. Numerosity appears unchallenged.

       **Commonality**. Rule 23(a)(2) requires that there be some question of law or fact common to the class as a whole. Commonality is "construed permissively," and its requirements are deemed "minimal." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1988). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient." *Hanlon*, 150 F.3d at 1019.

       Here, as in *Brady* where class certification was granted, common questions of law include: whether the professional exemption under California law requires a license for accountants and whether accounting is a "learned profession" under California Wage Order 4-

---

[10]Interestingly, although Defendant attempts to create non-commonality by providing the categorization of the Staff and Senior in various sub-practice groups, it does not differentiate between Seniors 1 and 2. Likewise, EY fails to reflect the Diversified Staff Group in place since the Fall of 2006.

1  2001. *Brady*, 2010 U.S. Dist. Lexis 37820, \*10-11.  Plaintiffs' argument here also raises the

2  question as to whether the system of supervisors and "review" precludes a finding that any Staff

3  or any Senior can be found to exercise the required discretion and independent judgment.  *Brady*

4  also ruled that whether the actual tasks of audit employees qualified for the relevant exemptions

5  raised a common question of law.

6  Commonality is readily satisfied where a "lawsuit challenges a system wide practice or

7  policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9[th]

8  Cir. 2001).  Common factual questions here include: whether EY's standardized policies and

9  procedures prevent the class members from customarily and regularly exercising discretion and

10  independent judgment with respect to matters of significance; whether EY categorically

11  classified all class members as exempt[11]; whether EY required class members to work overtime;

12  whether the class members, who assist licensed CPA's, are producers of a service commodity

13  under the "administrative/ production worker dichotomy" and for this reason are improperly

14  classified as exempt administrative employees; whether the class members can be said to run the

15  businesses of EY's clients or determine their overall course or policies fifty-one percent of the

16  time; whether EY provided itemized statements to class members accurately recording their total

17  hours worked and their gross and net pay as required by California Labor Code § 226; whether

18  EY promptly paid all wages due to class members when discharged or who resigned pursuant to

19  California Labor Code § 203; whether California Labor Code § 218.6 entitles the class members

20  to mandatory interest at ten (10) percent per annum; whether EY maintains time records showing

21  the hours worked by class members and whether these records can be used to produce formulaic

22  calculations of the class members' damages.

---

[11]EY has already answered this affirmatively in response to interrogatories. LD.,¶23, Ex. U, EY's
Supplemental Response to Landon Interrogatory No. 1(a).  Of course, this common question includes the subsidiary
question as to the reason for the categorical classification which appears not to be based on any individual studies of
what class members actually do, but rather solely a desire to compete with a competitor.*Id.*, ¶ 4, Ex. B, Atlobello
Tr., 5:5 - 6:4; 18:6 - 20:25; 23:8 - 19; 33:19 - 34:12; 37:10 - 38:21; 41:2 - 42:20; 44:12 - 23; 50:17 - 51:19; 93:18 -
94:7; Depos. Exs. 300 and 301(explaining that like all Staff and Senior employees in the audit function in the United
States, Fernandez was classified as exempt not because of some analysis of her actual job duties or a timeand-
motion study to assess what percentage of her job duties met any potential exemption, but rather as a decision
sometime in the 1990's to simply compete with a competitor that had stopped paying overtime); and¶10, Ex. H,
Borowski Tr., 70:18 - 71:12, (no time and motion study).

1       **Typicality**. Rule 23(a)(3) requires that "the claims or defenses of the representative

2    parties are typical of the claims or defenses of the class." In the Ninth Circuit, "[u]nder the rule's

3    permissive standards, the representative claims are 'typical' if they are reasonably co-extensive

4    with those of absent class members; they need not be substantially identical." *Staton v. Boeing*

5    *Co.,* 327 F.3d 938, 957 (9th Cir. 2003), quoting *Hanlon,* 150 F.3d at 1020. This requirement is

6    typically satisfied where, as here, the challenged conduct is a policy or practice that affects all

7    class members. *Armstrong v. Davis,* 275 F.3d 849, 868-869 (9th Cir. 2001). Each of the

8    different job categories do not need a class representative to satisfy typicality. *See Staton,* 327

9    F.3d at 957. Typicality "does not mean that the claims of the class representative must be

10    identical or substantially identical to those of the absent class members." 8 Alba Conte &

11    Herbert B. Newberg, *Newberg on Class Actions*, §24:25 at 24-149 (4th ed. 2002). The claims of

12    Fernandez and Richards are reasonably co-extensive with those of the putative class; and,

13    therefore, typical of other class members for at least three reasons: they challenge the same

14    uniform course of employer conduct; they are proceeding on the same legal theories; and they

15    seek the same remedies.

16       **Adequacy of Representation**. Rule 23(a)(4), requires plaintiffs to show that "the

17    representative parties will fairly and adequately protect the interests of the class." Generally, this

18    is a two-part inquiry: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of

19    interest with other class members, and (2) will the representative plaintiffs and their counsel

20    prosecute the action vigorously on behalf of the class?" *Staton,* 327 F.3d at 957.

21       Plaintiffs' attorneys are members in good standing of the California state bar and this

22    Court with extensive experience in prosecuting complex litigation and class actions in state and

23    federal court, including substantial wage and hour cases.[12] Satisfying Fed. Rule Civ. Proc.

24    23(g)(1)(C), Plaintiffs' counsel have: diligently identified and investigated potential claims in

25    this litigation; extensive experience in prosecuting class actions; demonstrated an adequate

26

27       [12]Relevant class action and wage and hour experience is presented in the Declaration of H. Tim Hoffman
previously filed with the request to appoint Hoffman & Lazear as interim lead counsel (Dkt. # 186).

28
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23
Case No. C 05 04867-JF (HRL)(Consolidated with Case Nos. C-08-4988-JF and C-08-2853-JF)

understanding of the applicable law; and possess the necessary resources to fully represent the class throughout this litigation.

The proposed class representatives have and will continue to vigorously prosecute this action on their own behalf and on behalf of the proposed class. They have answered written interrogatories and attended depositions. The proposed class representatives are proceeding under the same legal theories as the class and seek full payment for all alleged violations. Under these circumstances, no conflict will arise between plaintiffs and the proposed class they seek to represent, and they will continue to adequately represent the entire class. Richards Supp. Decl., ¶ 67.

B. This Matter Satisfies The Certification Requirements of Rule 23(b)(3).

For certification under Rule 23(b)(3), a class must satisfy two conditions beyond those of Rule 23(a). "[C]ommon questions must 'predominate over any questions affecting only individual members,' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Hanlon*, 150 F.3d at 1022 quoting Fed. R. Civ. P. 23(b)(3). In *Hanlon*, the court went on to explain, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.*, at 1022 (internal quotation marks and citations omitted). In doing so, the court is "not only at liberty to, but must, perform a rigorous analysis to ensure that the prerequisites of Rule 23 have been satisfied,..." *Dukes,* 603 F.3d at 594.[13]

Courts do not, however, consider the evidence for purposes of determining which party is likely to prevail on the merits. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1978). "It is error to base a class certification decision on whether the plaintiffs could prove the merits rather than whether their claims implicate common questions of law or fact." *United Steel Workers v. ConocoPhilips Co.,* 593 F.3d 802, 808-809 (9th Cir. 2010) Rather, "...the purpose of

---

[13]There is no dispute that EY treats all class members uniformly.  One Court noted inherent unfairness of an employer claiming a lack of predominance when it does not engage in any type of individualized inquiry of whether any employee is actually performing exempt duties. *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 603 (C.D. Cal. 2005).

the inquiry at this stage remains focused on, for example, common *questions* of law or fact under

Rule 23(a)(2), or predominance under Rule 23(b)(3), not proof of answers to those questions or

the likelihood of success on the merits." *Dukes* 603 F.3d at 590 (citing to *Gen. Tel. Co. of Sw. v.*

*Falcon*, 457 U.S.147 at 158 (1982), emphasis in the original, and *United Steel Workers*, 593 F.3d

at 808-809.

"The mere presence of potential individual issues does not defeat the predominance of

common questions." *Westways World Travel, Inc. v AMR Corp.*, 218 F.R.D. 223, 239 (C.D. Cal.

2003) (quoting *McFarland v. Memorex*, 96 F.R.D. 357, 363-364 (N.D.Cal.1982)).  EY

undoubtedly will provide declarations and other evidence to support a claim of variation among

the tasks performed, but those tasks are a single set of tasks all subject to EY's policies and

professional and legal requirements.  Because the policies and professional and legal

requirements apply "across the board" the proposed class is sufficiently cohesive to warrant

adjudication by class representation. *Amchem Products, Inc., v Windsor*, 521 U.S. 591, 623

(1997).  Accordingly, class actions focused on common employer practices are appropriate for

class certification under Rule 23(b)(3).  *See e.g., Campbell*, 253 F.R.D. 586, 605 (E.D.Cal.2008);

(unlicensed audit employees) *Brady*, 2010 U.S. Dist. Lexis 37820 at *21 (same); *Romero v.*

*Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 490 (E.D.Cal.2006); *Tierno v. Rite Aid Corp.*,

2006 U.S. Dist. Lexis 71794 at *32.

 1.  <u>Common Proof Establishes EY Uniformly Classifies Staff and Senior As Exempt</u>.

  First, common proof establishes EY uniformly and without variation classifies the

unlicensed Staff and Seniors as exempt.  LD, ¶23, Ex. U, EY's Supplemental Response to

Landon Interrogatory no. 1.  It is for this reason that where exemption is a common defense,

class adjudication is supported. *Alba v. Papa John's USA, Inc.*, 2007 U.S. Dist. Lexis 28079 at

*38-39.

  Second, the employer's realistic expectations and the actual overall requirements of the

job are susceptible to common proof. *Sav-On Drug Stores, Inc., v. Sup. Ct.*, 34 Cal.4th 319, 336-

337 (2004).  Here, EY readily admits a uniform and unvarying determination that all class members are exempt based on its own expectations of the job duties.

    2.  <u>Common Proof Demonstrates Employer Expectations.</u>

    EY acknowledges that the Staff and Senior employees perform substantially the same activities not only in California but throughout the entire United States at their respective level of experience.  LD, ¶9, Ex. G, Greco[14] Tr., 5:21- 6:13, 10:6 - 14; 37:13- 39:18.  It is EY's expectation that the job duties to be performed by the Staff and Seniors, regardless of whether the service line is tax, audit or another, are consistent across the United States.  This includes the expectation as to the amount of discretion that the Staff and Seniors exercise.  *Id.*, 55:3 - 56: 19. Likewise, the amount of independent judgment and discretion expected of Staff and Seniors, if any, is consistent across all service lines throughout the United States. *Id.*, 56:20 - 58:16, 59:2 - 60:4.

    3.  <u>Common Proof Demonstrates that None of the Statutory Exemptions Apply.</u>

    (a)  <u>None of the Class Members Customarily and Regularly Exercise Discretion and Independent Judgment.</u>

    California Labor Code § 515 provides, "[t]he Industrial Welfare Commission may establish exemptions from the requirement that an overtime rate of compensation be paid."  The regulation for the professional exemption is found in IWC Order No. 4-2001, and is also published in the California Code of Regulations at Title 8, Section 11040.

    Each of the potentially applicable exemptions requires defendant to prove that class members "customarily and regularly" exercised discretion and independent judgment.  Cal. Code Regs., Tit. 8, § 11040(1)(A)(3)(c) (Professional /Learned Profession Exemption)Cal. Code Regs., Tit. 8, § 11040(1)(A)(2)(b) Administrative Exemption), Cal. Code Regs., Tit. 8, § 11040(1)(A)(1)(d) (Executive Exemption).  EY is required to prove the basis for an exemption, but its policies and practices prohibit class members from exercising the required discretion or judgment.

---

[14]Mr. Greco is EY's Director of Total Rewards for Americas, responsible for compensation, benefits and HR policies, including compliance with labor laws within California and other states of the United States and federal labor laws.

1    Plaintiffs need not prove that class members do not exercise any skill or care in

2 performing their duties.  The authorities are careful to distinguish "between the exercise of

3 discretion and independent judgment, and the use of skill in applying techniques, procedures or

4 specific standards." *Brock v. On-Shore Quality Control Specialists, Inc.*, 107 Lab. Cas. ¶34,

5 972, 1987 WL 31308 (W.D. Tex. 1987).  *Nordquist v. McGraw-Hill Broadcasting Company,*

6 *Inc.,* 32 Cal. App. 4th 555, 564, (1995) citing to the D.L.S.E. Manual,  states:

> "The most frequent cause of misapplication of the term 'discretion and
> independent judgment' is the failure to distinguish it from the use of skills and
> knowledge.  An employee who merely applies his or her knowledge in following
> prescribed procedures or in determining which procedures to follow, or who
> determines whether specified standards are met ... is not exercising discretion and
> judgment of the independent sort associated with administrative work."

11    *Nordquist* further instructs that it is not considered the exercise of discretion and

12 independent judgment when an employee is making decisions at a level that is not sufficient to

13 qualify for an exemption.   *Id.*, at 564.  *Nordquist*, acknowledges that all employees are required

14 to use some discretion, but the bookkeeper who decides which ledger to post first, is not making

15 a decision important enough to count *Id.*, 564.

16    As shown, the kinds of decisions that class members routinely had to make rarely, if ever,

17 involved specialized skills or expertise, and when they did, their "discretion" and judgments

18 were not sufficiently "independent" because of the pervasive and comprehensive supervisory and

19 "review" scheme.  The DSLE Manual in its 2002 update at § 52.3.12 requires that " [t]he

20 discretion and independent judgment exercised must be real and substantial, that is, they must be

21 exercised with respect to matters of consequence."  Further, "[e]xercising discretion and

22 independent judgment with respect to matters of consequence must be distinguished from

23 making decisions which can lead to serious loss due to ... the improper application of skills,

24 failure to follow instructions or procedures, or negligence." *Id.*, at § 52.3.8.3.  This means an

25 employee cannot be classified as exempt merely because her work is "important" since a failure

26 to perform her job properly could have catastrophic results for the employer.  It is the nature of

27

28

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23
Case No. C 05 04867-JF (HRL)(Consolidated with Case Nos. C-08-4988-JF and C-08-2853-JF)

the work, not its consequences, which is determinative. *Shaw v. Prentice Hall*, 977 F.Supp. 909, 915 (S. D. Ind. 1997).

Predominance of common issues is found where, as here, the common question presents a "significant aspect" of the case. *Hanlon*, 150 F.3d at 1022. It is for this reason that "predominance is determined not by counting the number of common issues but weighing their significance." *Wamboldt v. Safety-Kleen Systems, Inc.,* 2007 U.S. Dist. Lexis 65683 at *34 (N.D.Cal.2007). "Where...there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt, despite arguments about 'individualized' differences in job responsibilities." *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152 (S.D.N.Y. 2008).

(b) <u>Common Proof Demonstrates That The Other Requirements of Professional Exemption Cannot Be Satisfied</u>.

To support a claim of exemption it is the employer's burden to establish all the requirements of at least one applicable exemption. *See* Cal. Labor Code § 515; Cal. Code Reg., Tit. 8, § 11040; *Nordquist, supra* 32 Cal.App.4th at 562 ("[t]he employer bears the burden of proving an employee is exempt.") EY contends that the unlicensed Staff and Seniors qualify for the professional exemption. LD, ¶23, Ex. U, EY's supplemental response to Landon interrogatory no. 1. This represents a common question on a "significant aspect" of the case. It can be resolved for all class members in a single adjudication. *Hanlon,* 150 F.3d at 1022.

The regulation for the professional exemption begins: "A person employed in a professional capacity means any employee who meets *all* of the following requirements...." Cal. Code Regs., Tit. 8, § 11040(1)(A)(3) (emphasis added). The first of these requirements provides that the individuals employed in the profession of accountancy must be licensed to qualify for the professional exemption. *Id.*, at 11040(1)(A)(3)(a). Here, the class is defined not to include any members who are licensed as either CPA's or attorneys.[15] As a result, class-wide proof of

---

[15]Where class members obtain their license as a CPA or attorney while a Staff or Senior, the only effect is that their participation is limited to the unlicensed period, which is readily determined from EYs employment records and the date, if any, that a license was issued. *See Whiteway v. Fedex Kinko's Office and Print Services,*

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23
Case No. C 05 04867-JF (HRL)(Consolidated with Case Nos. C-08-4988-JF and C-08-2853-JF)

1   either having a license or not having a license is available to answer the keystone question of

2   whether class members qualify for the professional exemption.

3          The issue of whether the governing statute and regulation require a license in a

4   recognized profession is a matter of statutory construction[16]. For purposes of deciding whether

5   the class should be certified, this is a "significant aspect" of the case supporting predominance.

6   *See Campbell*, 253 F.R.D. 586, 597 and 599; *Brady*, 2010 U.S. Dist. Lexis at *20-21.  Here, as in

7   *Campbell* and *Brady*, it is expected EY will assert that the variation in the duties performed by

8   the unlicensed Staff and Senior prevent the establishment of predominance under the second

9   avenue of the professional exemption, the "learned profession exemption."  Regardless of

10  whether it is permissible to foster internal inconsistency interpreting the regulation by ignoring

11  the first avenue of the professional exemption, requiring a license, in favor of the second avenue,

12  the learned profession exemption, the applicability or inapplicability is, "a common predominate

13  question." *Campbell*, 253 F.R.D. 586 at 597.

14

15          (c)   <u>Common Proof  Establishes That The Other Requirements of Administrative
                  Exemption Cannot Be Satisfied.</u>

16          In order to establish that the Staff and Seniors are administratively exempt from the

17  applicable wage and hour laws, EY must prove that their actual job duties require them to spend

18  more than fifty percent of their time performing work directly related to Defendant's

19  management policies or its general business operations.  Cal. Labor Code § 515; 8 Cal. Code

20  Reg., § 11040.

21          In order to qualify for the exemption, the work must be directed to "matters that involve

22  policy determinations, i.e., how a business should run or run more efficiently, not merely

23

24  _____

    *Inc.,* 2006 U.S. Dist. Lexis 69193 at *19-20.

25          [16]After class certification in *Campbell*, the statutory interpretation of IWC Order No. 4-2001, regarding

26  whether the first avenue of the professional exemption requiring a license can be ignored to qualify the unlicensed
    Staff and Seniors under the second avenue (learned profession), was exhaustively examined.  That affirmative

27  defense and the administrative exemption were determined in favor of the Plaintiff employees on summary
    judgment. *Campbell*, 602 F.Supp.2d 1163 (E.D.Cal. 2009).  That summary judgment order is currently pending

28  before the Ninth Circuit.  (Docket No. 6, No. 09-80059).

1    providing information in the course of the customer's daily business operations." *Bratt v. City of*

2    *Los Angeles*, 912 F. 2d 1066, 1070 (9th Cir. 1990). The decisions that qualify an employee for the

3    exemption must be more than "those small discretions which normally inhere in" the type of

4    work one does. *Hodgson v. Penn Packaging Co.*, 335 F.Supp. 1015, 1021 (E. D. Penn. 1971);

5    *Rothman v. Publicker Industries, Inc.*, 201 F.2d 618, 620 (3d Cir. 1953). Rather, it must be

6    shown that the employee is truly exercising independent judgment and that he is doing so with

7    respect to decisions that truly affect the administration and operation of the employer's business.

8         The "duties" test is used to determine whether the job duties of an employee are actually

9    "administrative" in nature. Specifically, the duties test requires that the employee be engaged in

10   "the performance of office or non-manual work directly related to management policies or

11   general business operations of his/her employer or his/her employer's customers." 8 Cal. Code

12   Regs., § 11040 (1)(A)(2)(a)(i). To qualify for the administrative exemption the employee must

13   be "primarily engaged in duties that meet the test of the exemption." *Id.*, at 1(A)(2)(f). In

14   California, this means that more than fifty (50) percent of the employee's work time must be

15   spent engaged in exempt work. *Nordquist, supra*, 32 Cal. App. 4th at 563.

16        California law uses the administrative/production worker dichotomy, therefore, as a

17   "core" concept to assess the administrative exemption. *Bell v. Farmers Insurance Exchange*, 115

18   Cal. App. 4th 715, 728 (2004). "The phrase 'directly related to management policies or general

19   operations of the business of the employer or the employer's customers,'" is limited to those

20   activities related to the administrative operations and is distinguished from "production" work.

21   DSLE Manual at § 52.3.7.1. The administrative/production worker dichotomy distinguishes

22   between employees whose primary duties directly relate to management policies or general

23   business operations of the employer or its customers and employees whose primary duty is

24   producing the commodity or commodities, whether goods or services, that the enterprise exists to

25   produce and market. *Id.*, at 729, citing *Dalheim v. KDFW -TV*, 918 F.2d 1220, 1230 (5th Cir.

26   1990). The California Division of Labor Standards Enforcement Policies and Interpretations

27   Manual ("DSLE Manual") in its 2002 update at § 52.3.5 summarizes the law as follows:

28

> "...,[r]ecent appellate decisions make it clear that the administrative exemption applies only to those employees whose primary duty is administering the business affairs of the enterprise rather than producing the goods and services that the enterprise exists to produce and market." Further, "[n]umerous recent cases have confirmed that the 'production' vs. 'administration' dichotomy applies not only to manufacturing settings but also to settings in which the 'product' consists of services."

DSLE Manual at § 52.3.5 (2002 update). In other words, the administrative exemption applies only to administration, not to individuals – even important individuals – involved in producing the goods or services sold by the employer.

Clearly, the Staff and Seniors in the audit line of business are engaged in the "production" of audit services to clients. As to tax services, the administrative/production dichotomy logically leads to the conclusion that the Staff and Seniors do not spend anytime "running" the business of EYs' clients. In fact, the rules of independence governing accountancy prohibit even licensed professionals from functioning as administrators of its engagement clients.

EY is required to be independent from the engagement client not only in producing audits and tax advice, but also to avoid operating or managing its clients. "Independence is inherent in everything EY does." *Id.*, ¶15, Ex. M, PPS Independence, at EY051505. As such, EY does not (1) determine client policies or overall course of conduct of the client, (2) act as the administrator of the engagement client or (3) act in a management capacity for the client. This rule is stated in every engagement letter as a matter of course. *Id.*, ¶16, Ex. N, DiNicola[17] Tr. 88:16 – 90:24; ¶21, Ex. S, Garcia Tr. 89:23-90:16. Because of required independence, EY cannot claim the administrative exemption on the basis of administering the clients' businesses. EY simply provides advice for a fee. *Id.*, Tr. 88:13-18. It is also undisputed that Staff and Seniors do not spend any time providing advice to Defendant's clients and cannot do so. They are neither licensed to do so nor permitted to do so by the AICPA Code of Professional Conduct or Defendant's internal policies.

Similarly, the "discretion" which an employee must be found to exercise to meet the administrative exemption must involve the authority to make basic decisions that affect the

---

[17]Mr. DiNicola is Defendant's State and Local Tax Service Line Leader Pacific Northwest and Pacific Southwest, Defendant's Fed. R. Civ. Proc., Rule 30(b)(6) witness on the duties, responsibilities, and actual job activities of the Staff and Senior titled employees in its State and Local Tax practice.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23
Case No. C 05 04867-JF (HRL)(Consolidated with Case Nos. C-08-4988-JF and C-08-2853-JF)

fundamental operation of the enterprise in question without seeking guidance from superiors as a matter of course." *Hashop v. Rockwell Space Operations Co.* 867 F. Supp. 1287, 1298 (SD Tex. 1994.)  Indeed, one necessary feature of discretion and independent judgment is that it "implies the person has authority or power to make an independent choice, free from immediate direction or supervision and with respect to *matters of significance.*  29 C.F.R. § 541.207.

Duties of footing and tying, testing, documenting, inputting data and counting not only lack any specialized skill, but are also prescribed in detailed plans in either the AWS for audit or the GoSystem for tax.  The common proof shows the class is performing basic production work.

No matter how EY attempts to characterize class members' positions, and the actions they are instructed to take, the jobs simply do not require the exercise of independent judgment on matters of significance concerning Defendant's general business operations. Class members have no individual discretion and no opportunity to make significant or complex decisions.  The class members simply follow directions on each audit and tax assignment.  Their tasks are properly classified within Defendant's production operations, not within its administrative operations. *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1230 (5th Cir.  1990).  Moreover, the class members have no real opportunity to exercise independent judgment and discretion.  At most, the decisions made by the class members are simply "those small discretions which normally inhere in" their type of work. *Hodgson v. Penn Packaging Co.,* 335 F.Supp. 1015, 1021 (E. D. Penn.1971).

The class positions, by common proof, thus fail to fulfill either of the requirements that must be met in order to qualify for an administrative exemption.  The responsibilities do not relate generally to the administrative or general business aspects of Defendant's operations, and they do not regularly require the exercise of independent judgment or discretion.

4. <u>Common Proof Establishes That The Other Requirements of the Executive Exemption Cannot be Satisfied</u>

GAM itself defines "executives" as those employed as managers and above. *Id.*, GAM Supp., 1.2.2 at EY 039258.  EY cannot demonstrate that any staff or seniors are subject to the executive exemption from overtime, since none spend more than fifty (50) percent of their time supervising other Staff or Seniors.  EY, as a matter of policy, Employee Performance Problems

reserves counseling of performance for the Manager through Partner.  LD., ¶20, Ex. R, PPS

Guideline For Effectively Handling Employee Performance Problems," at EY051487 -

EY051490.

5. Other Common Issues Predominate.

A resolution of the central underlying issue of the applicability of the claimed exemptions

will lead to simple class-wide resolution of the other primary issues in the case.  The amount of

overtime and the proof of damages can be readily obtained from EY's timekeeping records in a

formulaic calculation.  *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).  Eligibility for

waiting penalties under Cal. Labor Code§ 203 will necessarily follow from a finding of unpaid

overtime.  The relationship between the failure to pay overtime and nonpayment under §203 has

been recognized by the courts. *Ghoury v. Al-Lahham*, 209 Cal.App.3d 1487, 1492 (1989).

Liability for failure to maintain accurate records under California Labor Code § 226 will be

based on EY's intentional failure to maintain accurate time records for employees that it

misclassified as exempt.  *See Cicairos v. Summit Logistics, Inc.*, 133 Cal.App.4th 949,954-955,

960-961 (2005).  California Labor Code § 218.6 provides, "the court shall award interest on all

due and unpaid wages at the rate of interest specified in subdivision (b) of Section 3289 of the

Civil Code, which shall accrue from the date the wages are due..."  Whether mandatory interest is

due on one or more of the class claims is a common issue.  Further, an order that earned wages

be paid as restitution is a permissible remedy under Business & Professions Code § 17203.

*Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 177 (2000).  The same common

proof and reasons that establish the overtime violation will establish the UCL claims.

C. Class Resolution Is Superior.

Rule 23(b)(3) also requires that class resolution be "superior to other available methods

for the fair and efficient adjudication of the controversy."  By analyzing the four factors in Rule

23(b)(3)(A-D), the relevant inquiry is whether the objective of the class procedure will be

achieved.

**Rule 23(b)(3)(A).**  The initial factor evaluated is "the interest of members of the class in individually controlling the prosecution or defense of separate actions."  This focuses on the ability of class members to pursue their claims on an individual basis.  *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234-1235 (9th Cir. 1996).  "A class action is the superior method for managing litigation if no realistic alternative exists."  *Id.* No such alternative exists here.

First, class members are likely to fear reprisal or otherwise be disinclined to pursue individual claims against their employers.  *See Scott v. Aetna Services, Inc.* 210 F.R.D. 261, 268 (D. Conn. 2002).  A class action protects "the rights of those reluctant or unable to file individual actions against the defendants for fear of jeopardizing continuing necessary relationships." *Abron v. Black & Decker (U.S.), Inc.,* 654 F.2d 951, 973 (4th Cir.1981) (cases cited therein).

Second, the cost of individual litigation against a well-funded defendant is cost prohibitive.  *See Scott,* 210 F.R.D. at 268.  Both of these reasons underlie the fundamental principle that class actions are needed to vindicate the rights of groups of people who otherwise lack the effective wherewithal to hale the opponent into court.  *See Alchem*, 52 U.S. at 617.

In overtime cases, these reasons have more recently been set forth by the California Supreme Court, including: vindication of the public policy underlying overtime laws; the desire to spread employment through the workforce; avoidance of the evil of overwork; the amount of recovery relative to the cost of individual litigation; risk of retaliation for individual lawsuits; the employees' absence of awareness of their legal rights; and the need for effective enforcement to deter employers from profiting.[18] *Gentry v. Superior Court*, 42 Cal.4th 443, 455-465 (2007).

**Rule 23(b)(3)(B)**.  The second factor to be considered is the "extent and nature of any litigation concerning the controversy already commenced by or against the members of the class."  Plaintiffs' counsel is unaware of any other current litigation in California against EY to

---

[18]By treating all its unlicensed Staff and Seniors as exempt, EY has profited in the order of millions of dollars by not paying substantial amounts of overtime, with virtually no deterrent from its entry-level employees who are reluctant to take on a Goliath-like employer.  This is true even if they do not stay at EY, since these employees are less secure in their future ability to find employment if they are tarnished as being litigious.  Absent the effective deterrent of the class action, EY will have a strong economic incentive to continue its conduct without regard to its legality.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23
Case No. C 05 04867-JF (HRL)(Consolidated with Case Nos. C-08-4988-JF and C-08-2853-JF)

1   recover for the claims of the class.  The lack of other litigation supports a finding of superiority.

2   *Zinser*, 253 F.3d at 1191.

3       **Rule 23(b)(3)(C).**  The third factor is the "desirability or undesirability of concentrating

4   the litigation in the particular forum."  The present matter has been focused here, and has

5   involved three separate dispositive motions that have resulted in the dismissal of certain claims.

6   Continuing the litigation here is desirable because the Court and the parties are fully engaged in

7   litigating the significant issues raised by the proposed class action.

8       **Rule 23(b)(3)(D).**  Finally, courts consider "the difficulties likely to be encountered in the

9   management of a class action."  *In re Seagate Technologies II Securities Litigation*, 843 F.Supp.

10  1341, 1352 (N.D. Cal. 1994).  "[D]ifficulties in the management of class actions should not lead

11  to a conclusion that class actions are not superior to other available means for the fair and

12  efficient adjudication of the controversy.  Manageability problems are significant only if they

13  create a situation that is less fair and efficient than other available techniques."  *In re Sugar*

14  *Industry Antitrust Litigation*, 73 F.R.D. 322, 358 (E.D.Pa.1976).  Manageability is rarely, if ever,

15  in itself sufficient to prevent class certification.  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1272 (11th

16  Cir.2004).  The Ninth Circuit has longed recognized that "[w]here class-wide litigation of

17  common issues will reduce litigation costs and promote greater efficiency, a class action may be

18  superior to other methods of litigation."  *Valentino*, 97 F.3d at 1234.

19      Here, substantial efficiencies and economies are obtained where the alleged wrongs can

20  be proven by common evidence and then remedied by reversing the unlawful computations in

21  EY's payroll system, and, in doing so, correctly and accurately compute the amount of wages due

22  and mandatory interest.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23
Case No. C 05 04867-JF (HRL)(Consolidated with Case Nos. C-08-4988-JF and C-08-2853-JF)

IV.  Conclusion.

Plaintiffs request that the court enter an order: (1) certifying the proposed class, (2) appointing Sarah Fernandez and Michelle Richards as class representatives and (3) appointing Hoffman and Lazear, Thierman Law Firm and Folkenflik and McGerrity as class counsel.

Dated: August 20, 2010                     HOFFMAN & LAZEAR

By: _____
                     Ross L. Libenson

Attorneys for Plaintiffs
Sarah Fernandez and Michelle Richards

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23
Case No. C 05 04867-JF (HRL)(Consolidated with Case Nos. C-08-4988-JF and C-08-2853-JF)