UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

STEPHANIE SUTHERLAND, on behalf of
herself and all others similarly situated,

                    Plaintiff,

      -against-                                  Order
                                             10 Civ. 3332 (KMW)
ERNST & YOUNG LLP,

                    Defendant.
───────────────────────────────────────────────

WOOD, U.S.D.J.:

I.      Overview

      Plaintiff Stephanie Sutherland ("Sutherland") brings this collective and putative class action against her former employer, Defendant Ernst & Young LLP ("E&Y"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and Title 12 of the Compilation of Codes, Rules and Regulations of the State of New York, 12 N.Y.C.R.R. § 142-2.2.  E&Y allegedly violated the FLSA and the laws of New York by failing to properly compensate Sutherland, and others similarly situated, for hours worked in excess of 40 hours per week.  E&Y moves, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., to dismiss or stay the proceedings, and to compel arbitration of Sutherland's claims on an individual, rather than on a class-wide, basis in accordance with the parties' arbitration agreement.

      Because the Court finds the arbitration agreement unenforceable, E&Y's motion is DENIED.

II.     Background[1]

E&Y provides audit, tax and transactional advisory services, and employs over 41,000 individuals throughout the United States. (Compl.¶¶14-15.) Sutherland was employed by E&Y as a "low level" accountant from September 2008 through December 2009. (Id.¶¶1, 13-15.) The "great majority" of her work involved the performance of secretarial, clerical and data-entry tasks. (Id.¶19.) Sutherland was compensated on a "salary only" basis, meaning that she was paid a fixed salary-$55,000 per year-for all hours worked. (Id.¶21; Sutherland Decl.¶3.) She thus was not paid for hours worked in excess of 40 hours per week. (Compl.¶16.) Sutherland concedes that she consented to the "EY Common Ground Dispute Resolution Program" ("E&Y Agreement" or "Agreement") as a condition of employment. (See Pl. Opp. at 7.) The Agreement, which is governed by the FAA, calls for binding arbitration on an individual, rather than a class-wide, basis. (Reece Decl. Exh. D¶V.G; id.¶IV.K.)

In this action, Sutherland alleges that E&Y wrongfully classified her as exempt from the overtime requirements of the FLSA and New York state law. Sutherland seeks compensatory damages for 151.5 hours of unpaid overtime wages, which amounts to an actual loss of $1,867.02. (Folkenflik Decl.¶8.) She also seeks class and collective group certification.

E&Y moves to dismiss or to stay the proceedings, and to compel arbitration of Sutherland's claims on an <u>individual</u> basis in accordance with the E&Y Agreement. Sutherland contends that the class waiver provision in the Agreement is unenforceable, and that E&Y's motion must accordingly be denied. Specifically, Sutherland argues that E&Y's class waiver provision precludes her from vindicating her state and federal statutory rights. This is because,

---

[1]     On the instant motion to compel arbitration, the Court considers, as it must, the extrinsic evidence submitted by the parties. See, e.g., BS Sun Shipping Monrovia v. Citgo Petroleum Corp., No. 06 Civ. 839, 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006).

relative to her potential recovery, the enormous costs and fees attendant to prosecuting her claim on an individual basis would effectively prohibit her from bringing suit at all.[2]

III.   Legal Standard

Courts apply a summary judgment standard when evaluating whether to compel arbitration pursuant to the FAA. See Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party resisting arbitration . . . must show that, if proven, [its] allegations would relieve any obligation to arbitrate, and [it] must produce some evidence to substantiate [its] factual allegations." Town of Amherst v. Custom Lighting Servs., LLC, No. 07 Civ. 261, 2007 WL 4264608, at *4 (W.D.N.Y. Nov. 30, 2007) (internal quotations omitted).   Because no material facts are in dispute, the Court proceeds to examine whether the E&Y Agreement is enforceable as a matter of law.

IV.   Discussion

The Court finds that the E&Y Agreement's class waiver provision is unenforceable pursuant to In re American Express Merchants' Litigation, 554 F.3d 300 (2d Cir. 2009) ("Amex"). There the Second Circuit invalidated a class waiver provision that, if enforced, would have precluded plaintiffs from vindicating their statutory rights. Id. at 304, 320. As discussed below, the Amex decision retains persuasive force notwithstanding the Supreme Court's summary order vacating the judgment and remanding the case to the Second Circuit in light of Stolt-Nielsen

---

[2]   As discussed below, the Court agrees with Sutherland's contention. Accordingly, the Court need not address Sutherland's remaining arguments in opposition to the instant motion.

S.A. v. AnimalFeeds Int'l Corp., 130 S.Ct. 1758 (2010) ("Stolt-Nielsen").[3]  In accordance with Amex and Stolt-Nielsen, this Court finds as follows: because Sutherland has shown that it would be prohibitively expensive for her to pursue her statutory claims on an individual basis, and because the arbitration agreement at issue bars the arbitration of a claim on anything other than an individual basis, (a) the class waiver provision is unenforceable; and (b) the Court must determine whether there is a remedy in the judicial forum.

    A.    Enforceability of Arbitration Agreements

Although federal policy strongly favors arbitration as an alternative means of dispute resolution, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), the arbitration of a statutory claim will be compelled only if that claim can be effectively vindicated in the arbitral forum.  See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985); Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 90 (2000); Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 125 (2d Cir. 2010).  Otherwise, the statute's "remedial and deterrent function" would be circumvented, Mitsubishi Motors Corp., 473 U.S. at 637, and the arbitral forum would "lose[ ] its claim as a valid alternative to traditional litigation." Kristian v. Comcast Corp., 446 F.3d 25, 37 (1st Cir. 2006).  Thus, where "large arbitration costs" preclude a litigant from effectively vindicating her statutory rights in the arbitral forum, the arbitral agreement at issue may be unenforceable. Randolph, 531 U.S. at 90.

    B.    Amex

The rule set forth in Randolph led the Second Circuit in Amex to invalidate an arbitral agreement banning class proceedings, where plaintiffs demonstrated that they otherwise would have been unable to bring their statutory claims "in either an individual or collective capacity."

---

[3]    See Am. Exp. Co. v. Italian Colors Rest., 130 S.Ct. 2401 (2010).

Amex, 554 F.3d at 314.  The arbitration agreement at issue in Amex mandated the arbitration of all claims (including antitrust claims), and barred plaintiffs from representing a class.  Id. at 307.  The court found that each plaintiff if forced to proceed on an individual basis would incur discovery costs amounting to hundreds of thousands of dollars in order to recover average damages of approximately $5,000.  Id. at 308.  Such costs, including expert fees, were largely not compensable.  Id. at 318.  And although reasonable attorney's fees could have been shifted to the losing party, plaintiffs were entitled "to include the risk of losing, and thereby not recovering any fees," in evaluating the potential costs of their suit.  Id.  In light of the foregoing, plaintiffs' claims "could not reasonably be pursued" on an individual basis.  Id. at 319.  As a result, defendant would receive de facto immunity from antitrust liability.  Id. at 320.  The Court of Appeals held that the class waiver provision could not be enforced under such circumstances.  Id.

The Court of Appeals held that the enforceability of a particular class waiver provision in an arbitration agreement should be determined by reference to

> the totality of the facts and circumstances.  Relevant circumstances may include, but are not limited to, the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorneys' fees and other costs and thus obtain legal representation to prosecute the underlying claim, the practical [e]ffect the waiver will have on a company's ability to engage in unchecked market behavior, and related public policy concerns.

Id. at 321 (quotations omitted).

      C.     Viability of Amex in Light of Stolt-Nielsen

Amex retains persuasive force notwithstanding the Supreme Court's order granting certiorari, vacating the judgment, and remanding ("GVR") the case to the Second Circuit "for further consideration in light of" Stolt-Nielsen.  This is because GVR orders are not final

determinations on the merits. Tyler v. Cain, 533 U.S. 656, 666 n.6 (2001). Rather, they are issued where intervening developments "reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome" of the matter. Wellons v. Hall, 130 S.Ct. 727, 731 (2010) (internal quotations omitted). On remand, then, the lower court may find the intervening decision inapplicable. See, e.g., Stutson v. United States, 516 U.S. 193, 196 (1996). The expressions of the court below on the merits, if not reversed, will thus continue to have precedential effect notwithstanding the issuance of a GVR order, and "until contrary authority is decided, are likely to be viewed as persuasive authority if not the governing law of the . . . Circuit." Boehner v. McDermott, 332 F. Supp. 2d 149, 156 (D.D.C. 2004) (internal quotations omitted). See also United States v. Adewani, 467 F.3d 1340, 1343 (D.C. Cir. 2006) (same); cf. United States v. Blume, 967 F.2d 45, 52 (2d Cir. 1992). In light of the foregoing, the Court declines to disregard the residual authority of Amex. See Boehner, 332 F. Supp. 2d at 156.

Indeed, the residual authority of Amex is all the more persuasive because the Stolt-Nielsen decision turned on a discrete issue. Whereas the Second Circuit in Amex resolved a question of contract enforceability, 554 F.3d at 311 n.10, the Supreme Court in Stolt-Nielsen resolved a question of contract construction: whether the FAA requires an employer to permit a claimant to represent a class where the arbitration agreement is silent on that issue. Stolt-Nielsen, 130 S.Ct. at 1764. The Supreme Court answered in the negative. Because "arbitration is a matter of consent, not coercion," id. at 1773, parties cannot be compelled to submit to class proceedings in arbitration unless there is a contractual basis for concluding that the party agreed to do so. Id. at 1775. This Court thus construes the GVR order in Amex as requiring

reconsideration of only the Second Circuit's assumption in <u>Amex</u> that, in light of the unenforceability of the class waiver provision, the defendant could be required to allow a claimant to represent a class in arbitration. See <u>Amex</u>, 554 F.3d at 310, 321.

D.    Analysis

Because the <u>Amex</u> decision retains its persuasive force, the Court applies the test adopted in <u>Amex</u> to determine the enforceability of the class waiver provision here at issue. In the totality of the circumstances, the Court finds that the class waiver provision is invalid because it prevents Sutherland from vindicating her statutory rights.

1.    Cost to Individual Plaintiff Versus Potential Recovery

The record supports Sutherland's argument that her maximum potential recovery would be too meager to justify the expenses required for the individual prosecution of her claim. Sutherland alleges "an actual overtime loss of approximately $1,867.02, with potentially liquidated damages of an equal amount under the FLSA."[4] (Folkenflik Decl. ¶ 8; <u>see also</u> Sutherland Decl. ¶ 4.) If her only option were to prosecute her claim on an individual basis, Sutherland would be required to pay expenses that would dwarf her potential recovery.

Sutherland's uncontested submission estimates that her attorney's fees during arbitration will exceed $160,000, and that costs will exceed $6,000. (Folkenflik Decl. ¶¶ 20, 24.) Sutherland will utilize expert assistance in support of her claims.[5] (<u>Id.</u> ¶ 22.) Her expert, a professor of

---

[4]    Sutherland states that "[t]his computation . . . does not include additional overtime hours which [she] will testify she worked, but did not document, either because she was instructed not to, or for other reasons." (Folkenflik Decl. ¶ 8.) E&Y emphasizes that any additional overtime hours would increase Sutherland's recovery. (<u>See</u> Def. Reply at 6.) Because neither party has submitted competent evidence as to whether Sutherland performed undocumented overtime work, the Court is unable to consider such claims at this juncture.

[5]    E&Y argues that Sutherland "has no justifiable need" for expert assistance, but offers no competent evidence in support of that position. (Def. Mem. at 11.) Even absent expert

accountancy, has submitted an affidavit stating that his fees may exceed $33,500, and that he requires a retainer payment of $25,000. (Carmichael Decl. ¶ 5.) In sum, Sutherland would be required to spend approximately $200,000 in order to recover double her overtime loss of approximately $1,867.02. Only a "lunatic or a fanatic" would undertake such an endeavor. Carnegie v. Household Intern., Inc., 376 F.3d 656, 661 (7th Cir. 2004). Indeed, rather than prosecuting her low-value, high-cost claim on an individual basis, Sutherland "would give up any rights" she might have to recover overtime payments allegedly owed to her.[6] (Sutherland Decl. ¶ 2.)

E&Y's attempt to distinguish the cost-recovery differential in Amex from the differential present here is unavailing. The "median plaintiff" in Amex would have recovered damages of $1,751, and the expert's services would have cost at least several hundred thousand dollars. Amex, 554 F.3d at 317. According to E&Y, a "median plaintiff" in the instant matter could recover "substantially more," and expert fees here amount to "a small fraction" of those at issue in Amex. (Def. Reply at 6-7.) The Amex decision did not, however, set a cost-to-recovery ratio below which claims are deemed "prosecutable." The court instead embraced a functional

---

testimony, however, Sutherland would still face the task of spending over $160,000 in order to recover a few thousand dollars in damages.

[6] E&Y's offer to "bear all administrative costs and arbitrator fees," including the "Court Equivalent Fee" ($350) and arbitration fees ($24,000), (see Def. Reply at 5), is insufficient to change the result.

Pursuant to the E&Y Agreement, Sutherland is responsible for the Court Equivalent Fee, or a fee specified by the arbitration provider, whichever is less; arbitration fees and costs are to be shared equally between the parties. (Reece Decl. Exh. D ¶ IV.P.) Sutherland has submitted an uncontested affidavit stating that arbitration fees would amount to $24,000, and that the applicable Court Equivalent Fee is $350. (Folkenflik Decl. ¶ 24.) E&Y's offer to pay such costs, which the Court has factored into Sutherland's expenses as detailed above, thus lessens her burden by $12,350. Although this amount is not insignificant, it is hardly enough to allow Sutherland to bring her claims on an individual basis: she would still be required to spend approximately $200,000 on attorney's fees and costs, as well as expert fees, in order to recover double her overtime loss of approximately $1,867.02.

approach, which "depends upon a showing that the size of the recovery received by <u>any</u> individual plaintiff will be too small to justify the expenditure of bringing an individual action." <u>Amex</u>, 554 F.3d at 320.  Sutherland has satisfied her burden on that score.

E&Y also cites to authorities in which the cost-recovery differential was held not to preclude the prosecution of claims on an individual basis.  Such decisions are either inapposite or unpersuasive.  In <u>Pomposi v. GameStop, Inc.</u>, for instance, a class waiver was enforced where the amount in controversy was $11,000, and plaintiff's total fees and costs ranged from $46,000 to $62,000.  09 Civ. 0340, 2010 WL 147196, at *7 (D. Conn. Jan. 11, 2010).  The court in <u>Pomposi</u> did not, however, meaningfully discuss plaintiff's ability to retain counsel notwithstanding the differential between potential costs and recovery.  E&Y cites <u>Ornelas v. Sonic-Denver T, Inc.</u>, No. 06 Civ. 253, 2007 WL 274738 (D. Colo. Jan. 29, 2007), as standing for the proposition that "compelling arbitration would not preclude plaintiff from pursuing his claims where damages were at least $3500." (Def. Mem. at 12.)  But the plaintiff in <u>Ornelas</u> was allegedly entitled to (i) a trebling of the approximately $3500 in actual damages, and (ii) unspecified punitive damages and interest.  <u>Id.</u> at *6.  Moreover, the plaintiff in <u>Ornelas</u> apparently would not incur any expert witness fees.  <u>Id.</u> at *7.  Finally, E&Y offers <u>Anglin v. Tower Loan of Miss., Inc.</u>, 635 F. Supp. 2d 523 (S.D. Miss. 2009) as precedent for "compelling arbitration where damages, attorney's fees and punitive damages would result in [a] recovery of over $5,000." (Def. Reply at 12.)  The nub of <u>Anglin</u>, however, was that the plaintiff "made no effort" to demonstrate the prohibitive costs of individual arbitration.  <u>Anglin</u>, 635 F. Supp. 2d at 529.  By contrast, Sutherland has "substantial[ly] demonstrat[ed]" that an inability to prosecute her claims on a class basis "would be tantamount to an inability to assert [her] claims at all." <u>Amex</u>, 554 F.3d at 302-03 n.1.

      2.      Ability to Obtain Legal Representation

Even if Sutherland were willing to incur approximately $200,000 to recover a few thousand dollars, she would be unable to retain an attorney to prosecute her individual claim. This is due largely to the E&Y Agreement's obstacles to reimbursement of fees and expenses. <u>Whether</u> attorney's fees and expenses incurred during arbitration are compensable is subject to the discretion of the arbitrators. (Reece Decl. Exh. D ¶ IV.P.3.) The <u>amount</u> of such reimbursement is also left to the arbitrators' discretion. (<u>See</u> <u>id.</u> (arbitrators may award attorney's fees, "<u>in whole or part</u>, in accordance with applicable law or in the interest of justice"); 29 U.S.C. § 216(b) (providing for the reimbursement of "reasonable" attorney's fees).)

In light of the foregoing, Sutherland cannot reasonably be expected to retain an attorney to pursue her individual claim, and E&Y has not submitted an affidavit stating otherwise. Sutherland cannot afford to advance the fees and costs in order to hire an attorney on an hourly basis: she has remained unemployed since her termination from E&Y in December 2009; she has no savings, and owes $35,000 in student loans. (Sutherland Decl. ¶ 5.) Counsel for Sutherland will not prosecute her individual claim without charge, and will not advance the required costs where the E&Y Agreement's fee-shifting provisions present little possibility of being made whole. (Folkenflik Decl. ¶ 25.) As the uncontested affidavit of Sutherland's counsel reflects, Sutherland would find no attorney willing to represent her under the circumstances. (<u>Id.</u> ¶ 27.) <u>Cf.</u> <u>Kristian</u>, 446 F.3d at 60 ("[I]t would not make economic sense for an individual to retain an attorney to handle one of these cases on an hourly basis and it is hard to see how any lawyer could advise a client to do so.") (internal quotations omitted).

Sutherland's only option in pursuing her individual claim is thus to retain an attorney on a contingent fee basis. But just as no rational person would expend hundreds of thousands of

-10-

dollars to recover a few thousand dollars in damages, "no attorney (regardless of competence) would ever take such a case on a contingent fee basis." Caban v. J.P. Morgan Chase & Co., 606 F. Supp. 2d 1361, 1371 (S.D. Fla. 2009); see also Folkenflik Decl. ¶ 27. Cf. Kristian, 446 F.3d at 59 ("[I]t would not make economic sense for an attorney to agree to represent any of the plaintiffs in these cases in exchange for 33 1/3% or even a greater percentage of the individual's recovery.") (internal quotations omitted). E&Y has submitted no evidence that an attorney would expend approximately $200,000 in time and costs in return for a mere chance to earn potentially one-third of Sutherland's less than $4,000 recovery.

If Sutherland could aggregate her claim with the claims of others similarly situated,[7] however, she would have no difficulty in obtaining legal representation. (See Folkenflik Decl. ¶ 25; see also Pl. Reply at 3.) This is because class proceedings "achieve economies of time, effort, and expense . . . ." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 616 (1997) (internal quotations omitted).

### 3. The Practical Effect of Waiver

Enforcement of the class waiver provision in this case would effectively ban all proceedings by Sutherland against E&Y. She will be unable to pursue her claims, even if they are meritorious. As a result, E&Y would enjoy de facto immunity from liability for alleged violations of the labor laws. The legislative purposes in enacting such laws—including, for example, combating "labor conditions detrimental to the maintenance of the minimum standard of living," FLSA § 2(a), 29 U.S.C. § 202(a), and assuring workers "additional pay to compensate them for the burden of a workweek beyond" 40 hours per week, In re Novartis Wage and Hour Litig.

---

[7] Sutherland states that there are "in excess of 5,000" potential class members. (Pl. Opp. at 25.)

Litig. 611 F.3d 141, 150 (2d Cir. 2010)—would go unfulfilled. "Corporations should not be permitted to use class action waivers as a means to exculpate themselves from liability for small-value claims." Dale v. Comcast Corp., 498 F.3d 1216, 1224 (11th Cir. 2007).

    4. Summary

Having examined the totality of the facts and circumstances, the Court finds that the class waiver provision here at issue is unenforceable because it prevents Sutherland from vindicating her statutory rights. See Amex, 554 F.3d at 302-03 n.1.

V. Future Proceedings

Although the class waiver provision is unenforceable, the Court cannot order E&Y to submit to class arbitration. After the offending provision is severed from the E&Y Agreement, (see Reece Decl. Exh. D ¶ V.F), the Agreement is rendered silent as to whether class arbitration is permissible. In accordance with Stolt-Nielsen, class arbitration may not be imposed on parties whose arbitration agreements are silent on the permissibility of class proceedings. 130 S.Ct. at 1764, 1775. See also Fensterstock v. Educ. Fin. Partners, 611 F.3d 124, 140 (2d Cir. 2010). The Court must accordingly deny E&Y's motion to compel arbitration.

VI. Conclusion

For the reasons stated above, the Court DENIES E&Y's motion in its entirety, (Dkt. Entry No. 27), and declines to dismiss or stay any court proceedings herein.

    SO ORDERED.

DATED: New York, New York
     March 2, 2011

                  _____
                  KIMBA M. WOOD
                  United States District Judge