UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE SUTHERLAND, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>ERNST & YOUNG LLP,<br><br>    Defendant. | Civ. Action No. 10-CV-3332 (KMW)(MHD) |

**REPLY MEMORANDUM IN SUPPORT OF
ERNST & YOUNG LLP'S MOTION FOR RECONSIDERATION**

AKIN GUMP STRAUSS HAUER & FELD LLP

Daniel L. Nash
Joel M. Cohn
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564
Telephone: 202-887-4000
Facsimile: 202-887-4288
dnash@akingump.com
jcohn@akingump.com

Estela Díaz
One Bryant Park
New York, NY 10036
Telephone: 212-872-1000
Facsimile: 212-872-1002
ediaz@akingump.com

Attorneys for Defendant Ernst & Young LLP

## **TABLE OF CONTENTS**

Page

**ARGUMENT** ................................................................................................................... 2

I.  The Arbitration Agreement And Ernst & Young's Stipulation Leave No Doubt That Sutherland's Attorney's Fees And Costs Are Recoverable In Arbitration. ............................................................................................................. 2

II. New Evidence Contradicts The Declarations That The Court Relied On In Its Order. ................................................................................................................. 5

III. The Second Circuit's Recent Decision in *American Express II* Justifies Reconsideration. ..................................................................................................... 7

**CONCLUSION** ................................................................................................................ 10

Plaintiff Stephanie Sutherland cannot dispute that the parties' agreement creates *no* "obstacles" whatsoever to the recovery of fees and costs in arbitration; that she recently acknowledged her ability to pursue an individual claim to advance her interests in discovery, after having sworn that she could not proceed individually when that helped her avoid arbitration; and that she purposefully understated her potential recovery in hopes of voiding her agreement. These incontrovertible facts prevent a finding that Sutherland has carried her burden of proving that the agreement precludes her from vindicating her rights. Accordingly, they require reconsideration of the Court's Order.

Sutherland's response is to distort the record and the law. She perpetuates misconceptions about the evidence, contending, for example, that it is "far from clear" that she is entitled to attorneys' fees if she prevails in arbitration, even though the record proves this point beyond dispute (Opp. at 8); that the Court's finding regarding the availability of fees was not "controlling," even though the Order states that Sutherland could not find an attorney "due largely to the E&Y Agreement's obstacles to reimbursement of fees and expenses" (*id.* at 8); that she has expressed no "willingness to proceed individually," even though she told the Court that "[c]ertainly we'd still have the plaintiff's claim that we could pursue" if class certification is denied (*id.* at 6); that the "full arbitration cost" would be too expensive, even though all of those costs would be incurred in court litigation as well (*id.* at 9); and that the "ultimate question" for the Court to decide is whether she should arbitrate "in the hope of receiving $1,867.02," even though she now concedes that her potential recovery is substantially higher (*id.* at 9). Sutherland also perpetuates misconceptions about the governing law, including by arguing that arbitrators "are reluctant to make substantial fee-shifting awards," even though any such award in this case must be made *in accordance with the law* and thus is not subject to an arbitrator's whimsy (*id.* at

1

9); that Ernst & Young failed to submit evidence concerning her actual damages, even though it is *her* burden to prove that arbitration would be cost-prohibitive (*id.* at 5); and that Ernst & Young failed to prove that she need not incur expert costs in arbitration, even though it is *her* burden to show that she would incur prohibitive costs (*id.*).

When these distortions are untangled, and when the record is properly understood, it becomes clear that Sutherland has not met her burden of proving that she may evade the contract to which she freely agreed.  Indeed, accepting her arguments would effectively allow every plaintiff to escape a valid arbitration agreement simply by understating their potential recovery and offering their lawyer's testimony about what arbitrators and other lawyers he knows tend to do.  In enforcing the "liberal federal policy favoring arbitration," the Supreme Court requires far more.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

## ARGUMENT

I.  The Arbitration Agreement And Ernst & Young's Stipulation Leave No Doubt That Sutherland's Attorney's Fees And Costs Are Recoverable In Arbitration.

The Court committed clear error by finding that Sutherland would be unable to vindicate her statutory rights due "largely" to the arbitration agreement's "obstacles to reimbursement of fees and expenses" (Order at 10), because, in fact, the agreement creates no such obstacles and instead ensures that fees and costs are recoverable in arbitration to the same degree as in court. In opposing reconsideration, Sutherland contends that the Court's findings on this point were neither erroneous nor controlling.  The undisputed record proves otherwise.

First, the Court erred in finding that "[w]hether attorney's fees and expenses incurred during arbitration are compensable is subject to the discretion of arbitrators" and that "fee-shifting provisions present little possibility of being made whole" in arbitration.  Order at 10 (emphasis in original); *see also* Opp. at 8 ("the Court interpreted [the agreement] as giving the

2

arbitrator discretion over whether to award fees *at all*") (emphasis added).  The parties' agreement explicitly mandates a fee award "in accordance with applicable law," which *requires* that a prevailing plaintiff be awarded her fees.  Sutherland's argument that it remains "far from clear" whether an arbitrator must award her fees if she prevails is contrary to the agreement itself, Ernst & Young's stipulation, and federal and New York law, all of which make it unmistakably clear that she is entitled to fees if she prevails and that her "possibility of being made whole" would be exactly the same in arbitration as in court.[1]  Reply (Docket No. 37) at 5 (Sutherland "is entitled to recover in arbitration *any* fees and costs that she could recover in court if she prevails on her claims.") (emphasis added).  Sutherland should not be permitted to avoid reconsideration by continuing to perpetuate misconceptions about the indisputable record.

Sutherland next contends that the Court's erroneous findings regarding the availability of attorneys' fees in arbitration do not justify reconsideration because those findings were not "controlling." Opp. at 8.  The clear language of the Order proves otherwise.  The Court held the parties' agreement unenforceable based on its finding that Sutherland could find no attorney to prosecute her individual claim "due largely to the E&Y Agreement's obstacles to reimbursement of fees and expenses." Order at 10.  One such "obstacle," the Court found, was that "[w]hether attorney's fees and expenses incurred in arbitration are compensable is subject to the discretion of arbitrators." Order at 10.  These findings were crucial to the Court's holding.  Because they

---

[1] Sutherland argues, for the very first time, that a defendant's stipulation to ensure the enforceability of an arbitration agreement should be disregarded for "public policy" reasons. Opp. at 8.  This argument is contrary to established law.  The cases cited in Ernst & Young's initial brief and arbitration motion make clear that where a defendant offers to pay a prevailing party's attorney's or arbitrator fees, plaintiff could not "possibly show that the arbitration costs could preclude them from effectively vindicating their federal statutory rights in arbitration." *See In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 412 (S.D.N.Y. 2003); Reply at 6.

3

are wrong—again, it is incontrovertible that the agreement creates *no* "obstacles" to the recovery of fees and expenses—reconsideration is proper.[2] Mot. at 2-3.

Second, the Court erred to the extent that it found that Sutherland could be ordered to pay Ernst & Young's attorneys' fees if she loses in arbitration. Sutherland contends that the Court made no such finding, but the Order suggests otherwise. It states that Sutherland's counsel "will not prosecute her individual claim" or "advance the required costs where the E&Y Agreement's fee-shifting provisions present little possibility of being made whole," citing the paragraph of counsel's declaration in which he claimed that there was a "risk of adverse cost shifting in the event of loss." Order at 10; Folkenflik Decl. ¶ 25. As shown in the initial brief, there is no possibility that Sutherland could be responsible for Ernst & Young's fees in arbitration. Accordingly, if the Court found otherwise, that finding is clearly erroneous, and thus reconsideration is proper.

In short, the undisputed record shows that the agreement creates no obstacles to Sutherland's ability to recover fees and expenses in arbitration. As a result, arbitration would present no costs above and beyond those that would be incurred in court. On this record, Sutherland cannot satisfy her burden of showing a cost differential between arbitration and litigation that is so substantial that she would be precluded from arbitrating her claims, as *Green*

---

[2] Sutherland also contends that the Court's erroneous findings regarding the availability of attorneys' fees were not controlling because other facts influenced the Court's decision as well, including the arbitrator's discretion over the amount of any fee award. This argument is another example of Sutherland perpetuating misconceptions about the agreement and the law. The agreement makes crystal clear that the arbitrator must award fees "in accordance with the law," exactly as a court would. Accordingly, this provision creates no "obstacle" to vindication of Sutherland's rights in arbitration. In any event, Sutherland's only "evidence" that arbitrators "are reluctant to make substantial fee-shifting awards" (Opp. at 9) is her lawyer's self-serving declaration concerning his "experience" and that of "arbitrators and attorneys" with whom he has discussed the matter. Folkenflik Decl. (Docket No. 34) ¶ 26. She cites no actual arbitral awards or even testimony from her lawyer's friends and colleagues.

4

Case 1:10-cv-03332-KMW -MHD   Document 85   Filed 04/21/11   Page 7 of 14

*Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000), and its progeny require. Mot. at 4-5. Ernst & Young's motion, therefore, should be granted.[3]

II.     New Evidence Contradicts The Declarations That The Court Relied On In Its Order.

At a hearing the day after the Court issued the Order, Sutherland's counsel insisted that merits discovery should proceed—even though she will be left with only her individual claim if her class motion is denied—because "[c]ertainly we'd still have the plaintiff's claim that we could pursue." This position squarely contradicts Sutherland's prior statements, on which the Court relied in denying the motion to compel arbitration, that she "surely" would not pursue an individual claim and that no attorney would represent her in that circumstance. Sutherland's attempts to explain away her admission in open Court should be rejected.

First, Sutherland denies that she expressed "willingness to proceed individually," claiming that she only noted the "theoretical possibility" of doing so. Opp. at 6. Not so. In direct response to the Court's question about whether her discovery "would be mooted" if class certification "were denied," Sutherland explained that discovery should proceed regardless because "[c]ertainly we'd still have the plaintiff's claim that we could pursue." 3/4/11 Hearing Tr. (Docket No. 81) at 59:12-17. That, according to Sutherland, was one "possibilit[y]" that justified further discovery at this juncture.[4] *Id.* When Ernst & Young explicitly noted that this

---

[3] Sutherland asserts that the costs of arbitration should be compared to those in a class action, as opposed to those in an individual litigation. Opp. at 2. *American Express II*, however, noted that *Green Tree* was "controlling" regarding a party's burden to show the likelihood of incurring prohibitive arbitration costs. *In re American Express Merchs.' Litig.* ("*Amex II*"), 634 F.3d 187, 197 (2d Cir. 2011). Under *Green Tree*, the "appropriate inquiry is one that evaluates . . . the expected cost differential between arbitration and litigation in court." *See Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 (4th Cir. 2001).

[4] The other "possibilit[y]" that justifies discovery, according to Sutherland, is that she could proceed with an individual claim "with an eye toward later seeking certification." Opp. at 6; 3/4/11 Hearing Tr. at 59:12-17. She has cited no law, and Ernst & Young is aware of none, that permits a plaintiff whose class certification motion has been denied to simply take more discovery and then try again. Leaving aside this *im*possible scenario, only one "possibility" remains if class certification is denied: Sutherland will pursue her individual claim.

5

position contradicted her prior representations to the Court concerning her inability to pursue an individual claim (*id.* at 63:24-64:16), Sutherland *reiterated* her position, insisting again that discovery regarding her individual claim should proceed. *Id.* at 71:16-20.  Even in response to the instant motion, rather than unequivocally state that she could not proceed with an individual claim, Sutherland keeps her options open, cagily noting that she "*did not express any opinion*" about what she might do if left with an individual claim. Opp. at 6.  In short, Sutherland has argued that she cannot proceed individually when it suits her (in opposing the arbitration motion), but makes the opposite representation when it does not (in seeking discovery).  Given her admission contradicting a fact that is crucial to this Court's holding, she cannot be found to have proved, as she must, that being compelled to arbitrate on an individual basis would prevent her from vindicating her rights.

Second, Sutherland argues that, even if she is willing to proceed individually in Court, there is no evidence that "any attorney would proceed in an individual arbitration." Opp. at 7. This argument again perpetuates the misconception about the parties' agreement that precipitated the instant motion.  As explained in Ernst & Young's initial brief and above, there is no difference between proceeding individually in court and proceeding individually in arbitration— in terms of recovery, costs, fees, or otherwise.  Accordingly, Sutherland has no basis for contending that she could proceed individually in court but not in arbitration.  Indeed, as Ernst & Young demonstrated in its initial brief, because a prevailing party is entitled to recover her attorney's fees, plaintiffs routinely file individual overtime actions for similar amounts of damages—*both in court and arbitration*—and find attorneys to represent them. Mot. at 6-7. Sutherland offers no response to this evidence and authority.[5]

---

[5] Unable to address the authority and evidence that plaintiffs and lawyers routinely pursue claims like hers on an individual basis, Sutherland again relies exclusively on her own lawyer's

6

Because new evidence contradicts the factual basis for the Order's pivotal conclusion—that Sutherland could not pursue an individual action—Ernst & Young's motion to enforce the parties' agreement should be granted.

III.     The Second Circuit's Recent Decision in *American Express II* Justifies Reconsideration.

Sutherland claims that *In re American Express Merchs.' Litig.* ("*Amex II*"), 634 F.3d 187, 197 (2d Cir. 2011), does not constitute a change in the law justifying reconsideration because the earlier decision, *In re American Express Merchs.' Litig.* ("*Amex I*"), 554 F.3d 300 (2d Cir. 2009), was "the law of the circuit." Opp. at 4. Yet *Amex I* was not controlling authority when the Court issued the Order because it had been remanded by the Supreme Court and thus could have been modified or even reversed. When the Second Circuit decided *Amex II*—after this Court issued the Order—only then did it definitively determine the burden Sutherland bears in attempting to evade an otherwise enforceable arbitration agreement. In short, the Second Circuit's holding on this point was not "controlling law" when Ernst & Young filed its motion but became so only thereafter. Where "there has been a change in controlling law," as Sutherland concedes, reconsideration is warranted. Opp. at 3.

The issuance of *Amex II* is significant because it establishes that the burden of proving that arbitration is cost-prohibitive belongs to Sutherland alone. *See Amex II*, 634 F.3d at 197 (when "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.") (citing *Green Tree*, 531 U.S. at 92) (internal quotations omitted). Yet the Order

---

unsubstantiated and conclusory statement that "arbitrators are particularly unwilling to award attorney's fees." Opp. at 6. Such a self-serving statement cannot provide a basis for voiding her agreement given the "liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24.

7

suggests—and Sutherland continues to contend—that *Ernst & Young* was responsible for proving that individual arbitration was possible. This analysis cannot be squared with *Amex II*.

First, Ernst & Young has demonstrated that Sutherland's showing of her potential recovery was entirely insufficient because she purposefully underestimated this amount. Rather than provide an accurate estimate of her potential recovery, as the plaintiffs' expert did in *Amex*, Sutherland refused to account for the overtime hours she allegedly worked but did not record, even though this information is exclusively within her control. Folkenflik Decl. (Docket No. 34) ¶ 8 (computation of $1,867.02 in overtime damages "does not include additional overtime hours which Ms. Sutherland will testify she worked, but did not document.") She is now forced to concede that her potential recovery may be more than *10 times* the amount she represented in trying to avoid arbitration—suggesting a "fivefold" increase in damages to at least $9,000, plus an equal amount in liquidated damages, plus interest. Opp. at 5, n.1.

Sutherland's defense of her strategy of understating her potential recovery is totally unavailing. She first contends that the Court already rejected Ernst & Young's argument about her damages, but it did so by impermissibly shifting the burden to Ernst & Young, declining to consider Sutherland's true damages because "*neither party* submitted competent evidence" on this point. Order at 7, n.4 (emphasis added). *Amex II* makes clear that Sutherland, alone, was responsible for showing that arbitration would be cost-prohibitive, and that showing could not possibly be made absent accurate information regarding her potential recovery. Sutherland next contends that any "any possible difference" between her true potential recovery and her low-ball estimate would be "insignificant." Opp. at 5. But since the Court has never considered the actual amount at stake, this legal conclusion is pure conjecture.

8

In short, Sutherland has offered no evidence of the amount actually at stake, has conceded that her prior representations on this point are wrong and that the true amount may be *10 times* greater than the number the Court relied on, and continues to falsely claim that the "ultimate questions" concern whether she should arbitrate *"in the hope of receiving $1,867.02."* Opp. at 9 (emphasis added). Absent proof of the amount truly at stake, she has precluded any meaningful analysis of whether arbitration would be cost-prohibitive and thus has failed to meet her burden under *Amex II*.

Second, Sutherland's proof of possible expert costs is likewise deficient. In *Amex II*, the expert opined that "even in a non-class action involving an individual plaintiff," a plaintiff would require an antitrust study costing at least several hundred thousand dollars. 634 F.3d at 198 (emphasis added). In contrast, Sutherland's expert did not suggest that expert services were required to prosecute an individual overtime claim, but rather just listed the topics of his possible testimony. Nor did Sutherland present the "opinion as a professional economist" that "it would not be worthwhile for an individual plaintiff . . . to pursue individual arbitration or litigation." *Id.* at 198. Rather, her attorney reached that conclusion.

In response to these points, Sutherland once again perpetuates misconceptions about the burden of proof and the parties' agreement. She first states that the Court previously rejected this argument because *"Defendant* 'offer[ed] no competent evidence in support of its position." Opp. at 5 (emphasis added). But it was Sutherland's burden to prove that arbitration would be cost-prohibitive (*e.g.*, due to expert costs), not Ernst & Young's burden to prove the opposite. She next contends that expert costs are irrelevant because the Court found that arbitration would be too expensive regardless of whether Sutherland used an expert. *Id.* But, as shown above, this conclusion rests on the misconception that, under the parties' agreement, attorney's fees are not

9

available in arbitration to the same degree as in Court. Clear of these misconceptions, Sutherland's showing regarding expert costs falls well short of the showing in *Amex II*.

In short, permitting a plaintiff to evade a valid arbitration agreement by purposefully understating her potential recovery and on the basis of unsubstantiated litigation costs—costs that would be incurred equally in court and arbitration—cannot be squared with the burden set forth in *Amex II*, let alone the "liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24.

## CONCLUSION

For the foregoing reasons and the reasons set forth in its opening brief, Ernst & Young requests that the Court reconsider the Order denying its motion to dismiss plaintiff's complaint and compel the arbitration of her individual claims pursuant to the FAA, or in the alternative, stay proceedings while her individual claims are arbitrated.

Dated: April 21, 2011

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

By: /s/ Daniel L. Nash
    Daniel L. Nash
    Joel M. Cohn
    Estela Díaz

Attorneys for defendant Ernst & Young LLP

## CERTIFICATE OF SERVICE

I hereby certify that, on April 21, 2011 I caused to be served via the Court's Electronic Case Filing system a true and correct copy of Ernst & Young LLP's Reply Memorandum in Support of Ernst & Young LLP's Motion for Reconsideration on registered counsel:

Max Folkenflik, Esq.
Folkenflik & McGerity
1500 Broadway, 21st Floor
New York, NY 10036
mfolkenflik@fmlaw.net

Leon Marc Greenberg
Leon Greenberg
633 South 4th Street #9
Las Vegas, NV 89101
wagelaw@aol.com

Dated: April 21, 2011
       New York, New York

_____/s/_____
Estela Díaz