UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE SUTHERLAND, on behalf of herself and all others similarly situated,<br><br>       Plaintiff,<br><br>   v.<br><br>ERNST & YOUNG LLP,<br><br>       Defendant. | Civ. Action No. 10-CV-3332 (KMW)(MHD) |

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
ERNST & YOUNG LLP'S MOTION FOR RECONSIDERATION

AKIN GUMP STRAUSS HAUER & FELD LLP

Daniel L. Nash
Joel M. Cohn
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564
Telephone: 202-887-4000
Facsimile: 202-887-4288
dnash@akingump.com
jcohn@akingump.com

Estela Díaz
One Bryant Park
New York, NY 10036
Telephone: 212-872-1000
Facsimile: 212-872-1002
ediaz@akingump.com

Attorneys for Defendant Ernst & Young LLP

This memorandum explains how *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011), impacts the Order denying Ernst & Young's motion to compel arbitration, which is the subject of a pending motion for reconsideration.

I.	The Supreme Court's Recent Decision in *Concepcion*

In *Concepcion*, the Supreme Court considered "whether the [Federal Arbitration Act] prohibits States from conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures." *Id.* at 1751.  At issue was California's *Discover Bank* rule, which was a "rule classifying most collective-arbitration waivers in consumer contracts as unconscionable." *Id.* at 1746.

The Supreme Court explained that while the FAA "preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." *Id.* at 1748.  The FAA's "overarching" objective, the Court found, "is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.*  The Court determined that "[r]equiring the availability of classwide arbitration interferes" with this objective because class arbitration is fundamentally different from the bilateral arbitration Congress envisioned.  *Id.*

The Court then found that the *Discover Bank* rule effectively required class arbitration or no arbitration at all.  This was true in spite of the rule's requirements purporting to limit its application.  For example, while the rule "requires that damages be predictably small," the Court found this requirement "toothless and malleable," noting that "the Ninth Circuit has held that damages of $4,000 are sufficiently small." *Id.* at 1750 (citation omitted).  Further, while the rule requires that "the consumer allege a scheme to cheat customers," the Court found that this requirement "has no limiting effect, as all that is required is an allegation." *Id.*

1

Absent any meaningful limitations, the rule created an environment in which "there is little incentive for lawyers to arbitrate on behalf of individuals when they may do so for a class and reap far higher fees in that process." *Id.* As a result, companies are "faced with inevitable class arbitration" or no arbitration at all. *Id.* at 1750. The rule thus stood "as an obstacle to the accomplishment and execution of the full purposes and objectives" of the FAA and, therefore, could not be enforced. *Id.* at 1753 (citation omitted).

II.     The Application of *Concepcion* To This Court's Order

The Order cannot survive *Concepcion* because it disfavors arbitration exactly as did the *Discover Bank* rule, in that both "condition[ed] the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures." *Id.* at 1744.

The Order is based on the same principle as the *Discover Bank* rule. As explained by the California Supreme Court, the *Discover Bank* rule was concerned that arbitration agreements that precluded class actions could be "exculpatory in practical terms because it can make it very difficult for those injured by unlawful conduct to pursue a legal remedy." *Gentry v. Super. Ct.*, 42 Cal. 4th 443, 457 (2007). Likewise, the Order expresses the concern that corporations would "use class action waivers as a means to exculpate themselves from liability for small-value claims." *Sutherland v. Ernst & Young LLP*, 10-CV-3332 (KMW), 2011 WL 838900, at *6 (S.D.N.Y. Mar. 3, 2011) (citation and annotation omitted).

In attempting to address this concern, the Order applied a test that, like the *Discovery Bank* rule, includes no meaningful limits. Under the Order, a plaintiff who knowingly contracted to arbitrate her claims can evade an otherwise enforceable agreement by showing that her "maximum potential recovery would be too meager to justify the expenses required for the individual prosecution of her claim." *Id.* at *4. As explained in the pending reconsideration

motion, Sutherland made this showing by purposefully understating her potential recovery; by submitting a self-serving declaration from her attorney regarding what arbitrators and lawyers he knows tend to do; and by stating in a declaration, which she later contradicted, that she could not pursue an individual claim.  If this showing suffices, then arbitration can be avoided in virtually any case.  A rule so easily manipulated is no less "toothless and malleable" than the one the Supreme Court struck down.

Moreover, the assertion that class proceedings are necessary for Sutherland to enforce her rights is not only belied by the record in this case, but is irrelevant.  In *Concepcion*, the Supreme Court noted the dissent's argument, like Sutherland's, that "class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system." *Concepcion*, 131 S.Ct. at 1753; *see also id.* at 1761 (Breyer, J., dissenting) (citing *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) for the proposition that "only a lunatic or fanatic sues for $30," and asking, "What rational lawyer would have signed on to represent the Concepcions in litigation for the possibility of fees stemming from a $30.22 claim?")  The Court rejected this argument because "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Concepcion*, 131 S.Ct. at 1753.

In short, the rule applied in the Order would have no "limiting effect" on the application of the vindication of statutory rights analysis and thus would serve to invalidate most, if not all, agreements containing class action waivers.  As a result, under the Order, companies like Ernst & Young are "faced with inevitable class arbitration" or no arbitration at all.  *Id.* at 1750, 1752. The rule this Court applied, like the *Discover Bank* rule, thus stands "as an obstacle to the accomplishment and execution of the full purposes and objectives" of the FAA.  *Id.* at 1753 (citation omitted).

III.	Sutherland's Attempt to Distinguish *Concepcion*

Although *Concepcion* holds that a rule is inconsistent with the FAA if it effectively requires class arbitration or no arbitration at all—exactly like the Order does—Sutherland contends that it has no application here because the Supreme Court addressed a state rule regarding unconscionability, rather than a "federally established rule" regarding vindication of rights.  Declaration of Gregory Knopp ("Knopp Decl."), Ex. A.  This distinction is immaterial.  As shown above, both rules are means to the same end: purportedly ensuring that plaintiffs with low-value claims can protect their rights.

Moreover, both rules are rooted in Section 2 of the FAA.  That section not only preserves certain state law defenses to arbitration, but also is "the primary substantive provision" of the FAA and thus "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the" FAA.  *See In re Am. Express Merchs.' Litig.*, 634 F.3d 187, 194 (2d Cir. 2011) ("*Amex II*") (citation omitted).[1]  The Supreme Court made it crystal clear that Section 2 cannot "be construed as [allowing] a common law right, the continued existence of which would be absolutely inconsistent with the provisions of the act."  *Concepcion,* 131 S.Ct at 1748 (citations and internal quotation omitted).  Section 2 cannot be read as *prohibiting* common law defenses that disfavor arbitration, while simultaneously *creating* parallel federal defenses that do exactly that.

To be clear, Ernst & Young does not contend that the Supreme Court necessarily overturned *Randolph* or rejected the "vindication of statutory rights" defense to arbitration.  Rather, *Concepcion* simply makes clear that a rule, like that applied in the Order, cannot stand if it effectively requires class arbitration or no arbitration at all.  If the "vindication of statutory

---

[1]  The Second Circuit recently ordered the parties to brief "how *Concepcion* applies" to *Amex II*.  *See* Knopp Decl., Ex B.  That briefing will be completed on June 3, 2011.

4

rights" defense remains intact, it must be applied as the Supreme Court intended in *Randolph*. Specifically, the proper inquiry is whether an agreement imposes costs *unique to arbitration* that would effectively preclude access to that forum.  *See Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 90-91 (2000); Mot. at 5; *EEOC v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 2d 458, 462-63 (E.D.N.Y. 2006) ("Most district courts in the Second Circuit have adopted [*Bradford*'s] case-by-case analysis that focuses on the claimant's ability to pay the arbitration fees and costs and the expected cost differential between arbitration and litigation.") (citing cases).  Because Sutherland would incur *no* costs unique to arbitration, she cannot prove that *arbitration* would prevent her from vindicating her rights.  Thus, under *Randolph*—as properly understood in light of *Concepcion*—she cannot avoid the arbitration to which she agreed.

     For the foregoing reasons and the reasons set forth in its motion for reconsideration, Ernst & Young requests that the Court reconsider the Order denying its motion to dismiss plaintiff's complaint and compel the arbitration of her individual claims pursuant to the FAA, or in the alternative, stay proceedings while her individual claims are arbitrated.

Dated:  May 27, 2011            Respectfully submitted,

                                             AKIN GUMP STRAUSS HAUER & FELD LLP

                                             By:  /s/ Daniel L. Nash_____
                                                    Daniel L. Nash
                                                    Joel M. Cohn
                                                    Estela Díaz

                                            Attorneys for defendant Ernst & Young LLP

## CERTIFICATE OF SERVICE

      I hereby certify that, on May 27, 2011, I caused to be served via the Court's Electronic Case Filing system a true and correct copy of the Supplemental Memorandum in Support of Ernst & Young LLP's Motion for Reconsideration on registered counsel:

| | |
|---|---|
| Max Folkenflik, Esq. | Leon Greenberg |
| Folkenflik & McGerity | 633 South 4th Street #9 |
| 1500 Broadway, 21st Floor | Las Vegas, NV 89101 |
| New York, NY 10036 | wagelaw@aol.com |
| mfolkenflik@fmlaw.net | |

Dated: May 27, 2011
        New York, New York

                                                                                              /s/
                                                                              Estela Díaz