UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE SUTHERLAND, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>   v.<br><br>ERNST & YOUNG LLP,<br><br>      Defendant. | Civ. Action No. 10-CV-3332 (KMW)(MHD) |

SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF
ERNST & YOUNG LLP'S MOTION FOR RECONSIDERATION

AKIN GUMP STRAUSS HAUER & FELD LLP

Daniel L. Nash
Joel M. Cohn
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564
Telephone: 202-887-4000
Facsimile: 202-887-4288
dnash@akingump.com
jcohn@akingump.com

Estela Díaz
One Bryant Park
New York, NY 10036
Telephone: 212-872-1000
Facsimile: 212-872-1002
ediaz@akingump.com

Attorneys for Defendant Ernst & Young LLP

I.      The Order is Inconsistent with *Concepcion*.

Ernst & Young has demonstrated that the Order, exactly like the *Discover Bank* rule, effectively requires class arbitration or no arbitration at all—a result that stands as "an obstacle to the accomplishment and execution of the full purposes and objectives" of the Federal Arbitration Act ("FAA"). *See AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1742, 1753 (2011) (citation omitted). Sutherland does not—and cannot—dispute this fact. Instead, she attempts to manufacture distinctions between the Order and the *Discover Bank* rule, but no meaningful distinctions exist.

Sutherland first claims that the *Discover Bank* rule was a "blanket" rule requiring classwide arbitration, whereas the Order merely applied a "case-by-case 'prohibitive expense' analysis." Opp. at 9-10. In fact, the California Supreme Court made clear that *Discover Bank* did "not hold that *all* class action waivers are necessarily unconscionable." *Discover Bank v. Super. Ct.*, 36 Cal. 4th 148, 162 (2005) (emphasis added), *abrogated by AT&T Mobility LLC v. Concepcion,* 131 S.Ct. 1740 (2011) . Rather, the *Discover Bank* rule was intended to be applied on a case-by-case basis, just like the rule applied in the Order. As discussed in Ernst & Young's opening brief, however, the limitations in both rules are "toothless and malleable" and have "no limiting effect," effectively requiring class arbitration or no arbitration at all. *See Concepcion*, 131 S.Ct. 1753; Mot. (Docket No. 92) at 2-3.

Sutherland next attempts to distinguish *Concepcion* because the Order applied a federal common law defense to arbitration, rather than a state law defense like the *Discover Bank* rule. This distinction is immaterial. The question is whether a doctrine created under a federal statute can be construed in a way that undermines the statute itself. *See Concepcion*, 131 S.Ct. at 1748 (FAA should not be read to "destroy itself"). It clearly cannot. As the Second Circuit

1

recognized in *Amex II*, the vindication of statutory rights analysis is part of the "federal substantive law of arbitrability" created under Section 2 of the FAA, the *same section* that preserves state law defenses to arbitration. *See In re Am. Express Merchants' Litig.*, 634 F.3d 187, 194 (2d Cir. 2001) ("*Amex II*") (internal quotations omitted). Section 2 cannot be read as preventing a state law defense that disfavors arbitration in contravention of the FAA, while simultaneously creating a virtually identical federal law defense that does exactly that. *See D'Antuono v. Serv. Road Corp.*, No. 3:11cv33, 2011 U.S. Dist. LEXIS 57367, at *80 (D. Conn. May 25, 2011) (applying *Amex II*, but noting that "the Court knows of no principled reason why federal law rules that have essentially the same purpose and effect as the *Discover Bank* rule would continue to be permissible after [*Concepcion*].")[1]

      Finally, Sutherland asserts that Ernst & Young is predicting that the Supreme Court will "reverse or severely limit" *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79 (2000). Opp. at 2. Ernst & Young, however, does not contend that *Concepcion* has implicitly overturned or narrowed *Randolph*. Rather, *Concepcion* simply confirms that the only proper interpretation of *Randolph* is the one that is consistent with the FAA. The vindication of statutory rights defense must be applied as the Supreme Court intended, to determine whether an agreement imposes costs *unique to arbitration* that would effectively preclude access to that forum. *See Randolph*, 531 U.S. at 90-91. *Bradford v. Rockwell Semiconductor Sys., Inc.*, cited by Sutherland, explains that under *Randolph*, the:

---

[1] Both the Second Circuit and Sutherland herself acknowledge that the federal vindication of rights defense and a state law unconscionability defense, like the *Discover Bank* rule, are virtually the same. In *Amex II*, the Second Circuit explained that "whether class action waivers are unconscionable as a matter of state law" is a "different iteration" of the vindication of statutory rights analysis. *Amex II*, 634 F.3d at 199 (citing the recently vacated *Fenstertock v. Educ. Fin. Ptnrs.*, 611 F.3d 124, 140 (2d Cir. 2010), which held that a class action waiver was unenforceable based on the *Discover Bank* rule). Likewise, Sutherland describes the federal vindication of statutory rights defense as the "same rule . . . recognized as a basis for unconscionability under New York law." Opp. at 3.

2

> appropriate inquiry is one that evaluates whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, i.e., a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, *the expected cost differential between arbitration and litigation in court*, and whether that cost differential is so substantial as to deter the bringing of claims.

238 F.3d 549, 556 (4th Cir. 2001) (emphasis added); *see also Brady v. Williams Capital Grp., L.P.*, 14 N.Y.3d 459, 467 (2010) (same); *EEOC v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 2d 458, 462-63 (E.D.N.Y. 2006) (focus of defense is on claimant's ability to pay arbitration fees and costs and the expected cost differential between arbitration and litigation); *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 13 (1st Cir. 2009) (concern under *Randolph* is "whether the arbitration regime . . . is structured so as to *prevent* a litigant from having access to the arbitrator to resolve claims") (emphasis in original). This view of the "vindication of statutory rights" defense is the only one consistent with *Concepcion*, in which the Supreme Court expressly rejected the argument that arbitration agreements are void simply because "class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system." *Concepcion*, 131 S.Ct. at 1753; *see also id.* at 1761 (Breyer, J., dissenting).[2]

II.  The Court Should Consider the Impact of *Concepcion* on the Order.

Ernst & Young's position has always been that Sutherland's agreement to arbitrate is enforceable under *Amex II*. *See* Arbitration Reply (Docket No. 37) at 6-7; Reconsideration Mot. (Docket No. 83) at 8-10. Thus, Ernst & Young is not asking the Court to predict whether or how the Second Circuit or Supreme Court will change *Amex II* after *Concepcion*. Rather, Ernst &

---

[2] Notably, Sutherland cites to *Brady* in explaining that the *Randolph* defense "is the same rule" as a state law unconcionability defense. Opp. at 3. But *Brady* makes clear that the *Randolph* analysis is focused on "whether a litigant can pay the *arbitration* fees and costs" and "the expected cost differential between arbitration and litigation in court." *Brady v. Williams Capital Grp., L.P.,*, 14 N.Y.3d 459, 467 (2010). This is a test that Sutherland cannot meet, since she would bear *no* costs unique to arbitration. At a minimum, *Brady* requires that Sutherland arbitrate her New York law claims.

3

Young contends that intervening Supreme Court authority requires reconsideration of the Order regardless of what becomes of *Amex II*.³

Sutherland, by contrast, argues that the Court should simply ignore the impact of *Concepcion* until *Amex II* is expressly overturned. Opp. at 7. While some of the cases she cites establish the non-controversial position that a Second Circuit decision is binding on courts in this district, none of them suggests that a district court should disregard new Supreme Court authority. *Id.*; *Ithaca Coll. v. NLRB*, 623 F.2d 224, 228 (2d Cir. 1980) (stating only that the NLRB, like a district court, cannot refuse to follow law of the Circuit with which it disagrees); *Heffernan v. Straub*, 655 F. Supp. 2d 378, 380 (S.D.N.Y. 2009) (noting only that on motion for reconsideration in district court, "controlling decisions" include decisions from the Court of Appeals, but not decisions from other Circuits or district courts); *Modern Publ'g v. Landoll, Inc.*, 849 F. Supp. 22, 24 (S.D.N.Y. 1994) (same). Thus, rather than ignore *Concepcion*, the Court may determine the extent to which it affects the Order:

> [I]t would not be appropriate to ignore the impact that the United States Supreme Court's recent decision in [*Concepcion*] may have on the validity of *American Express II* and other lower court cases that have relied on the federal common law of arbitrability to invalidate arbitration agreements.

*See D'Antuono*, 2011 U.S. Dist. LEXIS 57367, at *80 (applying *Amex II* test after *Concepcion* to compel individual arbitration of overtime claims of two plaintiffs who each sought $10,000 in damages, and whose potential recovery also included liquidated damages under the FLSA plus attorney's fees and costs).

---

³ Sutherland argues that because the Court cannot "disregard the Second Circuit's binding precedent *unless* and *until* the Second Circuit or the Supreme Court overrules" *Amex II*, this "alone disposes of Defendant's motion." Opp. at 8. Not so. Ernst & Young moved for reconsideration of the Order on various other grounds before *Concepcion* was decided. See Reconsideration Mot. (Docket No. 83).

Moreover, if *Concepcion* does call *Amex II* into question—an issue that need not be decided—then this Court is not bound to follow it. As Sutherland points out, "[c]ourts in this Circuit are bound to apply [Second Circuit precedent] unless and until its rationale is overruled, *implicitly* or expressly, by the Supreme Court." Opp. at 8, citing *United States v. Polouizzi*, 564 F.3d 142, 160 (2d Cir. 2009) (emphasis added). In *Polouizzi*, the court noted that an existing Second Circuit decision "continue[d] to control because no *intervening* Supreme Court decision undermine[d] the rationale relied on by the panel in that case." 564 F.3d at 161 (emphasis in original); *see also Finkel v. Stratton Corp.*, 962 F.2d 169 (2d Cir. 1992) (decision of prior Second Circuit panel did not dispose of issue "where an intervening Supreme Court decision cast[ ] doubt on the prior ruling."). Such an intervening decision arguably exists here. *See Arway v. Mount. St. Mary's Hosp.*, 227 B.R. 216, 217 (Bankr. W.D.N.Y. 1998) (trial court determined that it was not "bound to follow" prior Second Circuit ruling in light of Supreme Court decision that "cast[ ] doubt upon, but did not clearly undermine," Second Circuit decision).

III.    Sutherland's Other Arguments Against Arbitration Are Meritless.

Sutherland contends that, even if Ernst & Young is right about *Concepcion*, her arbitration agreement is unenforceable for other reasons not addressed in the Court's Order. Those arguments have no place in supplemental briefing regarding the impact of *Concepcion*. But should the Court consider them, they must be rejected for the reasons described in Ernst & Young's original arbitration motion. *See* Arbitration Mot. and Reply (Docket Nos. 28 and 37).

First, Sutherland appears to argue that compelling arbitration would somehow waive her substantive rights under the Fair Labor Standards Act ("FLSA"). Opp. at 11. She has not, however, waived any rights under that statute, but merely agreed to have "those rights adjudicated in an alternative forum." *See Sinnett v. Friendly Ice Cream Corp.*, 319 F. Supp. 2d

5

439, 445 (S.D.N.Y. 2004) (granting motion to dismiss and compel arbitration where plaintiff agreed to arbitrate FLSA claims); Arbitration Mot. (Docket No. 28) at 8-9.  The case Sutherland cites, *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 290 (2d Cir. 2008), only stands for the proposition that an employee cannot waive her FLSA rights by failing to complain about a lack of overtime pay or by voluntarily working overtime hours.  That case has no application here.

Second, Sutherland argues that her agreement is unenforceable because she has a "collective action right" under the FLSA that cannot be waived.  Opp. at 14.  Sutherland cites no authority for this proposition, and it is simply incorrect.  A collective action is not a substantive right that cannot be waived.  *See* Arbitration Reply (Docket No. 37) at 4-5; *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 299 (5th Cir. 2004) (rejecting claim that inability to proceed collectively deprived plaintiffs of "substantive rights" under FLSA); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002) (noting that plaintiff had not pointed to any "suggestion in the text, legislative history or purpose of FLSA that Congress intended to confer a nonwaivable right to a class action under that statute"); *Johnson v. W. Suburban Bank*, 225 F.3d 366, 378 (3d Cir. 2000) (ability to file collective or class actions may be waived "so long as the rights the statute was designed to protect may be vindicated by other means"); *Horenstein v. Mortg. Mkt., Inc.*, 9 Fed. Appx. 618, 619 (9th Cir. 2001) (unpublished) (rejecting contention that arbitration clause could not be enforced "because it eliminate[d] [plaintiffs'] statutory right to a collective action").  In fact, courts in this Circuit have enforced agreements to arbitrate individual FLSA claims where the agreement did not provide for the arbitration of collective actions.  *See Pomposi v. GameStop, Inc.*, No. 309 Civ. 0340 (VLB), 2010 WL 147196, at *7-8, 11 (D. Conn.

Jan. 11, 2010); *Reid v. Supershuttle Int'l, Inc.*, No. 08 Civ. 4854 (JG), 2010 WL 1049613, at *2-4 (E.D.N.Y. Mar. 22, 2010).[4]

      Third, Sutherland contends that Ernst & Young has waived its right to seek arbitration and then *concedes that binding precedent precludes this argument*. Opp. at 15; Arbitration Mot. (Docket No. 28) at 12; Arbitration Reply (Docket No. 37) at 8. She half-heartedly cites the "leading authority in New York," a New York Court of Appeals case from 1974, that is not applicable here. But Second Circuit precedent regarding the waiver of the right to arbitrate applies to both Sutherland's federal and state claims, and such precedent requires a showing of prejudice that, as Sutherland concedes, she cannot make. *See Rush v. Oppenheimer & Co.*, 779 F.2d 885, 886 (2d Cir. 1985); *Coca-Cola Bottling Co. of New York, Inc. v. Soft Drink and Brewery Workers Union Local 812*, 242 F.3d 52, 57 (2d Cir. 2001).

---

[4] Nor does *Amex II*'s "criticism" of *Carter* support Sutherland's argument, since the issue in *Carter* was not before the Second Circuit. *See Amex II*, 634 F.3d at 196 ("plaintiffs do not proffer the argument rejected in *Gilmer*, namely that the class action waiver is unenforceable merely because the relevant statute allows class actions.")

CONCLUSION

For the foregoing reasons and the reasons set forth in its motion for reconsideration, Ernst & Young requests that the Court reconsider the Order denying its motion to dismiss Sutherland's complaint and compel the arbitration of her individual claims pursuant to the FAA, or in the alternative, stay proceedings while her individual claims are arbitrated.

Dated: June 17, 2011

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP


By: /s/ Daniel L. Nash_____
    Daniel L. Nash
    Joel M. Cohn
    Estela Díaz

Attorneys for defendant Ernst & Young LLP

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 17, 2011, I caused to be served via the Court's Electronic Case Filing system a true and correct copy of the Supplemental Reply Memorandum in Support of Ernst & Young LLP's Motion for Reconsideration on registered counsel:

| | |
|---|---|
| Max Folkenflik, Esq.<br>Folkenflik & McGerity<br>1500 Broadway, 21st Floor<br>New York, NY 10036<br>mfolkenflik@fmlaw.net | Leon Greenberg<br>633 South 4th Street #9<br>Las Vegas, NV 89101<br>wagelaw@aol.com |

Dated:  June 17, 2011
    New York, New York

_____/s/_____
EstelaDíaz