UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

STEPHANIE SUTHERLAND, on behalf of
herself and all others similarly situated,

                       Plaintiff,

        -against-                                  Opinion and Order
                                                        10 Civ. 3332 (KMW) (MHD)
ERNST & YOUNG LLP,

                       Defendant.
───────────────────────────────────────────────

KIMBA M. WOOD, U.S.D.J.:

      Defendant Ernst & Young LLP (''Ernst & Young'') moves for reconsideration of this Court's March 3, 2011 Order denying its motion to dismiss or stay the proceedings and compel arbitration. *Sutherland v. Ernst & Young LLP*, 768 F. Supp. 2d 547 (S.D.N.Y. 2011).

**I. Overview**

      Plaintiff Stephanie Sutherland (''Sutherland'') brings this putative class action against her former employer, Ernst & Young LLP ("Ernst & Young"), pursuant to the Fair Labor Standards Act (''FLSA''), 29 U.S.C. § 201 et seq., and Title 12 of the Codes, Rules and Regulations of the State of New York, 12 N.Y.C.R.R. § 142–2.2. Sutherland alleges that Ernst & Young wrongfully classified her as exempt from the overtime requirements of FLSA and New York law and failed to properly compensate her, and others similarly situated, for hours worked in excess of 40 hours per week. Sutherland seeks compensatory damages for 151.5 hours of unpaid overtime wages, which amounts to an actual loss of $1,867.02.

1

As a condition of her employment, Sutherland consented to the "Ernst & Young Common Ground Dispute Resolution Program" (the "Agreement"). The Agreement requires binding arbitration and permits the arbitration on an individual basis only.

Ernst & Young moved to dismiss or stay the proceedings and to compel arbitration of Sutherland's claims on an individual basis. (Dkt. No. 27.) After examining the evidence submitted, this Court found that the particular Agreement in this case was unenforceable because it prevents Sutherland from vindicating her statutory rights. *Sutherland*, 768 F. Supp. 2d at 554.

Ernst & Young now moves for reconsideration of this Court's order. (Dkt. No. 82.) Ernst & Young argues that this Court's finding that Sutherland would be unable to vindicate her statutory rights was clearly erroneous. (Ernst & Young's Mot. for Recons. ("Def.'s Mot.") at 2-5.) Ernst & Young also argues that the statements of Sutherland's counsel regarding discovery constitute new evidence of Sutherland's willingness to proceed on an individual basis. (Def.'s Mot. at 5-8.) Finally, Ernst & Young points to what it believes are two changes in controlling law. First, Ernst & Young argues that the Second Circuit's holding in *Italian Colors Rest. v. Am. Express Travel Related Servs. Co.*, 634 F.3d 187, 197 (2d Cir. 2011) altered the burden that Sutherland must meet to prove that arbitration is cost-prohibitive. (Def.'s Mot. at 8-10.) Second, Ernst & Young contends that the Supreme Court's holding in *AT&T Mobility LLC v. Concepcion* ("*Concepcion*"), 131 S.Ct. 1740 (2011) effectively overruled this Court's prior analysis. (Def.'s Supplemental Mem. in Supp. of Ernst & Young LLP's Mot. for Recons. ("Def.'s Suppl. Mem.") at 2.)

**II. Legal Standard**

Local Civil Rule 6.3 provides that a party may submit a motion for reconsideration "setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Reconsideration is appropriate only where there is "an intervening change of controlling law, newly available evidence, or the need to correct a clear error or prevent manifest injustice." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003). The moving party bears the burden of proof. *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). "Reconsideration of a previous order by the court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Floyd v. City of New York*, No. 08 CV 1034, 2011 WL 5879428, at *5 (S.D.N.Y. Nov. 23, 2011) (Scheindlin, J.).

**III. Ernst & Young's Motion**

Ernst & Young raises three separate grounds for reconsideration: clear error, new evidence, and intervening changes in controlling law. The Court addresses each in turn.

A. <u>Clear Error</u>

In this Court's order denying the motion to compel arbitration, the Court found that "[t]he record supports Sutherland's argument that [pursuant to the Agreement] her maximum potential recovery would be too meager to justify the expenses required for the individual prosecution of her claim." *Sutherland*, 768 F. Supp. 2d at 551.

Ernst & Young contends that this finding was clearly erroneous. It argues that the Agreement "ensures that fees and costs are recoverable in arbitration to the same degree as in court."[1] (Def.'s Reply Mem. in Supp. of Ernst & Young LLP's Mot. for Recons. ("Def.'s

---

[1] Section IV(P)(3) of the Agreement details the payment of "attorney fees and other expenses" and provides that "Each party will be responsible for the party's own attorney's fees and related expenses, but the Arbitrator will have

Reply") at 2.)  Sutherland, however, faces a situation very similar to that of the plaintiffs in *Italian Colors Rest. v. Am. Express Travel Related Servs. Co.* ("*AmEx I*"), 554 F.3d 300 (2d Cir. 2009) and *Italian Colors Rest. v. Am. Express Travel Related Servs. Co.* ("*AmEx II*"), 634 F.3d 187 (2d Cir. 2011).

Similar to Ernst & Young, the defendants in *AmEx I* argued that the arbitration agreement in that case ensured that costs and fees would be recoverable in arbitration to the same degree as in court. 554 F.3d at 318.  The Second Circuit nevertheless invalidated that arbitration agreement, which waived any right to collective proceedings, because the plaintiffs in that case demonstrated that they otherwise would have been unable to bring their statutory claims "in either an individual or collective capacity." *Id*. at 314.  The court in *AmEx I* found that each plaintiff—if forced to proceed on an individual basis—would incur discovery costs amounting to hundreds of thousands of dollars in order to recover average damages of approximately $5,000. *Id.* at 308.  Such costs, including expert fees, were largely not compensable because "when a

---

authority to provide for reimbursement of the Employee's attorneys fees, in whole or part, in accordance with applicable law or in the interest of justice." (Decl. of Dea Reece, dated August 19, 2010 ("Reece Decl.") Ex. D.) Ernst & Young states that "[t]he parties' agreement explicitly mandates a fee award 'in accordance with applicable law,' which requires that a prevailing plaintiff be awarded her fees." (Def.'s Reply at 2.)

The plain text of the Agreement, however, does not mandate or require anything – it states only that "the Arbitrator will have authority" to reimburse fees if applicable law and the interest of justice would also permit reimbursement of fees.  The Agreement also prohibits the reimbursement of costs or expenses.  It states that each party is "responsible for the party's own attorney's fees and related expenses" but the arbitrator "will have authority to provide for reimbursement of the Employee's attorneys fees." (Reece Decl. Ex. D.)  By explicitly describing expenses as each party's own responsibility and then saying nothing about the possible reimbursement of those expenses, the Agreement appears to prevent shifting of costs or expenses on behalf of a prevailing plaintiff.

The Agreement also provides that "[t]he parties' intent is for Arbitrator fees and other costs of the arbitration, other than filing and administrative fees, to be shared equally to the extent permitted by law." Sutherland understandably believes that this provision will require her to pay a significant amount of the costs of the arbitration. (Decl. of Stephanie Sutherland, dated September 2, 2010 ("Sutherland Decl.") ¶ 2.)

Perhaps recognizing the arguably unconscionable aspects of the Agreement that it had drafted, Ernst & Young included two stipulations in its Reply Memorandum of Law In Support of Ernst & Young's Motion to Dismiss.  Ernst & Young stipulated that it would "bear all administrative costs and arbitrator fees" and that "plaintiff is entitled to recover in arbitration any fees and costs that she could recover in court if she prevails on her claims." (Def.'s Reply at 5.)  *Id*.  These stipulations address the most obvious obstacles to Sutherland's vindication of her claims, but, as discussed below, do not address the issues discussed by the Second Circuit in *Italian Colors Rest. v. Am. Express Travel Related Servs. Co.* (*AmEx I*), 554 F.3d 300 (2d Cir. 2009) and *Italian Colors Rest. v. Am. Express Travel Related Servs. Co.* (*AmEx II*), 634 F.3d 187 (2d Cir. 2011).

prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of 28 U.S.C. § 1821(b)," which is currently $40 per day.  *Id.* at 318; *see also Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987).  Although the Second Circuit found that the cost of prosecuting an individual claim was prohibitive relative to that individual's potential recovery, the court found that, if brought collectively, the sharing of discovery costs across numerous plaintiffs would make prosecution of the claim viable.  The Second Circuit therefore held the class action waiver in *AmEx I* unenforceable under the federal substantive law of arbitration and severed the waiver from the remainder of the arbitration provision, remanding to the district court for further proceedings, either in collective arbitration or as a collective action.  554 F.3d at 321.

American Express appealed the Second Circuit's decision in *AmEx I* and the Supreme Court granted certiorari, vacated, and remanded the case for further consideration in light of the Supreme Court's holding in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 130 S.Ct. 1758 (2010).[2]  *Am. Exp. Co. v. Italian Colors Rest*. 130 S.Ct. 2401 (2010).  On remand, the Second Circuit interpreted *Stolt-Nielsen* to preclude courts from ordering class arbitration but not from finding contractual language void for public policy or other reasons.  *AmEx II,* 634 F.3d at 199-200.  The Second Circuit panel in *AmEx II* found that "the only economically feasible means for enforcing [plaintiffs'] statutory rights is via a class action" and concluded again that "as the class action waiver in this case precludes plaintiffs from enforcing their statutory rights, we find the arbitration provision unenforceable."  634 F.3d at 198-99.

---

[2] In *Stolt-Nielsen*, the Supreme Court addressed whether imposing class arbitration on parties whose arbitration clauses are "silent" on that issue is consistent with the Federal Arbitration Act ("FAA").  130 S.Ct. 1758 (2010). The Court emphasized that "the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration is a matter of consent, not coercion," *id.* at 1773, and held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."  *Id.* at 1758 (emphasis in original).

5

Relying on *AmEx I* and *II*, this Court denied Ernst & Young's motion to compel arbitration on the grounds that the class waiver provision in the arbitration agreement precluded Sutherland from enforcing her statutory rights. The Court was aware that Ernst & Young's stipulations purported to ensure that fees and costs would be recoverable in arbitration to the same degree as in court, and it was also aware that the situation Sutherland faces is parallel to the situation in *AmEx I* and *II*, in that Sutherland demonstrated that the waiver of class arbitration would force to bear costs that would preclude her from bringing her statutory claims in either an individual or collective capacity. The Court accordingly does not find clear error.

B. <u>New Evidence</u>

In the declaration that Sutherland submitted in opposition to Defendant's motion to compel arbitration, Sutherland stated that "I surely would drop my claims if I am compelled to proceed in arbitration." (Sutherland Decl. ¶ 2.) In a hearing before Magistrate Judge Dolinger, Sutherland's counsel argued that discovery should proceed even though class certification had not yet been decided. Asked whether a denial of class certification would render discovery moot, Sutherland's counsel argued that any discovery would still be relevant for Sutherland individually, if she continued with an individual claim, or for the opportunity to file another motion for class certification, if counsel could point to additional evidence that emerged from discovery. Ernst & Young interprets this statement by Sutherland's counsel as new evidence that Sutherland could pursue an individual action and vindicate her rights in individual arbitration.

The Court does not perceive the statements of Sutherland's counsel to constitute new evidence that warrants reconsideration. Sutherland's counsel was advocating for the beginning of at least limited discovery and expressing ways in which this discovery could be relevant if

6

class certification were denied. The statements of Sutherland's counsel regarding hypotheticals do not alter the facts before this Court sufficiently to warrant reconsideration.

  C. <u>Changes in Controlling Law</u>

    Ernst & Young points to what it believes are two changes in controlling law. In its initial Motion for Reconsideration, Ernst & Young argues that the Second Circuit's holding in *AmEx II* newly articulated the burden that a plaintiff such as Sutherland must meet to prove that arbitration is cost-prohibitive. (Def.'s Mot. at 8.) Ernst & Young contends that Sutherland fails to meet that burden. *Id.* In its subsequent Supplemental Memorandum in Support of its Motion for Reconsideration, Ernst & Young argues that the Supreme Court's holding in *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011) may call into question *AmEx I* and *II*. (Def.'s Suppl. Mem. at 2.) Ernst & Young further argues that, regardless of those cases' continuing validity, this Court's Order "cannot survive *Concepcion* because it disfavors arbitration exactly as did the *Discover Bank* rule" struck down by the Supreme Court in *Concepcion*. *Id.*

    1. *Italian Colors Rest. v. Am. Express Travel Related Servs. Co. II  (AmEx II)*

    In *AmEx I*, the Second Circuit held that the enforceability of a class action waiver must be determined on a case-by-case basis, considering the totality of the circumstances including, but not limited to, "the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorneys' fees and other costs and thus obtain legal representation to prosecute the underlying claim. . . ." 554 F.3d 300, 321 (quoting *Dale v. Comcast Corp.*, 498 F.3d 1216, 1224 (11th Cir. 2007)). The Second Circuit reiterated this holding in *AmEx II*. 634 F.3d 187 at 199. *AmEx* II explicitly states that the section of *AmEx I* that sets out the factors to be considered in this analysis still applies. *Id.*

7

The Court applied this case-by-case analysis when it first denied Ernst & Young's motion to compel arbitration.  768 F. Supp. 2d 547, 550-54.  Following *AmEx I*, this Court found that Sutherland had made an adequate showing of her potential damages and costs and had "substantially demonstrated that an inability to prosecute her claims on a class basis would be tantamount to an inability to assert her claims at all."  768 F. Supp. 2d 547, 553 (internal quotations omitted).  Given that *AmEx II* explicitly affirmed the continuing relevance of the factors the Second Circuit had laid out in *AmEx I*, the Court fails to see a change in controlling law in *AmEx II* that would require reconsideration.

   2.   *AT&T Mobility LLC v. Concepcion (Concepcion)*

After the Supreme Court decided *Stolt-Nielsen* and the Second Circuit issued its decision in *AmEx II*, the Supreme Court considered in *Concepcion* "whether the FAA prohibits States from conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures."  131 S.Ct. at 1744.  The plaintiffs in that case, the Concepcions, had signed an arbitration agreement with AT&T Mobility LLC ("AT&T") requiring that all claims be brought in their individual capacities only, and not as part of a class or collective proceeding.  *Id.*  The district and appellate courts denied AT&T's motion to compel arbitration because they found the class waiver provision unconscionable under California law, pursuant to a doctrine articulated by the California Supreme Court in *Discover Bank v. Superior Court*, 113 P.3d 1100 (2005), which invalidated many class waivers in contracts of adhesion.[3]  AT&T alleged that the doctrine was "applied in a fashion that disfavors arbitration" and the

---

[3] Applying the California unconscionability framework to class action waivers, the California Supreme Court held in *Discover Bank* that: "when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then . . . the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.'  Under these circumstances, such waivers are unconscionable under California law and should not be enforced."  113 P.3d 1100, 1110 (2005) (quoting Cal. Civ. Code Ann. § 1668).

8

Supreme Court found that the doctrine did in fact interfere with arbitration. 131 S.Ct. at 1747-50. The Supreme Court held that California's *Discover Bank* rule was preempted by the FAA because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" *Id.* at 1753.

Ernst & Young argues that the Supreme Court's holding in *Concepcion* effectively overrules *AmEx II* and this Court's previous decision.  In light of the Supreme Court's decision in *Concepcion*, the Second Circuit panel in *AmEx II* is "*sua sponte* considering rehearing." *Italian Colors Rest. v. Am. Express Travel Related Servs. Co.*, 2011 U.S. App. LEXIS 19851 (2d Cir. Aug. 1, 2011).

Ernst & Young maintains that the analysis that this Court applied in its Order "includes no meaningful limits" and "thus would serve to invalidate most, if not all, agreements containing class action waivers." (Def.'s Suppl. Mem. at 2-3.)  Based on this scenario, Ernst & Young relies on *Concepcion* to argue that this Court's analysis is "inconsistent with the FAA, even if it is desirable for unrelated reasons."  (Def.'s Suppl. Mem. at 3 (quoting *Concepcion*, 131 S.Ct. at 1753).)

Although the applicability of *Concepcion* to the Court's March 3, 2011 Order is a close question, the facts before this Court differ significantly from the facts in *Concepcion* because Sutherland, unlike the Concepcions, is not able to vindicate her rights absent a collective action. This Court's March 3, 2011 Order also differs from the *Discover Bank* rule in two further ways: 1) unlike the *Discover Bank* rule, which applied to class action waivers in almost all contracts of adhesion, the *AmEx* rule that this Court relied upon applies only to the limited set of class action waivers that, after a case-by-case analysis, are found to meet the factors set out in *AmEx I and II* and that preclude an individual from being able to vindicate her statutory rights; and 2) unlike the

9

*Discover Bank* rule, which was a state common law contract doctrine that the Supreme Court found that the FAA preempted, the analysis that this Court applied is based on federal courts' interpretation of the FAA itself.

      a.   Costs of the Action and Ability to Vindicate Statutory Rights

The facts in Sutherland's case differ from *Concepcion* with respect to the plaintiff's ability to vindicate her statutory rights. The Court in *Concepcion* emphasized in detail the provisions in that arbitration agreement that benefitted plaintiffs and that ensured that the Concepcions would be able to find redress for their claims.[4] *Id.* at 1753. The Court relied on the district court's conclusion that that "the Concepcions were better off under their arbitration agreement with AT&T than they would have been as participants in a class action" and that, given the provisions of the arbitration agreement, "the claim here was most unlikely to go unresolved." *Id*. Indeed, the question presented to the Court in *Concepcion* was whether the FAA "preempts States from conditioning the enforcement of an arbitration agreement on the

---

[4] In *Concepcion*, the Court stated that the agreement:
> . . . provides that customers may initiate dispute proceedings by completing a one-page Notice of Dispute form available on AT&T's Web site. AT&T may then offer to settle the claim; if it does not, or if the dispute is not resolved within 30 days, the customer may invoke arbitration by filing a separate Demand for Arbitration, also available on AT&T's Web site. In the event the parties proceed to arbitration, <u>the agreement specifies that AT&T must pay all costs for nonfrivolous claims</u>; that arbitration must take place in the county in which the customer is billed; that, for claims of $10,000 or less, the customer may choose whether the arbitration proceeds in person, by telephone, or based only on submissions; that either party may bring a claim in small claims court in lieu of arbitration; and that the arbitrator may award any form of individual relief, including injunctions and presumably punitive damages. <u>The agreement, moreover, denies AT&T any ability to seek reimbursement of its attorney's fees, and, in the event that a customer receives an arbitration award greater than AT&T's last written settlement offer, requires AT&T to pay a $7,500 minimum recovery and twice the amount of the claimant's attorney's fees.</u>

131 S.Ct. at 1744 (emphasis added).
The Court also emphasized that the District Court:
> . . . described AT&T's arbitration agreement favorably, noting, for example, that <u>the informal dispute-resolution process was 'quick, easy to use' and likely to 'promp[t] full or ... even excess payment to the customer without the need to arbitrate or litigate'; that the $7,500 premium functioned as 'a substantial inducement for the consumer to pursue the claim in arbitration' if a dispute was not resolved informally; and that consumers who were members of a class would likely be worse off.</u>

131 S.Ct. at 1745 (emphasis added).

10

availability of particular procedures – here, class-wide arbitration – <u>when those procedures are not necessary to ensure that the parties to the arbitration agreement are able to vindicate their claims</u>." *AT&T Mobility LLC v. Concepcion*, 2010 WL 6617833 (Petition for a Writ of Certiorari, Filed January 25, 2010) (emphasis added).  In contrast to the facts in *Concepcion*, Sutherland has demonstrated that she would not be able to obtain representation or vindicate her rights on an individual basis.

Ernst & Young argues that "the assertion that class proceedings are necessary for Sutherland to enforce her rights . . . is irrelevant."  (Def.'s Suppl. Mem. at 3.)  The Court, however, believes that an employee's ability to vindicate statutory rights guaranteed by FLSA is highly relevant.  *Concepcion* emphasized that the provisions of the arbitration agreement in that case were more favorable to the plaintiffs than a class action.  Sutherland, in contrast, has established her inability to vindicate her claims pursuant to the Agreement.

To support its argument that Sutherland's ability to vindicate her rights is irrelevant, Ernst & Young points to the statement by the majority in *Concepcion* that "[t]he dissent claims that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system. . . .  But States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." 131 S.Ct. at 1753.  There is a difference, however, between claims that might slip through the cracks because plaintiffs choose not to prosecute them individually, and claims for which a plaintiff seeks redress but is precluded from vindicating her rights.  This difference is the difference between the situation faced by the Concepcions and that faced by Sutherland.  The terms of the arbitration agreement at issue in *Concepcion* ensured that the Concepcions could bring their claim in arbitration on an individual basis, either representing themselves or with counsel.  The fact that a plaintiff in the same

11

situation as the Concepcions might choose not to make a claim for such a small overcharge is not the Court's concern, even if a class-action lawyer might be eager to bring the case on behalf of all similarly situated plaintiffs, but for the class-action waiver.  By contrast, the terms of the arbitration agreement and the cost of discovery in Sutherland's case preclude her from redressing alleged FLSA violations.

Sutherland's case is similar instead to situations discussed by the Supreme Court in which it has stated that it may not enforce contractual agreements that would operate "as a prospective waiver of a party's right to pursue statutory remedies." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 637, n.19 (1985); *see also Green Tree Fin. Corp.- Alabama v. Randolph,* 531 U.S. 79, 90 (2000).  Indeed, the Second Circuit has made clear that plaintiffs' opportunity to vindicate their statutory rights is indeed relevant, and that contracts that preclude enforcement of statutory rights may be unenforceable.  *AmEx II*, 634 F.3d 187, 199; *see also Ragone v. Atl. Video at Manhattan Ctr*, 595 F.3d 115, 125 (2010) ("[A] federal court will compel arbitration of a statutory claim only if it is clear that the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, such that the statute under which its claims are brought will continue to serve both its remedial and deterrent function") (internal quotations omitted); *Raniere v. Citigroup Inc.*, 2011 WL 5881926 at *12-20 (S.D.N.Y. Nov. 22, 2011) (Sweet, J.) (finding waiver of FLSA collective action unenforceable); *Chen–Oster v. Goldman, Sachs & Co.*, 785 F. Supp. 2d 394, 406-11 (S.D.N.Y. 2011) (Francis, J.) (denying a motion to compel arbitration because it would prevent the plaintiff from having the opportunity to vindicate her Title VII pattern and practice claims).[5]

---

[5] Other Courts of Appeal considering the issue have also found that agreements waiving statutory rights may be unenforceable.  *See e.g., Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48 (1st Cir. 2006) (finding provision of arbitration agreements barring the recovery of treble damages in an antitrust case invalid because it prevented the vindication of a federal statutory right); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 n. 14 (5th Cir. 2003) (finding

Congress found that the fundamental protections of minimum wages and overtime pay enacted in FLSA are crucial to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of society, and courts have found these protections thus particularly inappropriate to be waived.[6]  29 U.S.C. § 202(a); *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739-40 (1981); *Bormann v. AT&T Commc'ns, Inc.*, 875 F.2d 399, 401 (2d Cir. 1989) ("Private waiver of claims under [FLSA] has been precluded by such Supreme Court decisions as *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945), and *D.A. Shulte, Inc. v. Gangi*, 328 U.S. 108 (1946)."). The Supreme Court addressed the validity of an employee's waiver of the liquidated damages provision of FLSA in *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945).  In *Brooklyn Savings Bank*, the Court held that:

> The legislative history of the Fair Labor Standards Act shows an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce.  The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce. . . .  No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act.  We are of the opinion that the same policy considerations which forbid waiver of basic minimum and overtime wages under the Act also prohibit waiver of the employee's right to liquidated damages.

---

agreement waiving punitive and exemplary damages in a Title VII case unenforceable); *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) (finding agreement insulating defendant from damages and equitable relief unenforceable).  In different context, the National Labor Relations Board also recently found that pursuant to the Norris-LaGuardia Act "an arbitration agreement imposed upon individual employees as a condition of employment cannot be held to prohibit employees from pursuing an employment-related class, collective, or joint action in a Federal or State court." *D.R. Horton, Inc.*, N.L.R.B. No. 12-CA-25764 (Jan. 3, 2012).

[6] Indeed, the "Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act.  Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine*, 450 U.S. at 740; but see *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33-35 (1991) (distinguishing *Barrentine*'s holdings regarding arbitration under a collective-bargaining agreement from agreements to arbitrate statutory claims).

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-707 (1945); *see also Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985) ("[T]he purposes of [FLSA] require that it be applied even to those who would decline its protections.").

The facts before this Court establish that the Agreement at issue in this case would operate as a waiver of Sutherland's right to pursue her statutory remedies pursuant to FLSA. The Court therefore finds the doctrine articulated by the Supreme Court in *Concepcion* inapplicable to the different facts Sutherland faces.

    b.  Limited Applicability

Contrary to Ernst & Young's representations, the analysis that this Court applied in Sutherland's case does include meaningful limits, specifically those set out by the Second Circuit in *AmEx I* and *II*. Recognizing that federal policy favors arbitration and considering Sutherland's case on its merits, the Court evaluated, among other things, the cost to an individual plaintiff of vindicating her claim relative to her potential recovery and her ability to recover attorneys' fees and other costs.

In *Concepcion*, the Supreme Court held that California's *Discover Bank* rule was without limits because it mechanistically applied to adhesion contracts involving small amounts of damages and was applied in a manner that disfavored arbitration. *Id.* at 1746. The *Discover Bank* rule did not take into account the potential for a plaintiff to be able to vindicate the rights allegedly infringed in individual arbitration. The rule that the Second Circuit articulated in *AmEx I* and *II*, and that this Court applied in its prior opinion, in contrast, requires a case-by-case analysis that considers, among other things, the ability of a plaintiff to obtain legal representation and resolve her claims.

    c.  Basis in Federal Courts' Interpretation of the FAA

The case currently before the Court also differs from *Concepcion* in that Sutherland's objection to the motion to compel arbitration arises out of federal courts' interpretation of the FAA itself, while the *Discover Bank* rule struck down in *Concepcion* was grounded in state common law of contracts. In *Concepcion*, the Court applied a preemption analysis and found that "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." 131 S.Ct. at 1753. In contrast, the rule the Second Circuit articulated in *AmEx I* and *II*, which this Court applied, arises from the FAA itself and the federal common law of arbitrability and is consistent with the FAA.

Ernst & Young argues that it is "immaterial" whether the Court's order is based on a state law doctrine such as *Discover Bank* or federal common law. (Def.'s Supplemental Reply Mem. ("Def.'s Suppl. Reply") at 1.) Ernst & Young highlights the Supreme Court's statement in *Concepcion* that "a federal statute's saving clause cannot in reason be construed as [allowing] a common law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. In other words, the act cannot be held to destroy itself." 131 S.Ct. at 1748 (internal quotations omitted); *see also* Def.'s Mot. at 4.

Indeed, federal common law is generally preempted by the enactment of a federal statute on the subject. *Matter of Oswego Barge Corp.*, 664 F.2d 327, 335 (2d Cir. 1981) ("While federalism concerns create a presumption against preemption of state law, including state common law, separation of powers concerns create a presumption in favor of preemption of federal common law whenever it can be said that Congress has legislated on the subject.") (internal citations omitted). In Sutherland's case, however, this Court is not applying a preexisting common law right preempted by the FAA; rather, it is following the Supreme Court's and the Second Circuit's interpretation of the FAA itself.

Section 2 of the FAA provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

The FAA codifies a federal policy that strongly favors arbitration as an alternative dispute resolution process.  *Moses H. Cone*, 460 U.S. at 24; *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995).  The primary purpose of the FAA is to "place arbitration agreements upon the same footing as other contracts" and to ensure that private arbitration agreements are enforced according to their terms.  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Federal statutory claims may be appropriately resolved through arbitration.  *Rodriguez de Quijas v. Shearson/American Express, Inc*. 490 U.S. 477 (1989).  Part of the reason why federal statutory claims may be resolved through arbitration is because "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).  "Even claims arising under a statute designed to further important social policies may be arbitrated because so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, the statute serves its functions."  *Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 90 (2000) (internal quotations omitted).

Indeed, the Supreme Court has stated that an agreement to arbitrate may not be enforced if proceedings "in the contractual forum will be so gravely difficult and inconvenient that [the resisting party] will for all practical purposes be deprived of his day in court." *Mitsubishi Motors,* 473 U.S. at 632; *see also id.* at 637, n.19 (if an arbitration agreement operated "as a prospective waiver of a party's right to pursue statutory remedies. . ., we would have little hesitation in condemning the agreement as against public policy."). The Supreme Court has also recognized that large arbitration costs "could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum" and thus make the arbitration agreement unenforceable. *Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 90 (2000).[7]

The Supreme Court's statements in *Mitsubishi Motors* and *Randolph* interpret Section 2 of the FAA to recognize that if a contract would preclude a litigant from effectively vindicating her federal statutory rights, it may not be enforced. *Concepcion* addressed a set of facts distinct from those discussed by the Court in *Mitsubishi Motors* and *Randolph*, and nowhere did the Court in *Concepcion* indicate that either *Mitsubishi Motors* or *Randolph* or the logic they put forth were overruled. The basis of the rule set forth in *AmEx I* and *II* and followed by this Court in its prior opinion is thus distinct from the state common law *Discover Bank* rule preempted in *Concepcion*. Indeed, the rule that this Court followed in *Sutherland* is consistent with the FAA and its purpose of placing "arbitration agreements upon the same footing as other contracts." *Gilmer*, 500 U.S. at 24. The savings clause in Section 2 of the FAA provides that arbitration agreements are "enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This savings clause, and the rule that this Court

---

[7] The Court in *Randolph* held that where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." 531 U.S. 79 at 92. The Court found that the record in that case did not establish that the plaintiff would be unable to vindicate her rights, and did not address how detailed the showing of prohibitive expense must be.

applied pursuant to the savings clause, ensure that the arbitral forum maintains its standing as a legitimate alternative to traditional litigation in which individuals can vindicate their statutory rights. *See Kristian v. Comcast Corp.*, 446 F.3d 25, 37 (1st Cir. 2006).

Accordingly, the Court does not believe that *Concepcion* constitutes an intervening change in the law that controls the facts before it.

## IV. Conclusion

For the foregoing reasons, Ernst & Young's motion for reconsideration is DENIED.

SO ORDERED.

DATED:  New York, New York
        January 13, 2012

                                    /s/ Kimba M. Wood
                                    KIMBA M. WOOD
                                    United States District Judge

18